## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

RUBY FREEMAN and WANDREA' MOSS,

                     Plaintiffs,

v.

RUDOLPH W. GIULIANI,

                     Defendant.

No. 24-mc-00353-LJL

## MEMORANDUM OF LAW
## IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE JUDGMENT

John Langford
Rachel Goodman
United to Protect Democracy
82 Nassau Street, #601
New York, NY 10038
(202) 579-4582
john.langford@protectdemocracy.org
rachel.goodman@protectdemocracy.org

Christine Kwon (*pro hac vice forthcoming*)
P.O. Box 341423
Los Angeles, CA 90034-9998
(202) 579-4582
christine.kwon@protectdemocracy.org

Von DuBose (*pro hac vice forthcoming*)
DuBose Miller LLC
75 14th Street NE. Suite 2110
Atlanta, GA 30309
(404) 720-8111
dubose@dubosemiller.com

Michael J. Gottlieb
Meryl C. Governski (admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com
mgovernski@willkie.com

Aaron E. Nathan
M. Annie Houghton-Larsen
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8000
anathan@willkie.com
mhougtonlarsen@willkie.com

*Attorneys for Plaintiffs Ruby Freeman and Wandrea' Moss*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ............................................................................................... 1

BACKGROUND ................................................................................................. 3

      1.     The Freeman Litigation.............................................................................. 3

      2.     The Giuliani Bankruptcy........................................................................... 5

      3.     Plaintiffs' Judgment Enforcement Efforts ................................................ 6

      4.     The Relevant Property .............................................................................. 7

      5.     The New York Apartment ......................................................................... 8

      6.     The Florida Apartment.............................................................................. 8

      7.     The Fee Claim ........................................................................................... 9

      8.     Mr. Giuliani's Personal Property Disclosed in Bankruptcy...................... 9

LEGAL STANDARD........................................................................................ 10

ARGUMENT..................................................................................................... 12

  A.     Plaintiffs Are Entitled to a Turnover Order Under CPLR § 5225. ............... 12

  B.     Plaintiffs Are Entitled to a Receivership Order Covering the Palm Beach Condo, and any Other Property that Mr. Giuliani Does Not Turn Over Promptly. .......................... 13

      1.     Receivership Is Appropriate Over All of the Property Described in this Motion ..... 13

      2.     Receivership Is Especially Appropriate With Respect to Mr. Giuliani's Apartments and the Legal Fee Claim. ............................................................ 16

  C.     The Court Should Appoint Plaintiffs as Receivers Under CPLR § 5228, Without Bond or Other Undertaking. ................................................................ 17

STATEMENT REGARDING ORAL ARGUMENT.................................................. 18

CONCLUSION................................................................................................. 18

## **TABLE OF AUTHORITIES**

**Cases**                                                                                        **Page(s)**

*245 Park Member LLC v. HNA Grp. (Int'l) Co.*,
    674 F. Supp. 3d 28 (S.D.N.Y. 2023)................................................................10, 11, 12

*Blue Citi LLC v. 5Barz Int'l Inc.*,
    No. 16-CV-9027 (VEC), 2019 WL 6976972 (S.D.N.Y. Dec. 20, 2019).................................13

*BSH Hausgeräte GMBH v. Kamhi*,
    No. 17 CIV. 5776, 2018 WL 4583497 (S.D.N.Y. Sept. 25, 2018).........................................16

*Colfin Bulls Funding B, LLC v. Ampton Invs., Inc.*,
    No. 151885/2015, 2018 WL 7051063 (N.Y. Sup. Ct. Nov. 26, 2018)...................................16

*Coscia v. Eljamal*,
    8 N.Y.S.3d 882 (Sup. Ct. 2015).......................................................................................13

*Daum Glob. Holdings Corp. v. Ybrant Digital Ltd.*,
    No. 13-CV-3135(AJN), 2018 WL 2122816 (S.D.N.Y. May 8, 2018) .......................14, 16, 17

*Ernest Lawrence Grp., Inc. v. Gov't Careers Ctr. of Oakland, Cal.*,
    No. 99-CV-3807, 2000 WL 1655234 (S.D.N.Y. Nov. 3, 2000)..............................................14

*Freeman v. Giuliani*,
    691 F. Supp. 3d 32 (D.D.C. 2023) ........................................................................................3

*Freeman v. Giuliani*,
    No. 21-CV-3354 (BAH), 2024 WL 1616675 (D.D.C. Apr. 15, 2024).................................3, 4

*In re Giuliani*,
    --- B.R. ---, No. 23-12055 (SHL), 2024 WL 3384185
    (Bankr. S.D.N.Y. July 12, 2024)...............................................................................5, 6, 14

*In re Giuliani*,
    No. 23-12055 (Bankr. S.D.N.Y. Dec. 21, 2023).....................................................................15

*Keawsri v. Ramen-Ya Inc.*,
    No. 17-CV-2406 (LJL), 2023 WL 4364168 (S.D.N.Y. July 6, 2023)...................................12

*LI Equity Network, LLC v. Village in Woods Owners Corp.*,
    910 N.Y.S.2d 97 (App. Div. 2010) ........................................................................................7

*Mishcon de Reya N.Y. LLP v. Grail Semiconductor, Inc.*,
    No. 11-cv-4971-JMF, 2012 WL 5512240 (S.D.N.Y. Nov. 13, 2012)........................11, 13, 14

*In re Rudolph W. Giuliani*,
    No. 23-12055-SHL (Bankr. S.D.N.Y. Dec. 21, 2023)........................................................5, 15

