# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
------------------------------------------------------X  
In re:

RUDOLPH W. GIULIANI  
a/k/a RUDOLPH WILLIAM GIULIANI

                    Debtor  
-------------------------------------------------------- X

Hearing Date: June 17, 2024 at 11:00 a.m.

Chapter 11

Case No: 23-12055

## DEBTOR'S OPPOSITION TO THE MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF RUDOLPH W. GIULIANI FOR ENTRY OF AN ORDER DIRECTING THE IMMEDIATE APPOINTMENT OF A TRUSTEE PURSUANT TO 11 U.S.C. §1104

TO:    HONORABLE SEAN H. LANE  
        UNITED STATES BANKRUPTCY JUDGE

Rudolph W. Giuliani, the Debtor and Debtor-in-Possession herein ("Debtor"), by his attorneys Berger, Fischoff, Shumer, Wexler & Goodman, LLP, as and for his opposition to the motion by the Official Committee of Unsecured Creditors seeking the entry of an order directing the immediate appointment of a trustee pursuant to 11 U.S.C. §1104, and Rules 9014 (a) and (b) and 9006 (d) of the Federal Rules of Bankruptcy Procedure which motion is predicated upon a false narrative of facts, represents as follows.

1. Rudolph W. Giuliani filed his petition for relief from creditors on December 21, 2023. He has therefore continued in the management and operation of his business affairs as a debtor and debtor in possession pursuant to Section 1107 and 1108.

2. An official committee of unsecured creditors was appointed on January 12, 2024. No trustee or examiner has been appointed in this case.

### JURISDICTION AND VENUE

3. The United States Bankruptcy Court for the Southern District of New York (this Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §1334 and the *Amended*

1

*Standing Order of Reference* from the United States District Court for the Southern District of New York entered February 1, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. §157.

4. Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

## SUMMARY OF THE DEBTOR'S OPPOSITION TO THE MOTION

The motion should be denied because:

5. The Debtor operating through an alter ego LLC is usual and customary and is not fraud or deceit;

6. The Committee's refusal to facilitate an appeal by the Debtor of the "Freeman" case is delaying the resolution of the fundamental issue of the case and as discussed herein the appeal is not just a "hail mary" but a well reasoned and meritorious appeal;

7. The Debtor has contributed $206,0000 of exempt funds to his chapter 11 case preserving the equity in his two apartments for the benefit of creditors;

8. The Debtor has been working on improving his compliance with administrative guidelines;

9. The Committee has not proven by clear and convincing evidence that the appointment of a Trustee is warranted or beneficial to the estate

10. If the Court is not inclined to deny the motion, the Debtor requests the Court schedule an evidentiary hearing.

## INTRODUCTION

11. The Debtor is an 80 year old individual who was compelled to file for relief from creditors pursuant to Chapter 11 of the Bankruptcy Code, to protect his limited assets from being seized by the Plaintiff's in the "Freeman" litigation who had days earlier obtained a judgment in excess of $148,000,000.00.

12. The Debtor who had a storied career as a U.S. Attorney for the Southern District of New York, followed by two terms as the Major of New York City, a stint as a Deputy Attorney General in Washington D.C. and then followed by a highly successful legal and consultant practice.

13. He is currently suspended from practicing law in the State of New York and is disbarred from the practice of law in Washington D.C. This accounts for a loss of a substantial part of his earning capacity.

14. Currently the Debtor is employed by Giuliani Communications, LLC, the Debtor's wholly owned operating entity. He produces a podcast "America's Mayor Live" and also does some other broadcasts. From time to time the Debtor also through his operating company accepts business opportunities as they may arise – from speaking engagements to such opportunities as the Rudy Coffee – a joint venture wherein the Debtor through his LLC is to receive a share of profits generated by coffee sales.

