**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| RUBY FREEMAN and WANDREA' MOSS, <br><br> Plaintiffs, <br><br> v. <br><br> RUDOLPH W. GIULIANI, <br><br> Defendant. | No. 24-mc-00353-LJL |

### REPLY IN SUPPORT OF PLAINTIFFS' MOTION AND OBJECTION REGARDING CLAIM OF EXEMPTION AS TO FUNDS HELD AT PARKSIDE FINANCIAL BANK AND TRUST

John Langford
Rachel Goodman
United to Protect Democracy
82 Nassau Street, #601
New York, NY 10038
(202) 579-4582
john.langford@protectdemocracy.org
rachel.goodman@protectdemocracy.org


Von DuBose (*pro hac vice forthcoming*)
DuBose Miller LLC
75 14th Street NE. Suite 2110
Atlanta, GA 30309
(404) 720-8111
dubose@dubosemiller.com

Michael J. Gottlieb
Meryl C. Governski (admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com
mgovernski@willkie.com

Aaron E. Nathan
M. Annie Houghton-Larsen
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8000
anathan@willkie.com
mhougton-larsen@willkie.com


*Attorneys for Plaintiffs*

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ...............................................................................................................1

BACKGROUND ..................................................................................................................2

ARGUMENT .......................................................................................................................6

    I.    Mr. Giuliani's Exemption Claim Form Was Untimely. ...................................6

    II.   Mr. Giuliani's Personal Jurisdiction Argument Is Meritless, and He Lacks Standing to Raise It. ...........................................................................................................7

    III.   Giuliani Communications LLC Is Ineligible for CPLR § 5222-a's Exemption Claim Procedures, and Whether to Pierce the Corporate Veil Is Not Before the Court...........11

    IV.   Mr. Giuliani's New Exemption Claim Is Meritless. .......................................13

CONCLUSION..................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advance Serv. Grp., LLC v. Vision Home Builders LLC*,
212 N.Y.S.3d 918 (N.Y. Sup. Ct. Kings Cnty. 2024) ................................................................8

*Freeman v. Giuliani*,
691 F. Supp. 3d 32 (D.D.C. 2023 ......................................................................................3, 4

*Fuld v. PLO*,
82 F.4th 74 (2d Cir. 2023) ...............................................................................................9

*In re Giuliani*,
661 B.R. 493 (Bankr. S.D.N.Y. 2024) ...............................................................................5, 6

*Home Sav. of Am., F.A. v. Gkanios*,
650 N.Y.S.2d 756 (App. Div. 2d Dep't 1996) .........................................................................9

*Kaplan v. Bank Saderat PLC*,
77 F.4th 110 (2d Cir. 2023) ..............................................................................................8

*Koehler v. Bank of Bermuda Ltd.*,
911 N.E.2d 825 (N.Y. 2009) .......................................................................................10, 11

*Levine as trustee of Marvin H. Schein Descendants' Tr. v. Brown*,
No. 15-CV-1738 (JMF), 2020 WL 550653 (S.D.N.Y. Feb. 4, 2020) ...........................................8

*Licci v. Lebanese Canadian Bank*,
984 N.E.2d 893 (N.Y. 2012) .............................................................................................8

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
732 F.3d 161 (2d Cir. 2013) .............................................................................................8

*Motorola Credit Corp. v. Uzan*,
561 F.3d 123 (2d Cir. 2009) ............................................................................................12

*Recovery of Judgment, LLC v. Warren*,
937 N.Y.S.2d 85 (App. Div. 2d Dep't 2012) .....................................................................7, 14

*Trabucco v. Intesa Sanpaolo, S.p.A.*,
695 F. Supp. 2d 98 (S.D.N.Y. 2010) ...................................................................................9

*United States v. Asare*,
No. 15 CIV. 3556 (AT), 2022 WL 6763786 (S.D.N.Y. Oct. 11, 2022) .......................................17

*Yates v. City of New York*,
No. 04 CIV. 9928 (SHS), 2006 WL 2239430 (S.D.N.Y. Aug. 4, 2006) ................................12

*Zhaoyin Wang v. Beta Pharma, Inc.*,
No. 3:14-CV-01790 (VLB), 2015 WL 5010713 (D. Conn. Aug. 24, 2015) ............................8

**Statutes**

11 U.S.C. §§ 152–157 ................................................................................................................15

CPLR § 302(a)(1) ........................................................................................................................8

CPLR § 313 ................................................................................................................................10

CPLR § 5205(d) .........................................................................................................................16

CPLR § 5222-a ..........................................................................................................................10

CPLR § 5222-a(b)(3) ..................................................................................................................6

CPLR § 5222-a(c)(5) ...........................................................................................................6, 7, 14

## INTRODUCTION

Mr. Giuliani's opposition brief does not dispute that CPLR § 5222-a's procedures are unavailable to an entity that, like Giuliani Communications LLC ("Giuliani Communications"), is not a natural person. ECF No. 32 ("Opp."). Instead, Mr. Giuliani tries several new theories—even going so far as to file an "Amended Exemption Claim Form"—in an effort to unfreeze the funds held at Parkside Financial Bank and Trust ("Parkside"). As discussed below, and for the reasons explained in Plaintiffs' initial motion, each of those arguments is meritless. ECF No. 22 ("Motion").

