**WILLKIE FARR & GALLAGHER** LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

November 4, 2024

**VIA ECF**

Hon. Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *Freeman et al. v. Giuliani*, No. 24-mc-353 (LJL)

Dear Judge Liman:

  Plaintiffs and Receivers Ruby Freeman and Wandrea' Moss ("Plaintiffs") respectfully submit this report pursuant to the Court's Order of October 31, 2024 (ECF No. 75) regarding the status of Defendant's compliance with the October 22, 2024 Turnover and Receivership Order (ECF No. 62) (the "Receivership Order").

  As of this writing, Defendant has yet to transfer any property into the Receivers' custody. More concerningly, and as set forth in more detail below, Defendant and his counsel have refused or been unable to answer basic questions about the location of most of the property subject to the receivership. Meanwhile, when the Receivers' representatives were finally granted access to the New York Apartment, they learned for the first time upon entering that Defendant had moved virtually all of its contents out approximately four weeks ago—something that neither Defendant nor Defendant's counsel had bothered to mention.

  On October 30, 2024, Plaintiffs reported to the Court that a representative of the Receivers' moving and storage company, along with attorneys for the Receivers, would be provided access to Defendant's apartment at 45 East 66th Street, Apartment 10W (the "Apartment"). That visit occurred on the morning of October 31, 2024.

  The visit to the Apartment, which all parties understood to be for the purposes of assessing the transportation and storage needs for the receivership property contained therein, instead revealed that the Apartment was substantially empty. Save for some rugs, a dining room table, some stray pieces of small furniture and inexpensive wall art, and a handful of smaller items like dishes and stereo equipment, the Apartment has been emptied of all of its contents. Notably, that includes the vast majority (if not all) of the valuable receivership property that was known to be stored there, including (based upon listing

photographs of the Apartment), art, sports memorabilia, expensive furniture, and other items not conspicuous enough to appear in listing photographs. According to the representative of Douglas Elliman who accompanied the Receivers' representatives to the Apartment, Defendant or his representatives moved most of the contents of the Apartment out approximately four weeks prior to Thursday's visit, with some additional items having been moved at a later date.

As can be seen from the correspondence attached hereto as **Exhibit A**, Receivers' counsel immediately expressed their surprise and concern to Defendant's counsel. Apparently, despite the restraining notice governing the contents of the Apartment, the pending motion for turnover and receivership with respect to that property, and the subsequent granting of that motion, neither Defendant nor his counsel thought to mention that the receivership property contained in the Apartment had been secreted away.

More concerning, Defendant's counsel has so far been unable to state where that property, or a large majority of the other receivership property, is. Defendant's counsel informed the Receivers' counsel that some unspecified property is now in storage at a facility in Ronkonkoma, New York, but has not disclosed *what* property is stored there. After numerous unsuccessful attempts to contact the manager of that storage facility at the phone number provided by Defendant's counsel, as of this writing the Receivers only just heard back—not from the storage facility itself, but from its attorney.[1] Meanwhile, Defendant's counsel continue to ignore repeated requests for an inventory of the items stored there.

More broadly, Defendant's counsel have ignored most of the Receivers' counsel's requests for information regarding the location of all receivership assets. With a few exceptions, noted below, Defendants' counsel have proved either unable or unwilling to provide the requested information, despite having represented to this Court on October 29 that the receivership property was "being held for delivery wherever Plaintiffs request." ECF No. 68.

- **The Co-Op Shares and Proprietary Lease.** Days after representing to the Receivers and the Court that he was prepared to comply with the Turnover and Receivership Order, Defendant acknowledged that he does not actually know where the co-op share certificates or the proprietary lease actually are. The Receivers have also learned that the co-op's records (and consequently, the share certificates) were never updated following the legal transfer of the co-op into Defendant's exclusive possession and ownership following his divorce from Judith Giuliani. While these are, at worst, paperwork issues to be addressed with the co-op and the Defendant, they further call into question Defendant's posture of readiness and cooperation expressed on October 29.

- **The Contents of the New York Apartment.** As discussed above, Defendant apparently emptied the New York Apartment of substantially all of its contents approximately four

---

[1] The Receivers understand from consultation with their moving and transportation company that a facility like the one at issue here requires significant arrangements made in advance, and ultimately significant labor in order to access and identify property stored inside: rather than individual storage units, the facility is a warehouse that stores items in large stacked wooden crates, which require special equipment to be moved and accessed.

weeks ago. Since that date, and since the Receivers learned of the situation on Thursday, October 31, Defendant and his counsel have provided no information regarding when that property was moved, where it was taken, or the conditions under which it is being stored.

- **The Cash Accounts.** The Receivers have made arrangements to establish an escrow account consistent with the terms of the Turnover and Receivership Order. On Thursday, October 29, Receivers' counsel provided wire instructions to Defendants' counsel and instructed Defendant to initiate wires of all funds subject to the Turnover and Receivership Order. As of this writing, the Receivers are not aware that any such transfer has occurred. Defendant's only explanation for the delay is that the restraining notice issued to Citibank still applies to the funds, apparently ignoring the language permitting transfers "pursuant to an order of the court," which has obviously now occurred. Separately, Defendant's counsel has provided statements from Defendant's Citibank accounts purporting to show that Defendant has only $3,907.99 in non-exempt funds subject to the Turnover and Receivership Order. That revelation, combined with transactions listed on the statements showing five-figure transfers of funds out of the -5812 account in the months of July and August, raise significant questions about the location of other cash assets belonging to Defendant.

- **Other Personal Property.** The Receivers have repeatedly requested a complete inventory of receivership property in Defendant's possession, detailing the property and its location. Defendant's counsel has so far refused to provide this, despite acknowledging in their letter to the Court that the Turnover and Receivership Order requires Defendant "to comply with the directives of the receivers and to execute and deliver any documents that the receivers request." ECF No. 68; *see* Turnover and Receivership Order ¶ 4(f). Fundamentally, it is troubling that Defendant has simply refused to tell the Receivers or their representatives where any particular item of property is, with certain limited exceptions. Those exceptions include:

  o Defendant's counsel has indicated that the Mercedes automobile is located in Florida, but has not said where it is garaged.

  o Defendant's counsel has indicated that the "wristwatches" are also located at the Palm Beach Condo, but without specifying which wristwatches that includes.

In sum, Defendant has yet to reveal where the vast majority of the receivership property is actually located, despite repeated requests to his counsel. That includes all of the sports memorabilia, jewelry, furniture, and—with the two exceptions noted above—all of the other personal property listed in the Turnover and Receivership Order. That silence is especially outrageous given the revelation that Defendant apparently took affirmative steps to moved his property out of the New York Apartment in recent weeks, while a restraining notice was in effect and while a turnover motion was pending with respect to that property. And furthermore, despite the cooperative pose put on by Defendant in his letter of October 29, 2024, the Receivers' inquiries since that time have been met predominantly with evasion or silence.

   The Receivers will continue to work diligently to take possession of the receivership property, even in the face of Defendant's obstinance. But as things stand, the Receivers do not know where the majority of that property is or whether it is being adequately maintained, insured, and protected from loss, damage, or other diminution in value. Defendant's counsel have promised responses to some of these questions, but have yet to follow through.

   If Defendant does not begin to comply fully and promptly with the Receivers' requests under the Turnover and Receivership Order, the Receivers are prepared to seek relief under the terms of that Order.

   The Receivers look forward to discussing these issues with the Court at the conference scheduled for November 4, 2024.

                 Respectfully submitted,

                  s/ Aaron E. Nathan