# Exhibit B

# EXHIBIT 22

**Contract between Frankspeech, Inc.
and the Debtor, dated June 8, 2024**

## TALENT SERVICES AGREEMENT

This Talent Services Agreement ("Agreement"), dated as of the date fully executed below, is entered into by and between Frankspeech, Inc. ("Company") and Rudy Giuliani, Giuliani Communications LLC ("Contractor" or "Talent"). Company and Contractor may be individually referred to as a "Party," and collectively as the "Parties."

### RECITALS

**WHEREAS**, Company is the owner and operator of a Television News Network providing programming via Satellite, Cable, Roku, Apple TV, Amazon Firestick, BEK, MVPD and OTT Platforms;

**WHEREAS**, Company desires to contract with Contractor in order to render on-air services on the Network, pursuant to the terms and conditions set forth in this Agreement; and

**NOW THEREFORE**, in consideration of the promises and the mutual covenants contained herein, the adequacy and sufficiency of where is hereby acknowledged, the Parties understand and agree as follows:

**1. Services.**

Talent shall provide professional services as an on-air talent for the Company on FrankSpeech TV1, in accordance with the terms and conditions set forth herein. Talent shall faithfully and diligently perform, the following duties (collectively, the "On-Air Duties") to the best of Talent's ability:

(i) Serve as anchor of one-hour show on Frankspeech TV1 (the "Program") to air five days per week, Monday through Friday from 7 p.m. to 8 p.m.; and

(ii) Prepare, present, and deliver programming including live and recorded news and/or talk, promos and other programming elements for the Company on FrankSpeech TV1, and all associated analog, digital and on-line streams of programming, multicast and splits, in and for all media and all broadcast or transmission platforms, including all terrestrial, satellite, electronic and digital simulcasts of the Network or any other broadcasts via the Internet, mobile applications, podcasting, radio, or any other methods or platforms now existing or hereinafter invented ("Network").

**2. Term.**

a. <u>Term</u>. The term of this Agreement shall commence on June 17, 2024 ("Effective Date"), and shall continue, unless sooner terminated as provided herein, for a term ending on the 365th day following the Effective Date (the "Term").

### 3. Contract Fee.

During the Term and conditioned upon Contractor's full performance of all obligations hereunder, as full compensation for performance by Contractor of all obligations hereunder, Company shall pay Contractor in bi-weekly or monthly installments an Annual Contract Fee of $180,000 per year.

### 4. Other Compensation.

a. Commissions. During the Term and conditioned upon Contractor's full performance of all obligations hereunder, Contractor shall receive commissions equal to the following:

i. Two percent on all Genesis Gold sales linked to Contractor's unique promo code and resulting from Contractor's active reads of Genesis Gold advertisements on the Program;

ii. One percent of the proportion of advertiser sales revenue attributable to the Program, from all advertisers whose advertisements are read on the Program (not including Genesis Gold sales, and not including advertisers covered by paragraph 4.a.iii or 4.a.iv); the proportion of advertising revenues from any given advertiser attributable to the Program shall be determined based on the Program's viewership compared to overall viewership of all programs including the advertiser's advertisements during the same period;

iii. Forty percent on all advertiser revenue brought to the Network by Contractor resulting from advertising on the Program, provided that the advertiser is approved by the Company; and

iv. In the event that an advertiser brought to the Network by Contractor advertises across the Network or on Network programs other than Contractor's Program, five percent of the revenues from that advertiser resulting from advertisements on programs other than Contractor's Program.

b. In addition, during the Term and conditioned upon Contractor's full performance of all obligations hereunder, Contractor will be eligible for quarterly bonuses, should such bonuses be made available by the Company, beginning after the Company goes public (and no earlier than in the third quarter of 2024). Bonus metrics shall be set by the Company at its

discretion during beginning portion of the relevant quarter, and bonuses, if any, will be paid out in the second month of the following quarter.

**6. Termination.**

a. <u>For Cause</u>. Company may terminate this Agreement for Cause (as defined below), with or without notice, at any time. If Company exercises its right to terminate for Cause, its obligations under this Agreement shall cease immediately and Company shall thereafter be released and discharged of any from any further obligations hereunder, except for payment of any monies previously due and owing to Contractor and as yet unpaid. Contractor shall not be entitled to any separation payment, severance payment or other payment whatsoever. For purposes of this Agreement the term "Cause" means: (i) willful, habitual or substantial neglect of duties by Contractor; or Talent; (ii) any material breach of this Agreement; (iii) theft; (iv) use or possession of, or being under the influence of, illegal drugs during working hours; (v) negligence in the performance of duties likely to cause or actually causing personal injury or property damage; (vi) failure to comply with Company rules or regulation on a consistent basis; (vii) any violation of FCC rules and regulations, including, without limitation, rules relating to indecency, payola and/or plugola; (viii) sexual or other unlawful harassment; (ix) excessive absenteeism or tardiness and (x) Talent's failure or refusal to perform the services required under this Agreement for a period of three (3) or more days for reasons other than vacation, illness, accident, injury, incapacity or authorized leave of absence.