*Skaff v. Progress Int'l, LLC,*
    No. 12 CIV. 9045 KPF, 2014 WL 5454825 (S.D.N.Y. Oct. 28, 2014) ............................ 15, 17

*Spotnana, Inc. v. Am. Talent Agency, Inc.,*
    No. 09 CIV. 3698 LAP, 2013 WL 227546 (S.D.N.Y. Jan. 22, 2013) .............................. 14, 15

*Union Cap. LLC v. 5Barz Int'l Inc.,*
    No. 16-CV-6203, Dkt. 80 ........................................................................................ 14

*Union Cap. LLC v. 5Barz Int'l LLC,*
    No. 16-cv-6203 (KBF), 2017 WL 11615186 (S.D.N.Y. July 26, 2017) ............................ 14

*United States v. Vulpis,*
    967 F.2d 734 (2d Cir. 1992) .................................................................................. 16

**Statutes**

28 U.S.C. § 754 ................................................................................................. 11, 12

28 U.S.C. § 1962 ...................................................................................................... 7

28 U.S.C. § 1963 ...................................................................................................... 7

Fla. Stat. § 55.10 .................................................................................................. 7, 9

Richard C. Reilly, Practice Commentaries, McKinney's Cons Laws CPLR 5225:1 ................... 12

**Other Authorities**

N.Y. CPLR § 5202 ..................................................................................................... 7

N.Y. CPLR § 5225 ..................................................................................... 10, 12, 18

N.Y. C.P.L.R. § 5225(a) ...................................................................................... 11, 12

N.Y. CPLR § 5225(c) ............................................................................................... 12

N.Y. CPLR § 5228 ............................................................................................ *passim*

N.Y. CPLR § 5228(a) ......................................................................................... 11, 17

Siegel, N.Y. Practice § 512 (6th ed.) .................................................................... 16, 17

Plaintiffs Ruby Freeman and Wandrea' Moss ("Plaintiffs") respectfully submit this memorandum of law in support of their motion to enforce their judgment against Defendant Rudolph W. Giuliani ("Defendant" or "Mr. Giuliani") through an order pursuant to New York Civil Law and Practice Rule ("CPLR") § 5225 requiring Mr. Giuliani to turn over certain property to Plaintiffs, and an order appointing Plaintiffs as a receiver over specific property pursuant to CPLR § 5228.

## **INTRODUCTION**

This enforcement proceeding arises out of a $146 million judgment obtained by Plaintiffs against Rudolph Giuliani for his years-long campaign of willful defamation and intentional infliction of emotional distress. Mr. Giuliani has spent years evading accountability for his actions—first in litigation in the U.S. District Court for the District of Columbia (the "D.C. District Court"), and then in chapter 11 bankruptcy proceedings that Mr. Giuliani commenced in this District. Now that Mr. Giuliani's bankruptcy case has been dismissed, Plaintiffs are finally in a position to receive a measure of compensation by enforcing their judgment. In this motion, Plaintiffs seek two remedies to which they are entitled under New York law: an order requiring Mr. Giuliani to turn over personal property in his possession in satisfaction of the judgment, and an order appointing Plaintiffs as receivers with the power to take possession of, and sell, both real and personal property that Mr. Giuliani does not turn over.

Those remedies are overwhelmingly justified under New York law. And they are all the more appropriate in the context of this case, where Mr. Giuliani has proven time and again that he will never voluntarily comply with court orders, much less voluntarily satisfy Plaintiffs' judgment. In the underlying litigation, rather than contest Plaintiffs' claims on their merits, Mr. Giuliani chose to willfully ignore discovery obligations and disobey court orders. As a result of this "willful shirking of his discovery obligations," the D.C. District Court entered a default judgment on

liability and held a jury trial to quantify damages. After the jury returned its verdict and final judgment was entered, the D.C. District Court authorized Plaintiffs to immediately register and enforce the judgment in any district of the United States, citing Mr. Giuliani's past and ongoing recalcitrance. The very next day, Mr. Giuliani filed a bad-faith chapter 11 bankruptcy petition, freezing those enforcement efforts pursuant to the Bankruptcy Code's automatic stay. Unsurprisingly, bankruptcy did not change Mr. Giuliani's behavior, and after Mr. Giuliani continued to repeat his defamatory lies about Plaintiffs and flout the Bankruptcy Rules and court orders, the Bankruptcy Court dismissed the chapter 11 case for cause, citing Mr. Giuliani's "failure to provide even basic disclosure" during his six months in bankruptcy. At every step, Mr. Giuliani has chosen evasion, obstruction, and outright disobedience. That strategy reaches the end of the line here.

Accordingly, and as explained further below, this Court should take the first step towards enforcing Plaintiffs' judgment by granting two forms of relief. First, Plaintiffs are entitled to an order requiring Mr. Giuliani to transfer all of the personal property specified in this Motion, including cash accounts, jewelry and valuables, a legal claim for unpaid attorneys' fees, and Mr. Giuliani's interest in his luxury Madison Avenue co-op apartment. Second, the Court should appoint Plaintiffs as a receiver over the real property specified in this motion—Mr. Giuliani's luxury condominium apartment in Palm Beach, Florida. And finally, the Court should order Mr. Giuliani to show cause why the receivership order should not be extended to cover all personal property specified in this Motion that Mr. Giuliani does not transfer to Plaintiffs within seven days of the turnover order.