15. He has always done business through various entities – recently through the Guiliani Communications company. His gross income for his services are deposited into the entity. From the revenue received he pays his staff of two full time employees and three part time employees[1] and other business expenses, with any excess paid to him as personal income for payment of his personal expenses. In the past when the business revenue was insufficient to cover the business expenses he has transferred personal funds from his exempt retirement accounts to help cover the business expenses. Ryan Medrano, the parti

---

[1] The four employees are a) Maria Ryan – oversees the overall business strategy business opportunities; b) Ryan Medrano – part time bookkeeper, maintains the books and records; c) Theodore Goodman – he is the producer of the podcast "America's Mayor Live"; d) Michael Ragusa – part time employee – Associate Producer of "America's Mayor Live" and occasionally provides security to the Debtor; e) Vanessa Federson - part time assistant – assists with general secretarial duties and deals with the shows guest and their travel arrangements.

3

time book keeper, has been ill for about the past ten days so the Debtor has not been able to obtain a current P&L for the company, which he would have attached to this opposition. The Debtor has been, and will continue, as necessary, to use his exempt retirement funds to help pay his personal expenses.

16. The funds coming into the estate are modest - but yet the creditors committee continues the talk of the Debtor hiding assets and income and potential bankruptcy crimes. While the Debtor may be struggling with some of the administrative aspects – he has always been fully transparent and open about his finances. He does not intend to hide assets or mislead anyone.

17. The Committee has stated they need to conduct a wide array of discovery of the Debtor's finances and business affairs - both pre and post petition. They have obtained Court orders authorizing many document requests and depositions from a myriad group of persons in and outside of the Debtor's orbit. They have stated they are looking for the "bodies". The Debtor does not dispute the Committee's obligations to conduct an in depth examination of the Debtor's pre-petition and post-petition affairs. But noticeably absent from the motion for the appointment of a trustee is any support for the stated proposition of "finding the bodies". Instead they filed a motion with the most serious of consequences – the appointment of a trustee – because the Debtor is not an accurate record keeper – which is not the fundamental equivalent of fraud.

18. The Debtor submits that the Committee and indeed all of the parties, except the Debtor, have lost sight of the primary driver for the success or failure of this case – the Debtor's right and ability to appeal the Freeman judgment.

19. The Debtor believes that it has valid and meritorious issues to be raised on appeal resulting in either a possible reversal, reduction of damages or even dismissal of the case. As such, a successful appellate result would change the dynamics of this case and substantially improve the prospects for unsecured creditors dividends. Kenneth Caruso, Esq., (who has offered his services at no cost to the Estate) in expectation of his appointment as special appellate counsel for the anticipated appeal, has already analyzed the applicable issues. His analysis, in the form of a preliminary appellant brief, is included with his attached declaration annexed hereto as Exhibit "A". His thoughtful and careful analysis highlights that the Debtor's hopes to upset the verdict on appeal is not some pie in the sky pipe dream, but is a realistic prospect that will fundamentally alter the landscape of the case

20. While the Committee is complaining that the Debtor is not making progress – the Debtor has been primarily and justifiably focused on prosecuting the appeal – which is in the best interest of his creditors. The Debtor has been seeking a third party funder for the plan, so far without success. The Debtor could propose a plan but it seems a little premature at this point and for what purpose – it would have to have such contingencies it would be virtually meaningless.

21. The Freeman parties refusal to facilitate the Debtor's appeal is particularly inequitable, and smacks of trying to have it both ways. The Freeman parties have sought an order that the debt owed to them is non-dischargeable. They rely on the doctrine of collateral estoppel, contending that the Debtor is collaterally estopped from relitigating here the issues decided against him in the Freeman Litigation in Washington, D.C.

22. The doctrine of collateral estoppel, however, goes hand-in-hand with the right to appeal. "The doctrine of collateral estoppel represents a choice between the competing values of

correctness, uniformity, and repose. . . . Appellate review plays a central role in assuring the accuracy of decisions. Thus, although failure to appeal does not prevent preclusion, [citations omitted], *inability to obtain appellate review*, or the lack of such review once an appeal is taken, *does prevent preclusion*." *Gelb v. Royal Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986) (emphasis added).