Moreover, Mr. Giuliani's opposition addresses only *one* theory by which Plaintiffs may ultimately seek turnover of the Parkside funds—the alter ego theory that Plaintiffs mentioned in their opening brief, based upon Mr. Giuliani's own description of Giuliani Communications as such. To be clear, there are others: for example, as Plaintiffs pointed out in their Motion, and as Mr. Giuliani does not dispute, Giuliani Communications is *also* independently subject to a final, unappealed order to pay attorney's fees for its discovery violations in the underlying D.C. litigation—an order that merged into the final money judgment at issue here. After further discovery, Plaintiffs will have the option to pursue turnover on that theory, on the alter ego theory discussed in Plaintiffs' motion, or even as to Mr. Giuliani's ownership interest in the LLC itself.

But those are the key words: *after discovery*. Plaintiffs are prepared to move as quickly towards full disclosure as Mr. Giuliani and his entities suggest, but as things stand—and consistent with their behavior for the past two-plus years—Mr. Giuliani and Giuliani Communications have simply ignored discovery requests served on them in this enforcement proceeding. Despite possessing the vast majority of relevant evidence—or maybe *because* they do—Giuliani Communications and Mr. Giuliani have not even responded to subpoenas served on them weeks and months ago.

Nonetheless, Mr. Giuliani now has the gall to oppose Plaintiffs' Motion to quash an exemption claim form by filing a declaration attaching a few cherry-picked documents purporting to support his exemption claim. As discussed below, those documents raise more questions than they answer, and do not help Mr. Giuliani in any event. And more to the point, what those documents *actually* show—once again—is that Mr. Giuliani has full access to extensive responsive material concerning Giuliani Communications, and that he has been intentionally withholding that evidence all along in the face of valid discovery requests and court orders. Given his long history of ignoring discovery requests and court orders—both on his own behalf and on behalf of Giuliani Communications—Mr. Giuliani's latest gambit should not be tolerated. Either Mr. Giuliani should be compelled to produce *all* materials in his possession and control (and in possession or control of his entities), or this Court should simply disregard the few documents Mr. Giuliani has deigned to submit in connection with his opposition.

As explained in Plaintiffs Motion, and as set forth further below, CPLR § 5222-a is not an appropriate procedural vehicle for Mr. Giuliani's contentions—nor is it an escape hatch from Mr. Giuliani's obligation to respond to make the full disclosures required of a judgment debtor. The Court should reject Mr. Giuliani's attempt to short-circuit a dispute as to which Mr. Giuliani possesses or controls—but has withheld—the bulk of the relevant evidence. For that reason and for all the reasons discussed below, Plaintiffs' Motion to quash the exemption claim form should be granted.

## **BACKGROUND**

The arguments raised in Mr. Giuliani's opposition call for a more detailed overview of the factual and procedural background relevant to Giuliani Communications' conduct up to this point in the litigation.

1. *The D.C. Litigation.* In the original D.C. litigation, Plaintiffs served Giuliani Communications with subpoenas for documents and a 30(b)(6) deposition on May 11, 2023. Motion to Compel at 5, *Freeman v. Giuliani*, No. 21-cv-3354 (D.D.C. June 22, 2023), ECF No. 70. Giuliani Communications simply ignored the subpoenas; neither the LLC entity nor Mr. Giuliani himself "communicated with Plaintiffs in any way" regarding the subpoenas. *Id.* Giuliani Communications refused even to designate a 30(b)(6) witness. *Id.* Plaintiffs moved to compel compliance with the subpoenas. *See generally id.* Mr. Giuliani and Giuliani Communications ignored that motion as well; ultimately, the Court granted the motion as conceded. Minute Order, *Freeman v. Giuliani*, No. 21-cv-3354 (D.D.C. July 13, 2023) (the "July 13 Minute Order"); Minute Order, *Freeman v. Giuliani*, No. 21-cv-3354 (D.D.C. July 26, 2023) (the "July 26 Minute Order"). The D.C. District Court observed that given Mr. Giuliani's admission "that he is the sole owner of . . . Giuliani Communications LLC . . . , he has no one to blame but himself for ignoring plaintiffs' pending motion to compel the Giuliani Businesses to comply with discovery obligations" and quoted Mr. Giuliani's counsel's statement that Mr. Giuliani had "not responded to his own counsel's request for information regarding discovery from his eponymous businesses." July 13 Minute Order; *see generally Freeman v. Giuliani*, 691 F. Supp. 3d 32, 50–51 (D.D.C. 2023) (D.C. District Court findings relating to Giuliani Communications' noncompliance). Despite being ordered to respond to Plaintiffs' discovery requests, Giuliani Communications continued to ignore both the discovery requests and the Court's order. *Freeman v. Giuliani*, 691 F. Supp. 3d 32, 50–51 (D.D.C. 2023).

Having granted Plaintiffs' motion to compel, the D.C. District Court also awarded Plaintiffs their reasonable expenses incurred in filing the motion, including attorney's fees. July 26, 2023 Minute Order. Those fees were ultimately quantified at $43,684, with post-judgment

interest running from September 20, 2023. Order at 3, *Freeman v. Giuliani*, No. 21-cv-3354 (D.D.C. Aug. 30, 2023) ECF No. 93. And, as the D.C. District Court made abundantly clear, that obligation ran against *Giuliani Communications*, with Mr. Giuliani responsible for causing Giuliani Communications to pay, or paying himself if Giuliani Communications did not. *Freeman*, 691 F. Supp. 3d at 69–70. Mr. Giuliani and Giuliani Communications ignored *that* order as well.