b. <u>Without Cause</u>.

i. Company or Contractor may terminate this Agreement and Talent's services without cause, effective upon 60 days' written notice.

ii. If the Company terminates for any reason other than cause, Contractor shall be entitled to receive a contract termination payment pay equal to the portion of his then-current Annual Contract Fee covering the period equal to the remainder of the Term.

iii. Prior to the payment of any amount pursuant to

Section 5.b.ii, Contractor shall execute and deliver a general release in favor of Company and its affiliated entities in a form satisfactory to Company and Contractor.

c. <u>Incapacity</u>. If due to a physical or mental disability, including without limitation, impairment of Contractor's voice, Contractor becomes unable to perform all of the essential On Air Duties set forth in Section 1 above, as well as the other services to be provided pursuant to this Agreement, even with a reasonable accommodation of such disability, Company may suspend or terminate this Agreement at its sole discretion, without any further obligation to Contractor under this Agreement.

## 7. Representations and Warranties.

Contractor represents and warrants to Company that Contractor: (i) is competent, of legal age, and otherwise able and free to enter into this Agreement; (ii) is entering into this Agreement voluntarily and that Contractor's services hereunder and compliance with the terms and conditions hereof will not conflict with or result in Contractor's breach of any agreement to which Contractor is a party or by which Contractor may be bound; (iii) has no outstanding business or personal commitments inconsistent with any of the terms of this Agreement or the services to be rendered hereunder or that would expose the Company to litigation, injury or ridicule; (iv) and has not and shall not enter into any agreements that in any way interfere or conflict with his obligations, promises, or warranties hereunder.

## 8. Indemnification.

a. <u>Contractor's Indemnity</u>. Contractor will at all times (notwithstanding the expiration or termination of this Agreement) indemnify and hold harmless Company and its affiliated entities, including, without limitations, any networks, systems or platforms over which the Program is broadcast or distributed, their licensees, sponsors and sponsors' advertising agencies, and all of their respective officers, directors, agents, representatives and employees, and all of their successors and assigns, from and against any and all claims, damages, liabilities, costs and expenses, including, without limitation, reasonable attorneys' fees and expenses, arising out of or resulting from: (i) the use of any materials furnished by

perpetuity ("Property Rights"). Contractor agrees and

[illegible] first class, postage prepaid, by registered or Contractor hereunder; or (ii) any breach by Contractor of any representation, warranty, covenant or agreement made by Contractor herein. Company shall promptly notify Contractor of any litigation or claim to which an indemnity hereunder may apply. Contractor shall fully cooperate with Company in connection with the defense of any claim or litigation.

b. <u>Company's Indemnity</u>. Company will at all times (notwithstanding the expiration or termination of this Agreement) indemnify and hold harmless Contractor from and against any and all claims, damages, liabilities, costs and expenses, including, without limitation, reasonable attorneys' fees and expenses, arising out of or resulting from: (i) the use of any materials furnished by Company in connection with the production, rehearsal, or broadcast of any Program or any social media content; and (ii) any breach by Company of any representation, warranty, covenant or agreement made by Company herein; or (iii) any act or omission of Company prior to the date of this Agreement. Contractor shall promptly notify Company, of any litigation or claim to which an indemnity hereunder may apply. Contractor shall fully cooperate with Company in connection with the defense of any claim or litigation.

9. **Public Morals.**

If Talent shall commit any act or become involved in any situation or occurrence which, in Company's reasonable opinion, will bring Contractor, Company and/or Network into public disrepute, contempt, scandal or ridicule, will provoke, insult or offend the community or will reflect unfavorably upon Contractor, Company and/or Network or any of the Company's advertisers or sponsors, Company shall have the right to terminate this Agreement for Cause. The foregoing shall not limit Company's right to terminate for any other reason or cause.