## BACKGROUND

1.     *The Freeman Litigation*

Beginning in December 2020, Mr. Giuliani targeted Plaintiffs as part of a brazen scheme to sow disinformation about the 2020 federal election. Mr. Giuliani's strategy was to spread numerous baseless allegations that Ms. Freeman and Ms. Moss participated in a scheme to overturn the election results in Georgia. Despite the lack of any truth to any of Mr. Giuliani's claims, in the days that followed, Ms. Freeman, Ms. Moss, and Ms. Moss's teenage son began receiving a torrent of hateful, racist messages, including death threats on their cell phones, social media, and email accounts.

Plaintiffs sought to hold the perpetrators of these baseless and horrific attacks accountable. In December 2021, Ms. Freeman and Ms. Moss sued Mr. Giuliani and several other co-conspirators—among others—for defamation, intentional infliction of emotional distress, and civil conspiracy. *See Freeman v. Giuliani*, No. 21-cv-3354 (D.D.C.) (the "Freeman Litigation"). For more than two years, Mr. Giuliani had an opportunity to participate in the Freeman Litigation. Instead, Mr. Giuliani chose a strategy of obstruction and willful disobedience.

That strategy ultimately led to a default judgment on liability as to all of Plaintiffs' claims. The D.C. District Court found that Mr. Giuliani had engaged in "willful shirking of his discovery obligations in anticipation of and during this litigation." *Freeman v. Giuliani*, 691 F. Supp. 3d 32, 40 (D.D.C. 2023). Mr. Giuliani repeatedly "failed to comply with his basic preservation and production discovery obligations for both himself and [two of his] businesses, frustrating plaintiffs' procedural rights to obtain any meaningful discovery to support their claims[.]" *Freeman v. Giuliani*, No. CV 21-3354 (BAH), 2024 WL 1616675, at *2 (D.D.C. Apr. 15, 2024) (internal citations omitted). As the D.C. District Court found: "The only reasonable explanation for Giuliani's blatant disregard for satisfying his preservation obligations—despite fully

understanding them—is that he intentionally and willfully ignored them." *Freeman*, 691 F. Supp. 3d at 61. Ultimately, the D.C. District Court entered a default judgment on liability under Federal Rule of Civil Procedure 37 as a sanction for "the utter failure of Giuliani to comply with his discovery obligations and related orders in [the] lawsuit or to pay a dime in the attorney's fees imposed for his discovery abuses—after multiple opportunities were extended for him to do so, over the course of months[.]" *Freeman*, 2024 WL 1616675, at *1.

To quantify the Freeman Plaintiffs' damages, a jury trial was held from December 11 to December 15, 2023. After hearing voluminous evidence of the severe, intentional harm that Mr. Giuliani inflicted on Plaintiffs, the jury returned a verdict awarding Plaintiffs $73,169,000 in compensatory damages, and $75,000,000 in punitive damages. *See* Declaration of Aaron E. Nathan ("Nathan Decl.") Ex. 1. The parties then executed a joint stipulation resolving Mr. Giuliani's claims to setoff and the District Court entered final judgment in the amount of $145,969,000, including the adjusted damages award and the attorneys' fees—still unpaid—that had been awarded to Plaintiffs as a sanction for Mr. Giuliani and his wholly controlled businesses' discovery violations earlier in the litigation. *Freeman*, 2024 WL 1616675, at *1 n.1; *see Freeman v. Giuliani*, No. 24-mc-353 (S.D.N.Y. August 5, 2024), ECF No. 1; Nathan Decl. ¶ 3.

The day final judgment was entered, Plaintiffs sought an order dissolving Federal Rule of Civil Procedure 62(a)'s automatic 30-day stay of execution and granting leave to register the judgment in any other federal district pursuant to 28 U.S.C. § 1963. *Freeman v. Giuliani*, No. 21-cv-3354 (D.D.C. Dec. 18, 2023), ECF Nos. 139, 140. The Court granted that motion in full, citing the "ample record in this case of Giuliani's efforts to conceal or hide his assets by failing to comply with discovery requests, including plaintiffs' requests for financial information." Memorandum and Order at 9, *Freeman v. Giuliani*, No. 21-cv-3354 (D.D.C. Dec. 20, 2023), ECF No. 144

(cleaned up). The Court accordingly dissolved Rule 62(a)'s stay of execution and authorized the Freeman Plaintiffs "to register immediately the final judgment . . . in any other district of the United States." *Id.* at 12–13.

2.    *The Giuliani Bankruptcy*

The day after the D.C. District Court lifted the automatic stay of execution and permitted Plaintiffs to register their judgment in any other district, Mr. Giuliani filed a voluntary chapter 11 petition in the United States Bankruptcy Court for the Southern District of New York. *In re Rudolph W. Giuliani*, No. 23-12055-SHL (Bankr. S.D.N.Y. Dec. 21, 2023); Nathan Decl. ¶ 4.

As proceedings got underway in the Bankruptcy Court, it became clear that Mr. Giuliani had little interest in achieving a successful chapter 11 plan of reorganization—instead, bankruptcy was yet another act of evasion and obstruction. Sure enough, after six months of continued obstruction, delay, and disregard of court orders, the Bankruptcy Court dismissed Mr. Giuliani's chapter 11 case. *In re Giuliani*, --- B.R. ---, No. 23-12055 (SHL), 2024 WL 3384185 (Bankr. S.D.N.Y. July 12, 2024).