23. Here, because of the bankruptcy stay, the Debtor has an inability to obtain appellate review of the Freeman judgment. The Freeman parties, however, want the benefit of collateral estoppel without allowing the Debtor to appeal, to "assur[e] the accuracy of" the Freeman judgment. *Gelb*, 798 F.2d at 44. That is inequitable. *CBF Industria de Gusa S/A/ v. AMCI Holdings, Inc.*, 850 F.3d 58, 77-78 (2d Cir. 2017) (collateral estoppel is an "equitable doctrine[.]")

24. While the Debtor will address the administrative deficiencies in greater detail below and concedes he needs to improve his adherence to the administrative guidelines which is essential to the proper administration of the case. On the other hand the modification of the automatic stay and the pursuit of his appellate rights is the key to unlocking the case and moving it forward.

## THE DEBTOR IS NOT CONCEALING ASSETS OR COMMITTING BANKRUPTCY FRAUD

25. The Debtor is an 80 year old former attorney, is barred from practicing law. His only source of employment income is generated from his personal services. He is suffering from possible 911 lung disease and his future earning capacity is limited both by his age and future health.

26. He has always operated his businesses which were essentially the same as currently – personal services income - through various corporate entities.

27. Indeed it is submitted that for an individual to receive personal service income into a wholly owned entity is not unusual nor should it be considered a badge of fraud. This is no different than an attorney, doctor or accountant providing personal services through a professional corporation.

28. The Debtor has complied with the Rules of Bankruptcy Procedure by filing Official Form 425 pursuant to Rule 2015.3 on January 30, 2024. The next report is not due until July 30 2024.

29. The Form 426 includes a schedule of five LLC's and one corporation. Except for Guiliani Communications, LLC ("GC") the other entities are essentially dormant. The schedule also clearly indicates that GC was in receipt of substantial, if not all of the revenue generated by the Debtor. He is not concealing his income. The portrayal of the Debtor as committing bankruptcy fraud by the Committee is a stretch of facts and not supported by the common sense observation of the facts.

30. There is nothing new or unusual about the manner in which the Debtor operates. He has always used the income he generates to pay business expenses and then use any remainder to cover his personal expenses. The mere fact that at the conclusion of most months, the gross revenue received does not exceed the expenses – and hence no personal income to the Debtor – is not, as portrayed by the committee, a scheme to defraud creditors.

31. In most months the Debtor has funded his personal expenses from his exempt funds – either social security payments or distributions from his IRA. From December 2023 until May

2024 he has funded his personal expenses with a total of at least $206,000.00 from exempt accounts.

32. What the Committee never explains is how the appointment of a trustee will improve the prospect for creditors. A trustee and his professionals will add a new expensive layer of administration. The appointment of a trustee will not expand the limited assets or increase the Debtor's personal services income. He will still, only own the two apartments and miscellaneous personal property. When the New York City apartment is sold, the funds will be held in escrow and be eroded by a new layer of administrative costs. A trustee can not compel an 80 year old to work harder, more hours or longer hours. It appears that the motion is more punitive than productive.

33. At paragraph 60 of the motion the Committee actually states that an 80 year old man should obtain a "paying job" to help pay more than $150,000,000 of claims. Maybe the Committee also has a suggestion on who would employ an 80 year old disbarred attorney.

**THE DEBTOR HAS CONTRIBUTED AT LEAST $206,000.00 OF EXEMPT FUNDS TO THE ESTATE**

34. The Committee makes a series of allegations about the Debtors transactions. The Debtor will address them below;

35. At paragraph 44 of the motion, the Committee alleges the Debtor improperly paid $28,000.00 for his ex-mother in laws nursing home. Annexed hereto as Exhibit "B" is a copy of the Notice of Entry dated January 29, 2020 of the Debtors Judgment of Divorce. Attached as part of the judgment is a transcript of the hearing with the agreed terms of the settlement spread on the record. The transcript at page 5, lines 15 through 18 state as follows:

> "Mr. Guiliani will further agree to continue to pay the expenses for Ms. Giuliani's mother in the same manners as he has been doing during the pendency of this case, which I think is primarily her nursing home care."

A copy of page 5 is annexed hereto as Exhibit "C".