Ultimately, the D.C. District Court ordered several adverse inferences against Mr. Giuliani, including that he was "intentionally trying to hide relevant discovery about the Giuliani Businesses' finances for the purpose of shielding his assets from discovery and artificially deflating his net worth." Order at 4, *Freeman v. Giuliani*, No. 21-cv-3354 (D.D.C. Oct. 13, 2023), ECF No. 102. In the same order, the D.C. District Court declined to authorize Plaintiffs to enforce the attorney's fee award prior to entry of final judgment, reasoning that "issuance of a single final judgment, upon which plaintiffs may then execute," would be preferable. *Id.* at 3.

2. *The Bankruptcy Case.* Giuliani Communications reappeared in Mr. Giuliani's bankruptcy case—or, more to the point, *outside* Mr. Giuliani's bankruptcy case. Although as late as June 26, 2023, Mr. Giuliani had represented to the D.C. District Court under penalty of perjury that Giuliani Communications' had only "media equipment" in assets,[1] it quickly became clear that at some point prior to the petition date of December 21, 2023, Mr. Giuliani had begun routing funds to Giuliani Communications in order to keep them outside of his personal bankruptcy estate. According to Mr. Giuliani's own submissions in support of his opposition brief, by the end of June 2023 Giuliani Communications had a cash balance of $272,810.75 in its account at Parkside.

---

[1] Declaration of Rudolph Giuliani ¶ 11, *Freeman v. Giuliani*, No. 21-cv-3354 (D.D.C. June 26, 2023), ECF No. 73; *see Freeman*, 691 F. Supp. 3d at 69 n.11 (relying on Mr. Giuliani's representation that "his eponymous businesses have no assets other than media equipment"); *id.* at 53–54 (same).

Declaration of Kenneth A. Caruso, *Freeman v. Giuliani*, 24-mc-00353, ECF No. 33 (S.D.N.Y. Oct. 1, 2024) ("Caruso Declaration"), Ex. C, at 1. And, as detailed in Plaintiffs' Motion, this was the result of Mr. Giuliani's intentional scheme to divert his funds to Giuliani Communications wherever possible. Motion at 2–3.

Confronted with these facts in the bankruptcy, Mr. Giuliani strenuously denied that Giuliani Communications was a hiding place for income that otherwise should have been included in the chapter 11 estate. To the contrary, Mr. Giuliani maintained, Giuliani Communications was an operating business independent of himself; diverting funds to Giuliani Communications was "not . . . a scheme to defraud creditors" because the payments to Giuliani Communications were not Mr. Giuliani's own income but the LLC's business revenue: "at the conclusion of most months," Mr. Giuliani explained, "the *gross revenue* received [by Giuliani Communications] does not exceed the expenses—and hence [there is] *no personal income to the Debtor*," i.e., Mr. Giuliani. Declaration of Aaron E. Nathan, *Freeman v. Giuliani*, 24-mc-00353, ECF No. 23 (S.D.N.Y. Sept. 17, 2024) ("Nathan Declaration") Ex. 1, ¶ 30 (emphases added).

Meanwhile, Mr. Giuliani and Giuliani Communications' strategy of ignoring discovery requests and flouting court orders continued. As the Bankruptcy Court observed in its dismissal opinion, Mr. Giuliani "only made one production in response to the Rule 2004 Order containing fifteen documents consisting of Mr. Giuliani's bank statements, credit card statements, and income tax returns for 2021 and 2022," whereas "Mr. Giuliani's businesses"—including Giuliani Communications—"have made *no production whatsoever*. Nor has Mr. Giuliani or his entities identified any legitimate reason why the requested information should not or cannot be produced." *In re Giuliani*, 661 B.R. 493, 501 (Bankr. S.D.N.Y. 2024) (emphasis added). That "failure to

provide even basic disclosure about these assets" was "sufficient in and of itself for a finding of cause" to dismiss the bankruptcy. *Id.*

3. *The Enforcement Proceedings.* Following the dismissal of the bankruptcy case and Plaintiffs' registration of their judgment in this District, Plaintiffs served a restraining notice and information subpoena on Parkside. Motion at 3; Nathan Decl. Ex. 4. Plaintiffs also served an information subpoena and restraining notice on Giuliani Communications, LLC (the "Giuliani Communications Subpoena and Restraining Notice").[2] Declaration of M. Annie Houghton-Larsen, (the "Houghton-Larsen Declaration"), Ex. 3. And, of course, Plaintiffs served an information subpoena on Mr. Giuliani himself (the "Giuliani Subpoena and Restraining Notice"). ECF No. 10-10. Neither Mr. Giuliani nor Giuliani Communications has responded to either subpoena.

## ARGUMENT

### I.    Mr. Giuliani's Exemption Claim Form Was Untimely.

Unbeknownst to Plaintiffs at the time they filed their motion to quash, the Exemption Claim Form was not timely under CPLR 5222-a(c)(5). After service of a restraining notice, a banking institution must send the exemption claim forms to the judgment debtor. CPLR § 5222-a(b)(3). The judgment debtor then has an opportunity to execute and serve the exemption claim form, but "[i]f no claim of exemption is received by the banking institution within twenty-five days after the notice and forms are mailed to the judgment debtor, the funds remain subject to the restraining notice or execution." CPLR § 5222-a(c)(5). And while the failure to serve a timely exemption

---

[2] Plaintiffs initially served the Giuliani Communications Subpoena and Restraining Notice by certified mail, return receipt requested, on August 5, 2024. *See* Houghton-Larsen Decl. Exs. 4–5. However, since the USPS tracking information did not indicate whether the mailing was delivered or not, Plaintiffs served another copy of the same Subpoena and Restraining Notice on Giuliani Communications via its registered agent on September 20, 2024. Giuliani Communications has not responded. *See* Houghton-Larsen Decl. Ex. 6.

claim form does not constitute a waiver of the underlying exemption, *id.*, it does preclude the judgment debtor from relying on § 5222-a's special procedures to assert that exemption.