10. **Proprietary Rights/ Grant of Rights.**

a. <u>Intellectual Property</u>. The Program and all of its components created by the Contractor for the Company, at any time during the Term or any extension thereof, shall be the exclusive property of Company and throughout the Universe in perpetuity ("Property Rights"). Contractor agrees and

acknowledges that: (i) as between Contractor and Company, Company shall be the sole and exclusive OWNER of the Program, including all its contents thereof, every format, idea, story board, lay out, theme, logo, slogan, and script (ii) all rights, title, and interest in the Program belongs to the Company in perpetuity; and (iii) Contractor shall claim no right, title, interest, power, privilege, control or property right over the Program.

b. <u>Limitations</u>. Notwithstanding the foregoing, Contractor shall not be restricted from using Contractor's own real or professional names or nicknames, or from portraying herself. The Parties recognize that Contractor's personal social media accounts shall remain the personal property of Contractor and that Contractor has the right to engage in personal social media activities.

c. <u>Use of the Program</u>. Company and its licensees shall have the unilateral right, without limitation, to use, exploit, license, distribute, display, broadcast and rebroadcast the Program in whole or in part, as edited or re-edited, in any media, now known or hereafter developed, throughout the Universe, in perpetuity. Neither Company nor any third party shall be liable for payment of additional compensation to Contractor for any use of the Programs, the Rights, and/or the Intellectual Property permitted herein, and the compensation contained in Sections 3 and 4 of this Agreement will constitute full consideration for all such use.

d. <u>Use After Term</u>. Upon expiration or termination of this Agreement, Company shall retain the right to sell, syndicate, distribute, broadcast or license for broadcast the Program(s) which the Contractor has created and hosted for the Company. It is understood and agreed that the rights granted to Company by this Agreement include the broadest possible right to cut, edit, change, modify, dub, add to or subtract from the Program hereunder.

**11. Name and Likeness.**

a. During the Term, Contractor hereby grants to Company as well as Company's affiliates, licensees and distributors, a royalty-free and irrevocable license throughout the Universe to use, simulate and portray in any and all media Talent's name and likeness in connection with the Program; in connection with the Company's internet and social-networking platforms; and in connection with advertising, publicizing and otherwise

**14. Dispute Resolution.**

exploiting the Program or promoting Company's businesses generally. All use of Talent's name and likeness under this section shall be done in consultation with Contractor.

b. <u>Limitations</u>. Notwithstanding the foregoing, Contractor shall not be restricted from using Contractor's own real or professional names or nicknames, or from portraying himself. The Parties recognize that Contractor's personal social media accounts shall remain the personal property of Contractor, and that Contractor has the right to engage in personal social media activities.

### 12. Force Majeure.

If the regular operations of the Company and/or Network are suspended because of an act of God; act of war or terrorist action; fire; lockout, strike or other labor dispute; riot or civil commotion; act of public enemy; enactment, rule, order or act of government or governmental instrumentalities (whether federal, state, local or foreign); failure of technical facilities; failure or delay of transportation facilities or other cause of similar or different nature beyond Company's control, Company may suspend the performance of Contractor's services and the payment of compensation hereunder during the continuation of such suspension of operations. If any such suspension of operations without payment to Contractor shall continue for a period of six (6) consecutive weeks, then either party may terminate the Agreement with no further liability hereunder. No such suspension of Company or Network's operations or Contractor's services shall operate to extend the Term.

### 13. Confidentiality.

Contractor agrees and acknowledges that in the course of rendering services to Company and Company's clients, sponsors, advertisers and customers, Contractor has acquired and will acquire access to and become acquainted with confidential information about the professional business, financial, personal, and family affairs of Company, its parent, subsidiaries and affiliates, executives, on-air talent and other employees, that is non-public, confidential or proprietary in nature. Both during and at all times after the Term, Contractor shall keep secret all non-public information, matters and materials of Company, including, but not limited to: know-how, trade secrets, mail order and customer lists, programming strategies, formats, pricing policies, operational methods, any information relating to the Company's programming, products or product development, processes, artwork, designs, graphics, services, budgets, business, contests, promotions and financial plans, marketing and sales plans and techniques, employee lists and other business, financial, commercial and technical information presently owned, or at any time in the future developed by Company or its agents, or consultants, or obtained from third parties under an agreement of confidentiality (collectively, "Confidential Information"), to which Contractor has had or may have access.

Contractor recognizes that in order to safeguard Company's legitimate interests, it is necessary for Company to protect and shield from disclosure all confidential information. Contractor shall not use or disclose the Confidential Information to any person other than: (i) Company, its authorized employees and such other persons to whom Contractor has been instructed to make disclosure by Company, in each case only to the extent required in the course of Contractor's service to Company or as otherwise expressly required in connection with court process; (ii) as may be required by law and then only after consultation with Company to the extent possible, or (iii) Contractor's personal advisors for purposes of enforcing or interpreting this Agreement, or to a court for the purpose of enforcing or interpreting this Agreement, and who in each case shall be informed as to the confidential nature of such Confidential Information and, as to advisors, their obligation to keep such Confidential Information confidential.