Most relevant here, the Bankruptcy Court recounted Mr. Giuliani's consistent, knowing failure to comply with court orders requiring him to disclose accurate information about this financial affairs. As the Bankruptcy Court found, the record in the bankruptcy case "reflect[ed] Mr. Giuliani's continued failure to meet his reporting obligations and provide the financial transparency required of a debtor in possession." *Id.* at *4. Highlighting only "a few" of those failures, the Bankruptcy Court found that Mr. Giuliani "failed to respond" to the Rule 2004 discovery order entered in the bankruptcy case. *Id.* "Most significantly," the Bankruptcy Court continued, "none of Mr. Giuliani's business entities have made any production at all despite being required to do so by the Rule 2004 Order." *Id*. Mr. Giuliani himself only made "one production," containing "fifteen documents[.]" *Id.* His businesses "made no production whatsoever." *Id.* Nor

5

did Mr. Giuliani or those entities "identif[y] any legitimate reason why the requested information should not or cannot be produced." *Id.*

Next, the Bankruptcy Court found that Mr. Giuliani had failed to satisfy his obligation to make full disclosure of his assets, and to file "accurate, complete monthly operating reports" detailing his financial condition throughout the bankruptcy case. *Id.* at *5. As the Bankruptcy Court found, a pattern emerged: "Mr. Giuliani would often promise to file monthly operating reports by a certain date, only to miss those deadlines." *Id.* And then when he finally did file, the information disclosed would be "incomplete or inaccurate." "Perhaps even more troubling, the information in the monthly operating reports has been incomplete or inaccurate." *Id.* Then, when "confronted with complaints about a failure to satisfy the Bankruptcy Code's obligations as to financial transparency," Mr. Giuliani did "nothing." *Id.* at *6. And all this "despite the continued diligence and extensive efforts of the Committee and the Freeman Plaintiffs." *Id.* at *7.

Worse yet, the Bankruptcy Court found, Mr. Giuliani's persistence in ignoring court orders requiring transparency was "particularly troubling given concerns that [he had] engaged in self-dealing" during the bankruptcy case, including by funneling his income to his wholly owned corporate entities and using personal funds to pay expenses associated with those companies "without Court approval." *Id.* at *6.

The Bankruptcy Court accordingly dismissed Mr. Giuliani's chapter 11 petition for cause, finding bad faith, and entered an order dismissing the case on August 2, 2024. *Id.*

### 3.    *Plaintiffs' Judgment Enforcement Efforts*

Plaintiffs registered their judgment in this district on August 5, 2024. ECF No. 1. On August 6, 2024, Plaintiffs obtained a writ of execution from the Clerk of Court and, on August 8,

2024, Plaintiffs delivered that writ of execution to the U.S. Marshal, thereby establishing a lien on Mr. Giuliani's personal property located in New York. Nathan Decl. ¶ 18; *see* CPLR § 5202.[1]

Also on August 5, 2024, Plaintiffs registered their judgment in the Southern District of Florida. *See Freeman v. Giuliani*, No. 24-mc-22979 (S.D. Fla. Aug. 5, 2024), ECF No. 1. On August 8, 2024, Plaintiffs recorded a certified copy of that registered judgment with the Clerk of Palm Beach County, establishing a lien on Mr. Giuliani's real property located in Florida. Nathan Decl. ¶ 19, Ex. 13; Fla. Stat. § 55.10; *see* 28 U.S.C. §§ 1962, 1963.

Plaintiffs served an information subpoena and restraining notice on Mr. Giuliani on August 5, 2024, pursuant to CPLR §§ 5222 and 5224, via certified mail, return receipt requested. Nathan Decl. ¶ 17, Exs. 10, 11. The information subpoena and restraining notice was received at Mr. Giuliani's New York residence on August 7, 2024. Nathan Decl. ¶ 17, Ex. 12. The deadline to respond to the information subpoena was August 14, 2024. As of this filing, Mr. Giuliani has not responded to the information subpoena.

### 4.   *The Relevant Property*

This motion concerns four categories of property in Mr. Giuliani's possession: a co-op apartment in New York City (the "New York Apartment"), a condo located in Palm Beach, Florida (the "Palm Beach Condo"), various items of personal property that Mr. Giuliani disclosed in sworn submissions to the Bankruptcy Court, and a legal claim for unpaid fees for Mr. Giuliani's provision of legal services in late 2020 and 2021 (the "Fee Claim").

---

[1] Co-op shares, like those representing Mr. Giuliani's interest in his New York Apartment, are treated as personal rather than real property for purposes of New York's judgment enforcement procedures. *See LI Equity Network, LLC v. Village in Woods Owners Corp.*, 910 N.Y.S.2d 97, 99 (App. Div. 2010) ("Cooperative apartments are personal property, not real property") (internal citations omitted).

     5.    *The New York Apartment*

The New York Apartment is located at 45 East 66th Street Apartment 10W, New York, New York, 10065, Block 1381, Lot 1104. Nathan Decl. ¶ 9, Exs. 3, 4. According to publicly available filings, Mr. Giuliani's interest in the apartment is represented by 1,430 shares of stock in, and the proprietary lease for, Apartment 10W with 45 East 66th Owners Corp. *See* Nathan Decl. ¶ 9, Exs. 3, 4. In his initial bankruptcy disclosures, Mr. Giuliani reported that the New York Apartment had a value of $5.6 million and that he owned the apartment in fee simple. Nathan Decl. ¶ 6, Ex. 2, at 2. The monthly maintenance fees with respect to the apartment are substantial, running into the five figures on a monthly basis. *See* Nathan Decl. ¶ 12, Ex. 7 (disclosing $15,000.00 maintenance fee payments on each of September 29, 2023 and October 31, 2023 and $18,000 maintenance fee on November 3, 2023); Nathan Decl. ¶ 13, Ex. 8, at 17 (disclosing $33,331.29 maintenance fee payment on January 17, 2024). The New York Apartment is Mr. Giuliani's primary residence. Nathan Decl. ¶ 2, 6, Ex. 9, at 9:02–10:05.