36. The Debtor believes the Committee has already received a copy of the full transcript but will provide the Committee and the Court with a copy, but not will attach it to the publicly filed document for privacy reasons.

37. At paragraph 45 the Committee refers to his "club membership". The Debtor has a membership in the Plam Beach Yacht Club. He had a credit to his account so he paid the balance due of $148.52, to continue his membership for an additional year. He rarely goes to the club and intends to let it lapse. He is also an honorary member of the Metropolitan Club in New York and paid dues for an annual membership to the Metropolitan Museum of Art. The memberships are left over aspects of his "previous" lifestyle prior to his divorce. The Debtor rarely if ever visits any of these. The fact that the Debtor may frequent from time to time a club he is or was a member of, nor is an imperfect memory the equivalent, as the Committee contends, of dishonesty or fraud.

38. The next issue raised by the Committee at paragraph 60 addresses payments made on behalf of the business. The Debtor concedes that his compliance with the operating guidelines was not up to par – but was done out of habit – not fraudulent intent. He has in the past frequently paid business expenses from his personal account but understands he can not continue to do so. But the Debtor is striving to adhere to the guidelines. Most

9

importantly through May 2024 the Debtor's infusion of $206,000.00[2] far exceeds the $14,887.77 questioned by the Committee.

39. The Committee included a schedule of allegedly improper payments by the Debtor at page 32 of its motion illustrates that the Debtor has been improving his administrative compliance. The schedule includes payments mostly from January and a few from March. The Debtor believes this a positive improvement. And the Committee continues to complain that the Debtor has not made an effort to recover the payments. This is not true because the Debtor has personally reimbursed the Estate from exempt funds in an amount far in excess of the challenged payments.

40. The Debtor has withdrawn $206,000.00 from his retirement accounts to help support the business and pay expenses associated with the New York and Florida apartments including real estate taxes, common charges and monthly coop maintenance. These payments have a direct positive benefit for the creditors by preserving the equity in the assets without cost to the Estate. Why did the committee not complain about the Debtor's voluntary contributions of $206,000.00. In actuality the Debtor has more than repaid the $14,877.77 that concerns the Committee.

41. One of the issues the Debtor has had with his financial reporting is his longtime personal accountant Joseph Ricci has declined to help the Debtor prepare his reports. The Debtor has been unable to find another professional willing to become involved in the case.

---

[2] On December 22, 2023 - $100,000.00; January 26, 2024 - $47,000.00; March 28, 2024 - $9,000.00 of social security income; April 16, 2024 - $27,000.00 and April 19, 2024 - $23,000.00.

## LEGAL ARGUMENT

I. **Debtor is Entitled to an Evidentiary Hearing Pursuant to Bankruptcy Rule 9014**

It is respectfully submitted that the Committee's Motion initiated a "contested matter" subject to Bankruptcy Rule 9014 and SDNY Bankruptcy Rule 9014-1. *See* Federal Rules of Bankruptcy Procedure 9014 and 4001. An evidentiary hearing on a contested matter is necessary when there are disputed issues of material fact that a bankruptcy court cannot decide based on the record. *In re AMR Corp.*, 490 B.R. 470, 479 (S.D.N.Y. 2013); *see also Powers v. Am. Honda Fin. Corp.*, 216 B.R. 95, 97 (N.D.N.Y. 1997). Here, where the Committee is seeking the extreme relief of the appointment of a trustee and there exist disputed issues of material fact about the Debtor in Possession's actions, there is the need for an evidentiary hearing.

II. **The Trustee Has Failed to Satisfy Its Burden Sufficient to Warrant the Appointment of a Trustee**

The appointment of a trustee is an extraordinary and disfavored remedy to be exercised only in the most dire of circumstances. *See In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 658 (Bankr. S.D.N.Y. 2006); *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 471 (3d Cir. 1998); *see also, In re W.R. Grace & Co.*, 285 B.R. 148, 158 (Bankr. D. Del. 2002) (appointment of a trustee is warranted only as "a last resort"). The Committee here claims that "simply put, the creditors have no confidence in the debtor" and proceeds to use this and other scurrilous arguments to support the extreme measure of appointing a trustee for the Debtor's estate.