Here, as Plaintiffs learned only after filing their initial Motion—but as Mr. Giuliani has known all along—Parkside mailed exemption claim forms to Giuliani Communications at numerous addresses and through numerous agents and through counsel on August 14, 2024, and received the executed exemption claim form at issue here on September 16, 2024.[3] Houghton-Larsen Decl. ¶ 9. The exemption claim form was accordingly untimely, and ineffective to disturb the restraining notice. CPLR § 5222-a(c)(5). Moreover, all of the evidence relevant to that determination was in Mr. Giuliani's possession, and it was his burden to come forward with that evidence to show that his claim form was timely. *Recovery of Judgment, LLC v. Warren*, 937 N.Y.S.2d 85, 86 (App. Div. 2d Dep't 2012) (holding that because the judgment debtor "failed to submit evidence establishing the date postmarked on the correspondence from Chase which contained the notice and exemption claim forms and, therefore, . . .failed to demonstrate that the completed exemption forms were served within 20 days, or received by Chase within 25 days, of the postmark date," the trial court had "properly denied his motion to vacate the restraining notice which restrained his bank account" under CPLR § 5222-a(c)(5)).

## II. Mr. Giuliani's Personal Jurisdiction Argument Is Meritless, and He Lacks Standing to Raise It.

Mr. Giuliani asserts that the Parkside restraining notice is "void" because this Court lacks personal jurisdiction over Parkside, the garnishee. Opp. at 2. But Parkside has not challenged this

---

[3] Plaintiffs did not know (and would have had no reason to know) the date on which the "notice and forms [were] mailed" to Mr. Giuliani, which is the key date under CPLR § 5222-a(c)(5). Plaintiffs' counsel since learned this information from counsel for Parkside, which has not appeared in this proceeding. Mr. Giuliani, who is in possession of evidence that would confirm this fact, should be required to produce that evidence if he plans to maintain that his exemption claim form was timely filed. *Recovery of Judgment*, 937 N.Y.S.2d at 86.

Court's personal jurisdiction, and Mr. Giuliani inarguably lacks standing to do so. As is well established, "personal jurisdiction is an individual right that may be purposely waived or inadvertently forfeited." *Kaplan v. Bank Saderat PLC*, 77 F.4th 110, 117 (2d Cir. 2023) (internal quotation marks omitted). Thus, one party may not raise a personal jurisdiction defense on behalf of another. *See, e.g.*, *Zhaoyin Wang v. Beta Pharma, Inc.*, No. 3:14-CV-01790 (VLB), 2015 WL 5010713, at *12 (D. Conn. Aug. 24, 2015); *see also id.* (collecting cases). And that principle applies squarely to this particular context: where a judgment debtor objects to personal jurisdiction on behalf of a garnishee served with a restraining notice: the judgment debtor "lacks standing to raise such a defense" on behalf of the third-party garnishee. *Levine as trustee of Marvin H. Schein Descendants' Tr. v. Brown*, No. 15-CV-1738 (JMF), 2020 WL 550653, at *1 (S.D.N.Y. Feb. 4, 2020) (internal quotation marks omitted); *accord Advance Serv. Grp., LLC v. Vision Home Builders LLC*, 212 N.Y.S.3d 918 (N.Y. Sup. Ct. Kings Cnty. 2024). As in *Levine*, Parkside "has been consistently served and given the opportunity to object to these proceedings, and it has not done so." *Levine*, 2020 WL 550653, at *1. Mr. Giuliani cannot do so on Parkside's behalf. *Id.*

In any event, Parkside's silence on the question of personal jurisdiction is sensible because, if it were properly contested, there would be no question that this Court *does* have specific personal jurisdiction over Parkside for purposes of this proceeding. Under New York's long-arm statute, a "non-domiciliary" that "transacts any business within the state or contracts anywhere to supply goods or services in the state" is subject to personal jurisdiction for purposes of matters arising from those contacts. CPLR § 302(a)(1).[4] *See, e.g., Licci ex rel. Licci v. Lebanese Canadian Bank,*

---

[4] This "arising from" requirement is easily satisfied here: it does not even require a causal connection between the contacts and the claim, only a "relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168–69 (2d Cir. 2013) (quoting *Licci v. Lebanese Canadian Bank*, 984 N.E.2d 893, 900 (N.Y. 2012)).

*SAL*, 732 F.3d 161, 168 (2d Cir. 2013). Accordingly, where an out-of-state bank opens an account for a New York account holder, sends account statements and other documents to the account holder's New York address, and otherwise continues to communicate with the account holder in New York—all of which has concededly occurred here[5]—the out-of-state bank is subject to personal jurisdiction in New York for purposes of any matters arising out of or relating to those contacts. *See Trabucco v. Intesa Sanpaolo, S.p.A.*, 695 F. Supp. 2d 98, 104–05 (S.D.N.Y. 2010) (Chin, J.).