## 14. Dispute Resolution.

a. <u>Mediation</u>. The Parties agree that, prior to the initiation of any action or proceeding seeking to enforce any provision of, or based on any right arising out of this Agreement, the Patties shall first be obligated to mediate in good faith. Unless expressly agreed in a signed writing, the mediation is to occur within sixty (60) days of the demanding party's provision of a written demand. In the event that a full settlement is not achieved during mediation, the Parties agree that any dispute, action or proceeding seeking to enforce any provision of, or based on any right arising out of this Agreement, shall then be settled exclusively by arbitration as set forth hereunder and the Parties hereby each waive the right to a jury trial before any court of competent jurisdiction.

b. <u>JURY TRIAL WAIVER</u>. THE PARTIES SHALL AND HEREBY DO WAIVE A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTER-CLAIM BROUGHT OR ASSERTED BY EITHER OF THE PARTIES HERETO AGAINST THE OTHER ON ANY MATTERS WHATSOEVER RELATING TO OR ARISING OUT OF THE FORMATION, PERFORMANCE, COMPLIANCE WITH, ENFORCEMENT AND/OR INTERPRETATION OF THIS AGREEMENT.

c. <u>Requirement</u>. All claims, controversies, disputes and other matters in question arising out of, or relating to this Agreement, the breach hereof or the rights, privileges, responsibilities or duties between or among the Patties, shall be decided by confidential arbitration in Denver, Colorado, in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA") then existing unless all of the Parties to such claim, controversy or dispute or other matter in question unanimously agree to the contrary. The provisions contained in this Paragraph shall be specifically enforceable under the prevailing arbitration law.

d. <u>Procedure</u>. The arbitrator or arbitrators for any proceeding conducted hereunder shall be a person with experience in the entertainment business that is selected in accordance with the AAA's Commercial Arbitration Rules, then in effect. The remedial authority of the arbitrator or arbitrators will be the same as, but no greater than, would be

the remedial power of a court having jurisdiction over the Parties and their dispute. The arbitrator or arbitrators will render a written opinion based on Colorado law, and an award, which will be final and binding upon the Parties.

e. <u>Equitable Remedies</u>. Notwithstanding anything to the contrary contained in this Paragraph, Company (but not Contractor) may apply for and obtain specific performance, temporary or preliminary injunctive relief from a court of competent jurisdiction pending completion of an arbitration of a disputed matter pursuant to this Agreement, and such application shall not be deemed incompatible with the Parties' agreement to arbitrate such disputed matter or a waiver of Company's right to arbitrate the disputed matter.

f. <u>Enforcement</u>. Any judgment upon the award rendered by the arbitrator may be entered in any state or federal comt located in New York County, New York, having jurisdiction of the matter. The arbitrator or arbitrators will have the authority to grant any equitable and legal remedies that would be available in any judicial proceeding instituted to resolve a disputed matter, subject to any waivers of such remedies made by any Party in this Agreement. The Parties agree to submit to the *in personam* jurisdiction of the state or federal courts located in New York County, New York, for purposes of confirming any such award and entering judgment thereon. The Parties waive any and all objections that they may have as to jurisdiction or venue in any of the above courts.

g. <u>Costs</u>. If either party brings an arbitration proceeding to enforce its rights under this Agreement, the substantially prevailing patty (as determined by the arbitrator) shall be entitled to recover from the other party all expenses incurred by it in preparing for and in trying the case, including, but not limited to, investigative costs, court costs and reasonable attorneys' fees.

**15. Third-Party Litigation and Related Proceedings.**

Contractor agrees to cooperate with reasonable requests by Company and its attorneys, both during and after the Term, in connection with any litigation or other proceeding arising out of or relating to matters in which Contractor is involved or was involved during the Term. Contractor's cooperation shall include, without limitation, providing assistance to Company's counsel, experts and consultants, and providing truthful testimony in pretrial and trial or other related proceedings. In the event that Contractor's cooperation is requested after the termination of this Agreement, Company will seek to minimize interruption to Contractor's schedule to the extent reasonably possible.