Before filing for bankruptcy, Mr. Giuliani had listed the New York Apartment for $5.7 million. While the bankruptcy case was pending, Mr. Giuliani received authorization to retain Sotheby's International Realty as his real estate broker to market and sell the New York Apartment. *See* Order, *In re Rudolph W. Giuliani*, 23-12055-SHL (Bankr. S.D.N.Y. June 7, 2024), ECF No. 244. The New York Apartment is currently listed by Sotheby's at $5.7 million. Nathan Decl. ¶ 10, Ex. 5.

     6.    *The Florida Apartment*

The Palm Beach Condo is located at 315 South Lake Drive, Palm Beach, Florida, in "The Southlake," a luxury building with amenities such as a resort style pool and outdoor lounge area. According to Mr. Giuliani's sworn disclosures in the Bankruptcy Court, the Palm Beach Condo

has a current value of $3.5 million,[2] and Mr. Giuliani owns the Palm Beach Condo in fee simple. *See* Nathan Decl. ¶ 6, Ex. 2, at 3, Ex. 6. The condominium fees associated with the Palm Beach Condo also exceed $15,000 per month. Nathan Decl. ¶¶ 12–13, Exs. 7, 8. On August 8, 2024, Plaintiffs recorded a certified copy of the Judgment with the Clerk of Palm Beach County, thereby establishing a lien on the Palm Beach Condo. *See* Nathan Decl. ¶ 19, Ex. 13; Fla. Stat. § 55.10.

       7.     *The Fee Claim*

Mr. Giuliani testified under oath at the Section 341 meeting of creditors in his bankruptcy case that he is owed "about two million dollars" by the Trump 2020 Presidential Campaign (the "Trump 2020 Campaign") and/or the Republican National Committee for his work following the 2020 presidential election. Nathan Decl. Ex. 9, at 61:15–16; *see id.* 63:1–2 (confirming that the Trump 2020 Campaign and the Republican National Committee "were supposed to split it"). According to Mr. Giuliani's sworn testimony, he submitted an invoice for payment of these fees, but was never paid. *Id.* 60:11–17.

       8.     *Mr. Giuliani's Personal Property Disclosed in Bankruptcy*

Mr. Giuliani has also disclosed ownership of numerous items of personal property. In his bankruptcy filings, Mr. Giuliani's sworn disclosures included the following assets:

- Mercedes-Benz, Model SL500, 1980
- Various items of furniture
- Television
- Sports Memorabilia
  - signed Reggie Jackson picture
  - signed Yankee Stadium picture
  - signed Joe DiMaggio shirt
- Costume jewelry
- Diamond Ring
- 3 Yankee World Series Rings
- 2 Bulova Watches

---

[2] At the 341 Meeting, the Mr. Giuliani testified that the Palm Beach Condo was appraised two years ago in connection with his divorce proceeding, so "it's a pretty accurate appraisal." Nathan Decl. ¶ 16, Ex. 9, at 148:1.

- 5 Shinola Watches
- 1 Tiffany & Co. Watch
- 1 Seiko Watch
- 1 Frank Muller Watch
- 1 Graham Watch
- 1 Corium Watch
- 1 Rolex Watch
- 2 IWC Watches
- 1 Invicta Watch
- 2 Breitling Watches
- 1 Raymond Weil Watch
- 1 Baume & Mercer Watch
- 6 additional Watches

Nathan Decl. Ex. 2, at 4. In addition, Mr. Giuliani maintains two personal checking accounts at Citibank with account numbers ending -1428 and -5812. Nathan Decl. ¶ 21, Ex. 16, at 1–2. These accounts had total disbursements of $178,987.60 from April 1, 2024 to August 2, 2024. Nathan Decl. ¶ 21, Ex. 16, at 14. Plaintiffs have issued subpoenas for more recent statements and related records.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 69, the "procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a)(1). Accordingly, "Article 52 of the C.P.L.R. governs the enforcement and collection of money judgments" in execution proceedings under Federal Rule of Civil Procedure 69. *245 Park Member LLC v. HNA Grp. (Int'l) Co.*, 674 F. Supp. 3d 28, 39 (S.D.N.Y. 2023), *aff'd*, No. 23-842, 2024 WL 1506798 (2d Cir. Apr. 8, 2024).

CPLR § 5225 provides:

Upon motion of the judgment creditor, upon notice to the judgment debtor, where it is shown that the judgment debtor is in possession or custody of money or other personal property in which he has an interest, the court shall order that the judgment debtor pay the money, or so much of it as is sufficient to satisfy the judgment, to

> the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff.

N.Y. C.P.L.R. § 5225(a). "To obtain such an order, the judgment creditor need only establish that the judgment debtor owns and possesses the property at issue." *245 Park Member LLC.*, 674 F. Supp. 3d at 39. "Once this showing is made, 'the court *shall* order that the judgment debtor pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor.'" *Id.* (emphasis added) (quoting CPLR § 5225(a)).

CPLR § 5228(a) provides:

> Upon motion of a judgment creditor, upon such notice as the court may require, the court may appoint a receiver who may be authorized to administer, collect, improve, lease, repair or sell any real or personal property in which the judgment debtor has an interest or to do any other acts designed to satisfy the judgment.