Generally, there is a strong presumption under the Bankruptcy Code that a debtor be permitted to remain in possession, which "arises from a belief that the debtor and current management are generally best suited to orchestrate the process of rehabilitation for the benefit of creditors and other interests of the estate." *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. 518, 524 (Bankr. E.D.N.Y. 1989); *see also Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 577 (3d Cir. 2003) (noting that there is a "strong presumption that the debtor should be permitted to remain in possession," because "appointing a trustee amounts to replacing much of a debtor's high-level management" (internal quotation marks omitted)).

The party moving for appointment of a trustee must prove the need for a trustee under either subsection of 11 U.S.C. § 1104(a) by clear and convincing evidence. *In re Marvel Entertainment Group*, 140 F.3d 463 (3d Cir. 1998), quoting *In re Sharon Steel Corp.*, 871 F.2d 1217 at 1226. "It is settled that appointment of a trustee should be the exception, rather than the rule." *Id.* at 1225.

As set forth herein, the Committee's conclusory allegations of wrongdoing relied upon in the Motion, intended to mask the lack of specific allegations necessary for the appointment of a trustee, fall well short of clear and convincing evidence. At best, the Court should order an evidentiary hearing to allow the Debtor to present evidence, at which time this Court can consider the weight of such evidence.

### A. There is No "Cause" Sufficient to Warrant Appointment of a Trustee under Section 1104(a)(1)

The Trustee brought the instant motion for an Order pursuant to Section 1104(a)(1) of the Bankruptcy Code.

Section 1104(a)(1) of the Bankruptcy Code provides (in relevant part), that the court shall order the appointment of a trustee:

> for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

*See* 11 U.S.C. § 1104(a)(1).

"Cause" under 1104(a)(1) is reserved for cases where clear and convincing evidence has been adduced establishing that management, now under the supervision and control of the Bankruptcy Court and the Office of the United States Trustee, will dissipate the assets of the estate by fraud, gross mismanagement and/or incompetence, leaving little or no hope for reorganization. *See In re North Star Contracting Corp.*, 128 B.R. 66, 68 (Bankr. S.D.N.Y. 1991); *see also Schuster v. Dragone*, 266 B.R. 268, 271 (Bankr. D. Conn. 2001) ("the Court must find something more aggravated than simple mismanagement in order to appoint a trustee").

Courts have consistently refused to appoint a trustee simply because the debtor has experienced financial problems, is insolvent, or has even made imprudent business decisions, reasoning that such factors are not "conclusive of the debtor's lack of integrity or his inability to superintend the reorganization." *See In re Eichorn*, 5 B.R. 755, 757 (Bankr. D. Mass. 1980); *see also, Dalkon Shield Claimants v. A.H. Robins Co., Inc.*, 828 F.2d 239 (4th Cir. 1987) ("[T]o require the appointment of a trustee, regardless of the consequences, in the event of an act of dishonesty by the debtor, however slight or immaterial, could frustrate the purpose of the Bankruptcy Code"). This is especially salient

here, where the Debtor is using his own exempt personal funds to attempt to keep his business afloat. No trustee will be contributing its own personal funds to the estate.

Here, despite the allegations from the Committee that the Debtor is somehow hiding assets and income, all of his financial assets have been laid bare before them. If the Committee has not yet "found the bodies" despite its exhaustive fishing expedition, the answer is not to punish the Debtor for filing a voluntary petition for chapter 11 bankruptcy protection.

The Committee relies on the decision in *In re Sillerman*, 605 B.R. 631 (Bankr. S.D.N.Y. 2019) as if the facts of that case are the same as the instant action. The *Sillerman* Court found the facts therein were "replete with examples of the Debtor's failure to comply with the Bankruptcy Code and his obligations thereunder", which is not present in the instant bankruptcy. The Debtor in *Sillerman*, after nearly eighteen months after the order for relief had not filed a single required report, failed to comply with Court orders. That case involves a motion to appoint a trustee where the Debtor flagrantly defied the Court.