Mr. Giuliani also asserts that a restraining notice is invalid when served "outside the territory of the State of New York." Opp. at 3. But as with personal jurisdiction in general, objections to service of process are "personal in nature" and "may only be raised by" the party who has allegedly been served improperly. *Home Sav. of Am., F.A. v. Gkanios*, 650 N.Y.S.2d 756, 757 (App. Div. 2d Dep't 1996). Mr. Giuliani accordingly lacks standing to raise this argument on Parkside's behalf as well. Furthermore, Parkside accepted service of the restraining notice through its counsel located in New York State, mooting this argument in any event. Houghton-Larsen Decl. ¶ 9.

Even if were properly before this Court, Mr. Giuliani's proposal that the Court adopt a novel limitation on "extraterritorial service" of information subpoenas is entirely without support. Mr. Giuliani cites no authority that imposes such a limitation: only a Second Circuit case stating that there must be a "statutory basis for personal jurisdiction that renders . . . service of process effective." Opp. at 2*.* (quoting *Fuld v. PLO*, 82 F.4th 74, 85 (2d Cir. 2023)). As an example of such a statute, Mr. Giuliani points to CPLR § 313, which provides that a "person . . . subject to the

---

[5] *See* Caruso Decl. Exhibits A–E (Parkside bank statements showing Giuliani Communications, LLC address in New York).

jurisdiction . . . under section 301 or 302 . . . may be served with the summons without the state, in the same manner as service is made within the state." CPLR § 313; *see* Opp. at 3. According to Mr. Giuliani, "[n]either section 5222 nor any other statute authorizes the service of a restraining notice/injunction outside the territory of the State of New York." Opp. at 3.

Even on its own terms, that argument is wrong. CPLR § 5222 provides that a restraining notice may be "served personally *in the same manner as a summons* or by registered or certified mail, return receipt requested." CPLR § 5222(a). As Mr. Giuliani concedes, CPLR § 313 authorizes extraterritorial service of a summons on any person subject to jurisdiction under CPLR §§ 301 or 302. Parkside is subject to jurisdiction under CPLR § 302, *supra* at 8–9, and therefore "extraterritorial" service would have been appropriate even if express statutory authorization for such service were necessary. (And in any event, as discussed above, Parkside accepted service through its attorney—another acceptable method of serving process "in the same manner as a summons").

Stepping back, however, CPLR § 5222 *does* permit extraterritorial service. As the New York Court of Appeals held in *Koehler v. Bank of Bermuda Ltd.*, Article 52 in general has "extraterritorial reach." 911 N.E.2d 825, 829 (N.Y. 2009). As the Court of Appeals explained:

> CPLR article 52 contains no express territorial limitation barring the entry of a turnover order that requires a garnishee to transfer money or property into New York from another state or country. It would have been an easy matter for the Legislature to have added such a restriction to the reach of article 52 and there is no basis for us to infer it from the broad language presently in the statute.

*Id.* The same holds true for service of a restraining notice under CPLR § 5222 which, as Mr. Giuliani recognizes, is akin to a preliminary injunction in aid of a future turnover order. Opp. at 2. As the Court of Appeals has explained, this is because "article 52 postjudgment [sic] enforcement involves a proceeding against a person—its purpose is to demand that a person convert property to money for payment to a creditor"—in contrast to "article 62 attachment," which "operates solely

on property." *See Koehler*, 911 N.E.2d at 829. Thus, unlike attachment proceedings, which are limited to property located in New York, Article 52 enforcement proceedings extend to all property in the possession of any debtor or garnishee over whom the Court has personal jurisdiction. *Id.* at 830–31. Furthermore, valid personal jurisdiction is the only prerequisite for Article 52 proceedings to reach an out-of-state garnishee—no special type of "extraterritorial service" is necessary to confer such authority on a New York court. *See id.* at 829. ("It would have been an easy matter for the Legislature to have added such a restriction to the reach of article 52," but "there is no basis . . . to infer it from" the statute's broad language).

## III.    Giuliani Communications LLC Is Ineligible for CPLR § 5222-a's Exemption Claim Procedures, and Whether to Pierce the Corporate Veil Is Not Before the Court.

In defense of his CPLR § 5222-a exemption claim, Mr. Giuliani asserts that Plaintiffs have no right to the Parkside funds because Giuliani Communications is a bona fide LLC entity whose corporate veil should not be pierced. Opp. at 4–7. As discussed below, these arguments are unpersuasive and, to a shocking degree, depend on Mr. Giuliani's selective production of evidence while he ignores valid discovery requests. However, the Court need not even consider these arguments, because the premise of Mr. Giuliani's anti-veil-piercing arguments are premised on the idea that Giuliani Communications *is a limited liability company*, and *not* a "natural person" in any sense. Opp. at 7 ("Giuliani Communications is a corporate entity, separate, distinct and apart from Defendant[.]"). And as Mr. Giuliani does not dispute, CPLR § 5222-a extends only to exemption claims made by "natural persons" and not to claims made by entities such as LLCs. Motion at 5–7. That suffices to resolve this objection to Plaintiffs' Motion to Quash.