16. Miscellaneous.

   a. <u>Independent Contractor</u>. Contractor's relationship with the Company is that of an independent contractor, and nothing in this Agreement is intended to, or should be construed to, create a partnership, agency, joint venture, or employment relationship.

   b. <u>Conformity to Law</u>. If any one or more provisions of this Agreement should be determined to be illegal, invalid, or otherwise unenforceable by a court/arbitrator of competent jurisdiction or be invalid or invalidated or unenforceable by reason of any law or statute, then to the extent and within the jurisdiction invalid or unenforceable, it shall be limited, construed or severed and deleted therefrom, and the remaining portions of this Agreement shall survive, remain in full force and effect, and continue to be binding and shall not be affected and shall be interpreted to give effect to the intention of the patties insofar as that is possible.

   c. <u>Headings</u>. The headings used in this Agreement are for the convenience of the Parties and for reference purposes only and shall not form a part of or affect the interpretation of this Agreement.

   d. <u>Construction</u>. This Agreement shall be construed without regard to any presumption or other rule requiring construction against the Party causing this Agreement to be drafted, since the attorneys for the respective Parties have submitted revisions to the text hereof.

   e. <u>Representation By Counsel</u>. Each Party acknowledges and agrees that it either: (i) has engaged its own legal counsel to advise it with regard to the provisions of this Agreement, and the effect of such provisions on the legal rights of such Party; or (ii) having had the opportunity to engage such separate legal counsel, has freely, voluntarily and knowingly elected not to do so.

   f. <u>Notice</u>. Any notice or other communications hereunder shall be in writing and shall be deemed to have been duly given: (i) when delivered personally, (ii) one day after delivery to an overnight delivery courier *(i.e.,* Federal Express), or (iii) on the fifth day following the date of deposit in the United

States mail if sent first class, postage prepaid, by registered or certified mail. The addresses for such notices shall be as follows (or any other such address as one party may specify by notice to the other):

If to Company:
Frankspeech Inc.
Attn: Katelyn Gamlin
1550 Audubon Rd.
Chaska, MN 55318
katelyn@lindellmanagement.com

With courtesy copies to (which shall not constitute notice):

Doug Wardlow, Esq.
Jeremiah Pilon, Esq.
1550 Audubon Rd.
Chaska, MN 55318
doug@lindellmanagement.com
jpilon@lindellmanagement.com

If to Contractor:

g. <u>Entire Agreement</u>. This Agreement shall constitute the entire agreement concerning the subject matter hereof between the Patties, superseding all previous agreements, letter agreements, letters or memoranda of understanding, negotiations, and representations made prior to the effective elate of this Agreement.

h. <u>Amendment; Waiver</u>. This Agreement may be amended, modified, superseded, canceled, renewed or extended, and the terms hereof may be waived, only by a written instrument executed by the Patties or, in the case of a waiver, by the Patty waiving compliance. The failure of either Party at any time or times to require performance of any provision hereof shall in no manner affect the right at a later time to enforce the same. No waiver by either Party of the breach of any term or covenant contained in this Agreement, whether by conduct or otherwise, in any one or more instances, shall be deemed to be, or construed as, a further or continuing

waiver of any such breach, or a waiver of the breach of any other term or covenant contained in this Agreement.

i. <u>Successors and Assigns</u>. This Agreement shall inure to the benefit of the Company's successors and assigns. Company may assign its rights under this Agreement, in whole or in part; provided however, that such assignment shall not reduce or otherwise affect Contractor's rights and interests hereunder. Contractor may not assign, hypothecate, encumber or otherwise grant any rights or interests in this Agreement to any third party, except that Contractor may assign his rights to receive payments by pledge, creation of a security interest, or another document reasonably accepted to Company. The provisions of this Section notwithstanding, Talent shall have the right to provide services through a loan out company, subject to execution of a mutually agreeable loan out agreement between Company and Talent's loan out company.

j. <u>Further Assurances</u>. Each Party hereto covenants and agrees promptly to execute, deliver, file or record such agreements, contracts, instruments, registrations, certificates and other documents and to perform such other and further acts as the other Party hereto may reasonably request or as may otherwise be necessary or proper to consummate and perfect the transactions contemplated hereby.

k. <u>Counterparts; Facsimile or PDF Signatures</u>. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Any signed copy of this Agreement delivered by facsimile transmission or by e-mail in portable document format (PDF), shall for all purposes be treated as if it were delivered containing an original manual signature of whose signature appears in the facsimile or e-mail, and shall be binding upon such Party in the same manner as though an originally signed copy had been delivered.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed as of the day and year first written above.

THE COMPANY

Frankspeech Inc.

Dated: 6/11/2024

By: _____

Its: ToDD Carter

CTO

CONTRACTOR

Giuliani Communications LLC

Dated: June 8, 2024    /s/ Rudy Giuliani
                      Rudy Giuliani
                      Its:

2

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed as of the day and year first written above.

THE COMPANY

Frankspeech Inc.

Dated: 6/11/2024

By: [signature]
Its: ToDD Carter
CTO

CONTRACTOR

Dated: 6-8-24

[signature]
Dr. Maria Ryan, individually

11