N.Y. C.P.L.R. § 5228. "The appointment of a receiver pursuant to section 5228(a) is a matter within the court's discretion." *Mishcon de Reya N.Y. LLP v. Grail Semiconductor, Inc.*, No. 11-cv-4971-JMF, 2012 WL 5512240, at *3 (S.D.N.Y. Nov. 13, 2012) (quoting *Hotel 71 Mezz Lender LLC v. Falor*, 926 N.E.2d 1202, 1211 (N.Y. 2010)) (cleaned up). Although "[t]here is no formal test for whether a receiver should be appointed," the New York Court of Appeals has identified "three considerations" that guide lower courts' discretion, namely: "(1) alternative remedies available to the creditor; (2) the degree to which receivership will increase the likelihood of satisfaction; and (3) the risk of fraud or insolvency if a receiver is not appointed." *Id.* (cleaned up).

Finally, 28 U.S.C. § 754 provides that a "receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such property with the right to take possession thereof," and "shall have capacity to sue in any district without ancillary appointment." 28 U.S.C. § 754.

11

## ARGUMENT

### A.    Plaintiffs Are Entitled to a Turnover Order Under CPLR § 5225.

Plaintiffs are entitled to a turnover order with respect to all of the personal property at issue in this motion. Under CPLR § 5225, "the judgment creditor need only establish that the judgment debtor owns and possesses the property at issue. . . . Once this showing is made, the court *shall* order" that the judgment debtor turn it over. *245 Park Member LLC.*, 674 F. Supp. 3d at 39 (emphasis added). Because Mr. Giuliani has received notice of this Motion consistent with CPLR § 5225, and because Plaintiffs have demonstrated that Mr. Giuliani owns and possesses the personal property detailed above—*i.e.*, all of the property subject to this Motion other than the Palm Beach Condo, which is real property—Plaintiffs are entitled to turnover. *See, e.g.*, *Keawsri v. Ramen-Ya Inc.*, No. 17-CV-2406 (LJL), 2023 WL 4364168, at *1–2 (S.D.N.Y. July 6, 2023).

Further, Plaintiffs' right to turnover extends to all of the personal property detailed above— including the cash accounts, the physical property, the Fee Claim, and the co-op shares and proprietary lease representing Mr. Giuliani's interest in the New York Apartment. With respect to the cash, Plaintiffs are entitled to an order requiring that Mr. Giuliani turn over to them all nonexempt cash in his accounts. CPLR § 5225(a). Similarly, because the Fee Claim is "intangible" and its value is "uncertain," the Court should exercise its "broad discretionary powers" under CPLR § 5240 and require that Mr. Giuliani transfer the Fee Claim "directly" to them, "rather . . . than to the sheriff to be sold at auction." Richard C. Reilly, Supplementary Practice Commentaries, McKinney's Cons Laws of NY, CPLR 5225:2 Property of Money in Judgment Debtor's Possession (2019); *see* CPLR § 5225(c) ("The court may order any person to execute and deliver any document necessary to effect payment or delivery."). And the Court should extend the same principle to Mr. Giuliani's other personal property, which consist of luxury goods and sports memorabilia whose value would be maximized through a specialized marketing and auction

process, rather than a sheriff's execution sale. *Id.* Finally, the Court should enter this turnover order immediately, and together with the receivership order requested. *See, e.g.*, *Mishcon de Reya N.Y. LLP*, , 2012 WL 5512240, at *4 (simultaneously entering turnover order and receivership order with respect to the same property).

### B.  Plaintiffs Are Entitled to a Receivership Order Covering the Palm Beach Condo, and any Other Property that Mr. Giuliani Does Not Turn Over Promptly.

Plaintiffs are entitled to an order appointing them as receiver over the Palm Beach Condo, pursuant to CPLR § 5228. And, in the highly likely event that Mr. Giuliani does not promptly comply with the turnover order, Plaintiffs are entitled to an order appointing them as receiver over the other specific property discussed in this Motion. The Court should accordingly enter an order appointing Plaintiffs as receivers of the Palm Beach Condo, and order Mr. Giuliani to show cause why, if he does not turn over the personal property at issue here within seven days, the same receivership order should not be amended to cover that personal property as well.

#### 1.  *Receivership Is Appropriate Over All of the Property Described in this Motion*

All of the relevant factors emphasized by the New York Court of Appeals—viability of alternative remedies, whether receivership will increase the likelihood of satisfaction, and the risk of fraud or insolvency—overwhelmingly support appointment of a receiver here based solely on the characteristics of this particular judgment debtor. First and foremost, alternative remedies are inferior to appointment of a receiver. There is a lessened need to consider such alternative remedies where, as here, the judgment debtor has already confirmed "that he lacks the means and motivation to satisfy the judgment." *Coscia v. Eljamal*, 8 N.Y.S.3d 882, 885–86 (Sup. Ct. 2015), *aff'd*, 69 N.Y.S.3d 320 (App. Div. 2017). And a consistent line of cases in this District has found appointment of a CPLR § 5228 receiver appropriate where, as here, "without the appointment of

a receiver, the Court has no assurance that Defendant would comply with [court orders], let alone make good faith attempts to satisfy the judgment." *Id.* (collecting cases).[3]