The debtor in *Sillerman* was making unauthorized transactions with non-debtor affiliated entities. Mr. Giuliani is doing no such thing. A business collecting money for personal services instead of an individual himself is not uncommon, much less "perplexing," despite counsel for the Committee's repeated assertions. Do the partners in Akin Gump Strauss Hauer & Feld LLP ask their clients to write checks to them personally or checks payable to the firm?!

Another decision relied on by the Committee's counsel is *In re Ashley River Consulting, LLC*, 2015 Bankr. LEXIS 1008 (Bankr. S.D.N.Y. Mar. 31, 2015). The holding was, with respect to pre-petition conduct, debtors' principal not only being found guilty of

14

affirmative fraud and gross, wanton, and willful misconduct but was also found to be an alter ego of one debtor that should be held accountable for diverting and commingling funds in his reign as controller of one of debtor's creditor. *Id.* Also, the court in *In re Ashley River Consulting, LLC* held that **the fact that the debtor's prior management might have been guilty of fraud, dishonesty, incompetence, or gross mismanagement does not necessarily provide grounds for the appointment of a trustee under § 1104(a)(1)** (emphasis added).

The facts in *In re Denrose Diamond*, 49 B.R. 754 (Bankr. S.D.N.Y. 1985), another decision cited by the Committee, are inapposite to this case and the decision therein was based on a motion to convert a chapter 11 bankruptcy to a chapter 7 bankruptcy and not an application for the appointment of a trustee.

### B. The Appointment of a Trustee is Not in the Best Interests of Creditors as Required by Section 1104(a)(2)

Although, as the Committee argues, subsection (a)(2) seemingly provides a more flexible standard for the appointment of a trustee than that provided under subsection (a)(1), the "best interests" test of subsection (a)(2) is not a "catch-all" provision for the appointment of a trustee when "cause" cannot be established under subsection (a)(1). As articulated by the leading treatise: "Few situations come to mind in which grounds will exist for the appointment of a trustee under subsection (a)(2) although "cause" for such appointment does not exist under subsection (a)(1)." 7 Collier on Bankruptcy § 1104.02[3][d][iii], at 1104-17 (L. King 15th ed. 2002).

The presumption in favor of the continuation of current management, places a "substantial burden" on the party seeking the appointment of a trustee. To prevail under

subsection(a)(2), there must be a showing of clear and convincing evidence of egregious conduct, such as to warrant the grant of extraordinary relief. *See, e.g., In re W.R. Grace & Co.*, 285 B.R. 148, 157 (Bankr. D. Del. 2002) (movant must prove facts under section 1104(a) by "clear and convincing evidence").

In this case, the attendant costs of appointing a trustee—including the trustee's fees and expenses, the fees and expenses of its counsel, and the delay associated with the need to familiarize any trustee with the Debtor's assets and liabilities as well as the outstanding issues in this case—greatly outweigh any potential benefit to the estate. *See In re General Oil Distribs., Inc.*, 42 B.R. 402, 410 (Bankr. E.D.N.Y. 1984) (despite finding mismanagement, appointment of trustee was denied to avoid "saddling the estate with the expense of a trustee and additional counsel").

The Committee's strongest argument in support is the **pre-petition** behavior of the Debtor in the *Freeman* litigation. Respectfully, this Court is not in a position to punish the Debtor for conduct that allegedly took place prior to filing for bankruptcy protection. This is especially true in the context of a chapter 11 voluntary bankruptcy action.

## CONCLUSION

For the foregoing reasons it is submitted that the Committee has not established by clearing and convincing evidence that it is appropriate to appoint a trustee, in the alternative the Court should schedule an evidentiary hearing.

Dated: Syosset, New York
June 10, 2024

By: 

BERGER, FISCHOFF, SHUMER,
WEXLER & GOODMAN LLP
Attorneys for Debtor
6901 Jericho Turnpike, Suite 230
Syosset, New York 11791

Gary C. Fischoff, Esq.
Joan A. Keely, Esq.