Even if the Court were to consider this argument in the context of a § 5222-a dispute, Mr. Giuliani's argument against veil-piercing is both unpersuasive and beside the point. Mr. Giuliani asserts that the motion to quash should be denied "because the evidence is insufficient to pierce

the corporate veil." Opp. at 4. In support of that argument, Mr. Giuliani launches into an extended defense of Giuliani Communications' corporate form, contending that "Plaintiffs have not carried [their] heavy burden" and that "Plaintiffs have no evidence that" Mr. Giuliani began to conceal assets in Giuliani Communications "only after Plaintiffs obtained their judgment."[6] Opp. at 5. And Mr. Giuliani faults Plaintiffs for the sparse evidence relevant to veil piercing. Opp. at 6–7 (downplaying Plaintiffs' reliance on a "letter," on "a single contract," on "news reports," and on a "single statement").[7]

Mr. Giuliani's arguments give new meaning to the term "chutzpah."[8] The reason that Plaintiffs have yet to develop an appropriate record on which to evaluate a veil-piercing claim— and the reason that Plaintiffs have not yet filed any motion asking this Court to pierce any veil— is that *Mr. Giuliani and Giuliani Communications have been ignoring valid discovery requests and binding court orders for over two years. Supra* at 3–4. Most recently, Mr. Giuliani and Giuliani Communications were served with information subpoenas in aid of these enforcement proceedings, and simply ignored them too. *Supra* at 6. In an ordinary enforcement proceeding, those written discovery requests would be followed by requests for document productions and

---

[6] This, however, is not true: as discussed above, based only on the limited evidence Plaintiffs have managed to extract from Giuliani Communications, it appears that Mr. Giuliani made a calculated choice at some point between June 2023—when he declared under penalty of perjury that Giuliani Communications had only "media equipment" in assets—and the commencement of his bankruptcy case, when Giuliani Communications suddenly held hundreds of thousands of dollars in cash. *Supra* at 4.

[7] Several of Mr. Giuliani's examples actually refer to statements made in briefs filed by the Official Committee of Unsecured Creditors, of which Ms. Moss was a member, but not by Plaintiffs themselves. *See* Opp. at 6–7 (quoting Mot. of the Off. Comm. of Unsecured Creditors for Entry of Ord. Directing Immediate Appointment of a Trustee Pursuant to 11 U.S.C. § 1104. *In re Giuliani*, No. 23-12055-SHL, ECF No. 233)

[8] *See Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 129 n.5 (2d Cir. 2009); *Yates v. City of New York*, No. 04 CIV. 9928 (SHS), 2006 WL 2239430, at *1 & nn.1–2 (S.D.N.Y. Aug. 4, 2006).

depositions, at which Plaintiffs could explore a veil-piercing theory. Here, Mr. Giuliani has not even pretended to comply at step one.

Plaintiffs are nonetheless working diligently with other third-party discovery targets to obtain evidence in support of a turnover motion directed at the Parkside funds. Whether that motion will rely on a veil-piercing theory, or another theory, remains to be determined based on the evidence.[9] As discussed above, however, Plaintiffs have numerous legal theories that likely entitle them to the funds currently held in the Parkside account. *Supra* at 6–11.

As explained in Plaintiffs' opening brief, CPLR § 5222-a is a narrowly defined procedure for a narrowly defined purpose: providing a fast-track claim process to assist individual "natural person" debtors in freeing up funds that are "statutorily exempt" within the meaning of CPLR § 5222-a. Motion at 5–6. It is not an all-purposes substitute for a CPLR § 5240 motion to quash, or a way for judgment debtors—by checking a box and mailing a form—to force the judgment creditor to file a motion instead of them, thereby shouldering the burden to demonstrate an entitlement to relief. Moreover, Mr. Giuliani's use of the CPLR § 5222-a procedure to shoehorn in a preemptive defense to a veil-piercing motion that has not yet been brought has no logical stopping point: it would permit § 5222-a to become a universal method for challenging restraining notices of all kinds, on all theories—a result clearly contrary to the purpose of the Exempt Income Protection Act. Motion at 6–7.

## IV.    Mr. Giuliani's New Exemption Claim Is Meritless.

Finally, Mr. Giuliani contends "in the further alternative" that he *personally* "has a valid claim for an exemption from execution" with respect to the Parkside funds. Opp. at 8. And, to

---

[9] Notably, Mr. Giuliani does not even address, much less contest, Plaintiffs' point that Giuliani Communications is independently liable to Plaintiffs for the attorney's fee award entered against Giuliani Communications in the D.C. litigation and merged into the final judgment. *See* Motion at 8 n.3.

assert that claim, Mr. Giuliani has "filed an Amended Exemption Claim Form" as an exhibit to his counsel's supporting declaration. Opp. at 9; *see* Caruso Decl. Ex. F.

Mr. Giuliani cites no authority supporting a judgment debtor's ability to "amend" an exemption claim form, much less to do so after the CPLR § 5222-a(c)(5) deadline has passed. And there is no doubt that this "Amended Exemption Claim Form" is untimely, as it did not appear until October 1, 2024. *Supra* at 6–8; *see* CPLR § 5222-a(c)(5); *Recovery of Judgment, LLC*, 937 N.Y.S.2d at 86. Moreover, Mr. Giuliani does not even claim to have served this Amended Exemption Claim Form on Parkside or on Plaintiffs—all he appears to have done is file it with the Court.