As determined now by *two* federal judges, Mr. Giuliani's conduct over the past three-and-a-half years of litigation—first in the D.C. district court, then in bankruptcy court—has placed him in the heartland of that line of cases. *See supra*, at 3–6. Mr. Giuliani has proved time and again that he cannot be trusted to provide "even basic disclosure," much less obey direct court orders. *In re Giuliani*, 2024 WL 3384185, at *4. Instead, Mr. Giuliani "appears determined to avoid [his] legal obligations," and "has ignored court orders" both in the underlying litigation and the subsequent bankruptcy case. *Blue Citi LLC v. 5Barz Int'l Inc.*, No. 16-CV-9027 (VEC), 2019 WL 6976972, at *3 (S.D.N.Y. Dec. 20, 2019). This "resistance to fulfilling legal obligations is part of a well-established pattern"—such that it is now clear that Mr. Giuliani has "no intention of satisfying the judgment on [his] own." *Union Cap. LLC v. 5Barz Int'l LLC*, No. 16-cv-6203 (KBF), 2017 WL 11615186, at *2 (S.D.N.Y. July 26, 2017) (quoting *Spotnana, Inc. v. Am. Talent Agency, Inc.*, No. 09 CIV. 3698 LAP, 2013 WL 227546, at *6 (S.D.N.Y. Jan. 22, 2013)). Mr. Giuliani has had "more than enough time to satisfy the judgment without the Court's intervention," and has used that time to demonstrate that he will not do so. *Daum Glob. Holdings Corp. v. Ybrant Digital Ltd.*, No. 13-CV-3135(AJN), 2018 WL 2122816, at *3–4 (S.D.N.Y. May 8, 2018). The record is clear that any enforcement devices that rely on even minimal participation by the judgment debtor

---

[3] *See* Memorandum and Order at 5, *Union Cap. LLC v. 5Barz Int'l Inc.*, No. 16-CV-6203, Dkt. 80 (appointing a receiver in part because "[i]t seem[ed] to the Court that BARZ would rather avoid the Court's orders than comply with them."); *Spotnana*, 2013 WL 227546, at *6 (appointing a receiver because defendants "consistently dragged their feet on satisfying the judgment and [ ] seem[ed] determined to conceal funds that could otherwise be used to reduce the judgment"); *Mishcon de Reya N.Y. LLP.*, 2012 WL 5512240, at *3 (appointing a receiver because defendant "proved unwilling or unable to obtain financing to satisfy the judgment."); *Ernest Lawrence Grp., Inc. v. Gov't Careers Ctr. of Oakland, Cal.*, No. 99-CV-3807, 2000 WL 1655234, at *2 (S.D.N.Y. Nov. 3, 2000) (noting debtor's "disregard for the judicial process").

would run aground on Mr. Giuliani's demonstrated strategy of disobedience and delay. Under well-established case law applying CPLR § 5228, receivership is therefore appropriate.

Second, the risk of fraud and insolvency here weighs in favor of receivership. Mr. Giuliani *is* insolvent, by his own telling. *See* Petition, *In re Giuliani*, No. 23-12055 (Bankr. S.D.N.Y. Dec. 21, 2023), ECF No. 1. As is well established, a "significant risk of insolvency can justify appointment of a receiver without any indication of fraud," and is even "[p]erhaps the strongest factor militating towards receivership[.]" *Skaff v. Progress Int'l, LLC*, No. 12 CIV. 9045 KPF, 2014 WL 5454825, at *9 (S.D.N.Y. Oct. 28, 2014) (citations and internal quotation marks omitted). Here, Mr. Giuliani is admittedly insolvent, and would still be in bankruptcy had he not disqualified himself through his own bad-faith conduct. Furthermore, Mr. Giuliani's admitted conduct carries more than a whiff of fraud: in the bankruptcy case, Mr. Giuliani disclosed that he had been funneling payments for his marketing activities to a limited liability company called "Giuliani Communications LLC," which Mr. Giuliani described as his "alter ego." *See* Debtor's Opp. for Entry of an Order Directing Immediate Appointment of Trustee at ¶ 5, *In re Giuliani*, No. 23-12055-SHL (Bankr. S.D.N.Y. June 10, 2024), ECF No. 250.[4] Such financial sleight of hand also weighs in favor of a receivership here. *See, e.g.*, *Spotnana*, 2013 WL 227546, at *6–7 (finding receivership appropriate in part because a judgment debtor had channeled assets into an affiliated LLC, suggesting a "determin[ation] to conceal funds that could otherwise be used to reduce the judgment").

Finally, receivership would maximize the likelihood of satisfaction compared to other available remedies, because, for each of the assets at issue, resort to a sheriff's levy, execution, and public auction would not result in a value-maximizing sale. Unfortunately, no enforcement

---

[4] Indeed, one contract described Mr. Giuliani as "Giuliani Communications, LLC **aka** Rudolph Giuliani." Nathan Decl. ¶ 20, Ex. 15.

device will realistically lead to satisfaction of Plaintiffs' judgment in full. But "receivership would nonetheless increase the likelihood that [Plaintiffs] would recover at least part of the outstanding judgment." *Daum Glob. Holdings Corp.*, 2018 WL 2122816, at *3–4. Such a "greater opportunity to achieve partial satisfaction" is sufficient to make receivership appropriate under CPLR § 5228. *Id.*

> 2.    *Receivership Is Especially Appropriate With Respect to Mr. Giuliani's Apartments and the Fee Claim.*

Under established New York law, receivership is especially appropriate with respect to the Fee Claim and Mr. Giuliani's two apartments. "Under New York law, a receivership to sell the judgment debtor's property is appropriate when, in the judgment of the court, a public auction is inadequate either because it is unlikely to produce significant bids . . . or because leaving the property in the hands of the judgment debtor creates a risk of fraud or insolvency[.]" *United States v. Vulpis*, 967 F.2d 734, 736–37 (2d Cir. 1992) (citing authorities, including Siegel's New York Practice). With respect to the apartments, the New York Apartment and the Palm Beach Condo are both luxury properties with a niche, high-end market. That market is best reached with the assistance of experienced brokers who can market the properties appropriately. *See BSH Hausgeräte GMBH v. Kamhi*, No. 17 CIV. 5776, 2018 WL 4583497, at *3 (S.D.N.Y. Sept. 25, 2018) (granting receivership over Manhattan apartment where "only alternative remedy available to Petitioner is sale of the Property by a sheriff in a public auction."); *Colfin Bulls Funding B, LLC v. Ampton Invs., Inc.*, No. 151885/2015, 2018 WL 7051063, at *7 (N.Y. Sup. Ct. Nov. 26, 2018) (finding receivership appropriate where "the sale of the valuables herein is likely to be more successful, i.e., generate higher sales prices, if a receiver becomes involved to ensure that a qualified auction house, such as Christie's, sells the items for the maximum price so that more of the . . . judgment can be satisfied"); *see* Siegel, N.Y. Practice § 512 (6th ed.) ("One of