Even assuming that the Amended Exemption Claim Form were proper, Mr. Giuliani's new "personal" claim of exemption is utterly meritless. Seeking a way around CPLR 5222-a's limitation to claims by "natural persons," Mr. Giuliani asserts that he *does* have such a claim, because he has now attached a handful of "Statements for the Parkside account," which "show earnings, for Defendant's personal services within 60 days before restraint, in the amount of approximately $93,000[.]" Opp. at 9. According to Mr. Giuliani, those "earnings" qualify as income from personal services for purposes of CPLR § 5205.[10]

That is a stunning contention in light of Mr. Giuliani's representations to the Bankruptcy Court in his chapter 11 case. There, the *premise* of Mr. Giuliani's argument that his practice of diverting funds to Giuliani Communications was "not . . . a scheme to defraud creditors" was that the payments to Giuliani Communications were not "personal income to [Mr. Giuliani]"—which would have been property of the bankruptcy estate—but "gross revenue" of an operating business

---

[10] Even on this point, Mr. Giuliani cannot establish, based on the Parkside statements he has filed, when the services were "rendered," which is what counts for purposes of the CPLR § 5205(d)(2) lookback period.

that ordinarily did not "exceed the expenses." ECF No. 23-1 ¶ 30 (emphases added); *supra* at 5. To repeat: according to Mr. Giuliani himself, it was only *because these payments were not personal income to Mr. Giuliani*, and were instead "revenue" of Giuliani Communications, that Mr. Giuliani was not engaged in a "scheme to defraud creditors." ECF No. 23-1, ¶ 30. Mr. Giuliani's new position that payments received by Giuliani Communications were in fact his own personal income raises serious questions about the lawfulness of his actions in the chapter 11 case. *See* 11 U.S.C. §§ 152–157. To be sure, even Mr. Giuliani's prior position did not account for the hundreds of thousands of dollars that Mr. Giuliani freely distributed to himself as profit, or for his own benefit, while the bankruptcy case was pending. But that was Mr. Giuliani's story, and given the gravity of the situation, one would have imagined he would have stuck to it.

Mr. Giuliani's new claim that Giuliani Communications holds Mr. Giuliani's "personal income" is further undermined even by the cherry-picked materials appended to the Caruso Declaration. According to the Parkside statements submitted with Mr. Giuliani's opposition, in that limited time period alone Mr. Giuliani withdrew $100,000 in funds over three transfers to Mr. Giuliani's personal checking account, each marked as "owner draw." *See* Caruso Decl. Ex. B at 3–4 (May 7, 2024 "owner draw" of $20,000 and May 21, 2024 "owner draw" of $25,000); C at 3 (July 1, 2024 "owner draw" of $55,000). The last, and largest of these happens to have been a $55,000 profit distribution to Mr. Giuliani's personal checking account on July 1, 2024, the same day Mr. Giuliani moved to convert his chapter 11 case to chapter 7. *Id.*; Houghton-Larsen Decl. Ex. 2.[11]

---

[11] Another of these, the $100,000 payment to the law firm of Berger, Wexler, Fischoff, and Goodman, was a payment—apparently made by Giuliani Communications—to satisfy Mr. Giuliani's *personal* obligation to pay the fees of professionals retained in his chapter 11 case. *See* Order of Dismissal at 2, *In re Giuliani*, No. 23-12055-SHL (Bankr. S.D.N.Y. Aug. 2, 2024), ECF No. 309. Several other payments that appear on these statements raise questions that Plaintiffs

After all that, Mr. Giuliani has the gall to accuse Plaintiffs of trying to "have it both ways," treating Giuliani Communications as an LLC for purposes of CPLR 5222-a but as Mr. Giuliani himself for purposes of an alter ego theory. Without a doubt, it is Mr. Giuliani, and not Plaintiffs, who is trying to have it both ways. When it helped him keep cash out of his bankruptcy estate (but apparently still available for whatever purpose he wished), Giuliani Communications was a bona fide operating business with revenues and expenses. Now that the bankruptcy case is over, Giuliani Communications is apparently just a conduit that holds Mr. Giuliani's personal income. One thing is clear: Giuliani Communications is whatever Mr. Giuliani needs it to be, whenever he needs it. But it would be grossly inequitable to permit Mr. Giuliani to keep Giuliani Communications' assets out of the hands of his creditors in bankruptcy on the theory that those assets were *not* Mr. Giuliani's personal income, and then permit him to keep the same assets out of creditors' hands in nonbankruptcy execution on the opposite theory.

Finally, even if everything Mr. Giuliani said about his claim to an exemption for personal income were true, that still would not entitle him to an exemption under CPLR § 5205. Under § 5025, an income exemption does not apply to any funds that a court "determines to be unnecessary for the reasonable requirements of the judgment debtor and his dependents." CPLR § 5205(d). As his disclosures in the bankruptcy show, and according to his submissions in this enforcement proceeding, Mr. Giuliani holds approximately $1.067 million in (exempt) IRA assets and draws (exempt) annual Social Security payments of approximately $56,000. *See* Houghton-

---

would explore in discovery. To pick only a few limited examples, the statements are littered with seemingly arbitrary "retainer" payments to Mr. Giuliani's close associates, including an $18,000 transfer to Ryan Medrano on July 1, 2024—the day Mr. Giuliani moved to convert his bankruptcy case to chapter 7—and two transfers marked "retainer" and "severance" made the same day to Ted Goodman. Caruso Decl. Ex. C at 4. The statements also show numerous, unexplained payments of American Express credit card bills and a Ford auto loan. *Id.* at 5; Caruso Decl. Ex. E at 4–5.