[receivership's] prime uses is where it's shown that a private sale of some item of the debtor's property, real or personal, will likely bring a substantially higher price than would the public auction that a sheriff is required to conduct when levying an execution."). Furthermore, receivership over the apartments would prevent further deterioration of each property's value due to the ongoing accumulation of maintenance obligations—which in both cases exceed $10,000 per month. *Supra* at 7-8.

Similarly, with respect to the Fee Claim, receivership is New York law's preferred enforcement mechanism because other available remedies would not result in value-maximizing management of the asset. *See* Siegel, N.Y. Practice § 512 (6th ed.) ("Another good use of this device is where the interest sought is a cause of action the judgment debtor has against a third person . . . . a judgment debtor may lack incentive to pursue the claim. A receiver can be appointed to bring the suit in the debtor's behalf.").

At bottom, "appointment of a receiver is a discretionary measure that should be governed by common sense." *Skaff*, 2014 WL 5454825, at *9. Mr. Giuliani has spent three years proving his unwillingness to comply with the legal process. Now that Plaintiffs are finally in a position to collect their judgment, the Court should not hesitate to employ the enforcement devices available under New York law.

### C.    The Court Should Appoint Plaintiffs as Receivers Under CPLR § 5228, Without Bond or Other Undertaking.

The Court should appoint Plaintiffs as receivers, without compensation other than "necessary expenses," and without bond. As is well established, a judgment creditor may be appointed a receiver under CPLR § 5228, with the sole caveat that "if a judgment creditor is appointed receiver, he shall not be entitled to compensation." CPLR § 5228(a); *see Daum Glob. Holdings Corp.*, No. 13-CV-3135 AJN, 2018 WL 2122816, at *4 (appointing judgment creditor

17

as receiver). Further, "[b]ecause the assets going into receivership will be applied in satisfaction of the judgment, there is no need for the Court to set a bond amount under C.P.L.R. § 6403." *Id.* Plaintiffs have submitted a proposed order accompanying this motion drawing on similar receivership orders entered in other cases in this District. *See*, *e.g.*, Memorandum Opinion & Order at 8-10, *Daum Glob. Holdings Corp.*, No. 13-cv-3135-AJN (S.D.N.Y. May 8, 2018), ECF No. 101; Order Granting Motion for the Appointment of a Receiver, *BSH Hausergate GMBH v. Kamhi*, No. 17-cv-5776-RWS (S.D.N.Y. Sept. 25, 2018), ECF No. 75; Order, *Union Capital LLC v. 5Barz Int'l Inc.*, No. 16-cv-6203-KBF (S.D.N.Y. Aug. 8, 2017), ECF No. 85.

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Paragraph 2(M) of the Court's Individual Rules and Practices, Plaintiffs state that counsel for Plaintiffs is prepared to appear for oral argument at the Court's convenience, should the Court determine that oral argument is appropriate, but respectfully submit that this Court should otherwise dispense with oral argument in the interest of a speedy resolution of this Motion.

## CONCLUSION

The Court should direct Mr. Giuliani to respond to this Motion within **seven days** of service by certified mail or otherwise. Following that response, the Court should immediately enter the attached proposed order (1) appointing Plaintiffs as receivers of the Receivership Property defined therein, including the Palm Beach Condo; (2) ordering Mr. Giuliani to turn over the personal property specified in this Motion pursuant to CPLR § 5225; and (3) ordering Mr. Giuliani to show cause why the receivership order should not be amended to include all personal property subject to this motion that Mr. Giuliani has not transferred to Plaintiffs within **seven days** of entry of the attached proposed order.

Respectfully submitted,

Dated: August 30, 2024                                    s/ Aaron E. Nathan
       New York, New York

John Langford                                    Michael J. Gottlieb
Rachel Goodman                                   Meryl C. Governski (admitted *pro hac vice*)
United to Protect Democracy                      Willkie Farr & Gallagher LLP
82 Nassau Street, #601                           1875 K Street NW
New York, NY 10038                               Washington, DC 20006
(202) 579-4582                                   (202) 303-1000
john.langford@protectdemocracy.org               mgottlieb@willkie.com
rachel.goodman@protectdemocracy.org              mgovernski@willkie.com

Christine Kwon                                   Aaron E. Nathan
(*pro hac vice forthcoming*)                     M. Annie Houghton-Larsen
P.O. Box 341423                                  Willkie Farr & Gallagher LLP
Los Angeles, CA 90034-9998                       787 Seventh Avenue
(202) 579-4582                                   New York, NY 10019
christine.kwon@protectdemocracy.org              (212) 728-8000
                                                 anathan@willkie.com
Von DuBose (*pro hac vice forthcoming*)          mhougtonlarsen@willkie.com
DuBose Miller LLC
75 14th Street NE. Suite 2110
Atlanta, GA 30309
(404) 720-8111
dubose@dubosemiller.com

*Attorneys for Plaintiffs Ruby Freeman and Wandrea' Moss*

19