Larsen Decl. Ex. 1 at 15 (listing $1.067 million in Citi IRA account); *Id.* at 53 (showing net total of $1.067 million in "Rudolph Giuliani Individual Retirement Account" as of June 15, 2024); ECF 20-2 (Exemption Claim Form for Citibank Account ending in x1428 claiming account contains Social Security funds); Houghton-Larsen Decl. Ex. 7 at 1, 3–23 (Letter from Ken Caruso with statements from Citibank Account ending in x1428 showing annual Social Security deposits of approximately $56,000). Those savings, and that income—barely short of the median income in Florida ($62,973) and New York ($69,135),[12] are more than sufficient to provide for Mr. Giuliani's "reasonable requirements." *See United States v. Asare*, No. 15 CIV. 3556 (AT), 2022 WL 6763786, at *4 (S.D.N.Y. Oct. 11, 2022) (relying on the IRS's collection financial standards as a benchmark for "reasonable requirements"); *see* U.S. Trustee Program, Means Testing, https://www.justice.gov/ust/means-testing (last accessed October 8, 2024) (collecting IRS and Census Bureau data on national, state, and local income and expenses).[13] Relying on this data, the U.S. Trustee Program recognizes monthly housing expenses for a single renter in New York County at $2,845[14] in Palm Beach County at $1,586.[15] Meanwhile, recognized monthly expenses

---

[12] JUSTICE.GOV, *Census Bureau median Family Income by Family Size*, https://www.justice.gov/ust/eo/bapcpa/20240515/bci_data/median_income_table.htm (last accessed Oct. 8, 2024).

[13] JUSTICE.GOV, *IRS National Standards for Allowable Living Expenses*, https://justice.gov/ust/eo/bapcpa/20240515/bci_data/national_expense_standards.htm (last accessed Oct. 8, 2024).

[14] JUSTICE.GOV, *Bankruptcy Allowable Living Expenses Cases Filed On or After May 15, 2024) Local Housing and Utilities Standards, New York*, https://www.justice.gov/ust/eo/bapcpa/20240515/bci_data/housing_charts/irs_housing_charts_NY.htm (last accessed Oct. 8, 2024).

[15] JUSTICE.GOV, *Bankruptcy Allowable Living Expenses Cases Filed On or After May 15, 2024) Local Housing and Utilities Standards, Florida* https://www.justice.gov/ust/eo/bapcpa/20240515/bci_data/housing_charts/irs_housing_charts_FL.htm (last accessed Oct. 8, 2024).

for a single person's food, clothing, and other items are \$808,[16] and out-of-pocket health care expenses for a single person over 65 are \$158[17]—all told, well within Mr. Giuliani's monthly Social Security income. Thus, even if it were properly raised, this exemption claim would fail.

\* \* \*

One aspect of Mr. Giuliani's submission is especially outrageous. After blowing off valid discovery requests and court orders to provide responsive material for over *two years*—in the D.C. litigation, in the bankruptcy, and with respect to the information subpoena served in this case, *supra* at 3–6—Mr. Giuliani has suddenly come forward with a cherry-picked sample of Giuliani Communications' financial records now that it seems convenient to him to do so. It goes without saying that neither Mr. Giuliani nor Giuliani Communications should be permitted to litigate *anything* on less than a complete record developed through full disclosure. A few cherry-picked documents, selected unilaterally at Mr. Giuliani's convenience, is not that. Mr. Giuliani's latest submission demonstrates one thing beyond all doubt: there was never anything preventing him or Giuliani Communications from complying with discovery requests served earlier in this litigation or in the bankruptcy other than Mr. Giuliani's own intentional scheme to obstruct the judicial process. This latest claim of exemption is the latest, galling example of how Mr. Giuliani thinks the rules do and do not apply to him. Hopefully, it will be the last.

## CONCLUSION

The Parkside Exemption Claim Form should be quashed, and the Parkside Restraining Notice must remain in effect.

---

[16] JUSTICE.GOV, *IRS National Standards for Allowable Living Expenses*, https://www.justice.gov/ust/eo/bapcpa/20240515/bci_data/national_expense_standards.htm (last accessed Oct. 8, 2024).
[17] JUSTICE.GOV, *IRS National Standards for Out-of-Pocket Health Care*, https://www.justice.gov/ust/eo/bapcpa/20240515/bci_data/national_oop_healthcare.htm (last accessed Oct. 8, 2024).

Respectfully submitted,

Dated: October 8, 2024          s/ Aaron E. Nathan
       New York, New York

John Langford                   Michael J. Gottlieb
Rachel Goodman                  Meryl C. Governski (admitted *pro hac vice*)
United to Protect Democracy     Willkie Farr & Gallagher LLP
82 Nassau Street, #601          1875 K Street NW
New York, NY 10038              Washington, DC 20006
(202) 579-4582                  (202) 303-1000
john.langford@protectdemocracy.org    mgottlieb@willkie.com
rachel.goodman@protectdemocracy.org   mgovernski@willkie.com

Von DuBose (*pro hac vice forthcoming*)   Aaron E. Nathan
DuBose Miller LLC               M. Annie Houghton-Larsen
75 14th Street NE. Suite 2110   Willkie Farr & Gallagher LLP
Atlanta, GA 30309               787 Seventh Avenue
(404) 720-8111                  New York, NY 10019
dubose@dubosemiller.com         (212) 728-8000
                                anathan@willkie.com
                                mhougton-larsen@willkie.com


                                *Attorneys for Plaintiffs*