KENNETH CARUSO LAW
15 West 72nd Street | New York, NY 10022
E: ken.caruso@kennethcarusolaw.com | P: (646) 599-4970

November 6, 2024

<u>Via ECF</u>

Hon. Lewis J. Liman
United States District Judge
United States Courthouse
500 Pearl Street
New York, NY 10007

   Re: *Freeman et al. v. Giuliani*, 24-mc-00353-LJL

Dear Judge Liman:

  We represent Defendant, Rudolph W. Giuliani ("Defendant"). In advance of the conference tomorrow, this letter responds to the letter/report filed by Plaintiffs and Receivers Ruby Freeman and Wandrea' Moss ("Plaintiffs"), dated November 4, 2024, "regarding the status Defendant's compliance with the October 22, 2024 Turnover and Receivership Order[.]" ECF 81.

A. <u>Transfer of the New York Apartment</u>

  This is, of course, the most valuable asset at issue. Last week, we instructed counsel for the Co-op at 45 East 66th Street to transfer the shares and the proprietary lease to Plaintiffs. Counsel for the Co-op requested proof that Defendant is the sole owner of this property, after his divorce. On November 4, 2024, we provided such evidence (the divorce decree and accompanying papers) to counsel for the Co-op. Even Plaintiffs characterize the remaining issues as "paperwork issues[.]" ECF 81 at 2. Plaintiffs should work out those "paperwork issues" with counsel for the Co-op. Defendant, of course, will continue to cooperate, but we believe that the next steps are outside Defendant's control and that Defendant is in compliance in this respect.

  Additionally, we have repeatedly instructed the Co-Op's counsel to continue to grant Plaintiffs full access to the unit and to provide them with keys. Surely, however, by now, Plaintiffs, acting prudently, have changed the locks and have their own keys.

B. <u>Contents of the New York Apartment</u>

  Plaintiffs contend that the apartment was "substantially empty[]" when they arrived last week. ECF 81 at 1. We are told that no property belonging to Defendant was removed in violation of a Restraining Notice. We will be prepared to discuss this topic at the conference.

C. <u>The Ronkonkoma Storage Unit</u>

  Last week, we were informed that Defendant has property in a storage unit, located at Corporate Transfer and Storage ("CTS"), 1 Comac Loop, # 14, Ronkonkoma, NY 11779. We wrote to the CTS proprietor, copying Mr. Nathan, as follows: "Dear Mr. Verlander. I represent

Hon. Lewis J. Liman
*Re: Freeman et al. v. Giuliani*
November 6, 2024
Page 2 of 4

Mr. Giuliani (copied here), who, I understand, has property stored at your facility.  I write, on behalf of Mr. Giuliani, to authorize/request/direct you to provide Mr. Aaron Nathan (copied here) and/or a representative of Morgan Manhattan (copied here), with access to Mr. Giuliani's property.  Please be in touch with me and/or Mr. Nathan if you have any questions."

  CTS, apparently, has not responded quickly enough to suit Mr. Nathan.  CTS, however, is a garnishee within the meaning of CPLR 5201.  Plaintiffs, therefore, have a remedy under CPLR 5225(b).  Again, we believe that the next steps are outside Defendant's control and that Defendant is in compliance in this respect.

  Plaintiffs complain that Defendant "has not disclosed *what* property is stored there."  ECF 81 at 2.  That complaint, however, is pointless.  We understand that Defendant, at this time, cannot provide, from memory or records, an inventory of what is stored at CTS.  In any event, the relevant question is, "what is stored at CTS," not "what does Defendant think/believe/recall is stored there."  Plaintiffs should gain possession of the property from CTS and then take whatever further steps they regard as necessary.  Again, we believe that the next steps are outside of Defendant's control and that Defendant is in compliance in this respect.

  This morning, Mr. Nathan complained to us via email that the attorney representing CTS advised Mr. Nathan that the proprietor of CTS is away for a month.  This led Mr. Nathan to write to us:

> Notwithstanding your instructions to [CTS], he and his representatives have provided no assistance whatsoever in obtaining access to the facility.  Please address this immediately to ensure that the receivers are granted immediate access to the storage facility and a complete inventory of its contents.  If something does not change very soon, the Court will hear tomorrow . . . . that the facility's proprietor then left town for a month and is apparently unable to respond to basic requests for information, much less grant access.  Regardless of Mr. Verlander's situation, your client is responsible for providing us with information about where the receivership property is, and providing us with access to that property.

  But what, exactly, does Mr. Nathan think Defendant can do?  Simply put, Defendant does not and cannot control CTS.  If CTS, a garnishee, does not accommodate Mr. Nathan immediately, as he seems to think everyone must, he has remedies under CPLR 5225(b).

D. <u>Other Personal Property</u>

  Plaintiffs state, "Defendant's counsel has so far been unable to state where" property "is."  ECF 81 at 2. As shown in this letter, however, we have told Plaintiffs where property is located, including CTS and the Palm Beach Condo, where the wristwatches—which constitute a substantial portion of the assets listed in the Court's Opinion and Order, ECF 62 at 17-18—are located.  Plaintiffs have provided no instructions regarding the wristwatches and have sent no agent to collect them.

Hon. Lewis J. Liman
*Re: Freeman et al. v. Giuliani*
November 6, 2024
Page 3 of 4

Plaintiffs continue to insist and fixate on an inventory of items. But again, that complaint is pointless. We understand that Defendant, at this time, cannot provide, from memory or records, an inventory. Nothing in the Receivership Order requires him to know that information or to provide an inventory. In any event, the relevant question is, "what property exists," not "what does Defendant think/believe/recall as to what property exists." Plaintiffs should gain possession of the property and then take whatever further steps they regard as necessary. Defendant will continue to cooperate.

E.     Cash Accounts

Plaintiffs continue to bicker about the turnover of funds in the Citibank account (approximately $3,000), ignoring our email of November 1, 2024, addressing this issue. ECF 81-1 ¶ 6. As stated and provided by Plaintiffs to the Court: "Given that [Plaintiffs] have a restraining notice on the Citibank account, and it is still frozen, we believe the best next step is for [Plaintiffs] to send Judge Liman's order to the bank and execute on it accordingly. We don't think that Citibank will allow Mr. Giuliani to make wire transfers, given that the account is frozen. However, on this issue, we are open to all suggestions." ECF 81-1 at 3 ¶ 6.

Realistically, and as a practical matter, no bank in Citibank's position will release funds unless it hears from the party in Plaintiffs' position, the parties who won the freeze of the account. We believe that the next step is for Plaintiffs to contact Citibank and to gain possession of the account. Plaintiffs, however, have chosen not to respond further to us, or to proceed with Citibank.

F.     Automobile

Last week, we asked Plaintiffs to send us documentation, satisfactory to them, to transfer title to the car. Defendant would then sign such documentation and send the keys. *See* ECF 81-1 at 3 ¶ 4. It is, or should be, obvious that Plaintiffs cannot simply take possession of Defendant's car without a documented transfer of title. We have yet to receive such documentation, but Defendant remains ready to sign. The car remains in Palm Beach.

\* \* \* \* \*

In sum, Plaintiffs' status report generates more heat than light. As demonstrated in this letter, Defendant is facilitating the turnovers. He remains ready to sign documents for property transfers, has provided the precise location of his storage unit, and has pointed Plaintiffs to the appropriate contacts. Yet, it seems Mr. Nathan's true focus is less on obtaining the assets and more on demanding information from Defendant, seeking to create further opportunities and traps for claims of false statement and/or inadequate disclosure. Respectfully, if Plaintiffs genuinely want the New York apartment, they should press the Co-Op board. If they want the property at CTS, they should exercise their rights under CPLR 5225(b). If they want the car, they should send us paperwork to transfer title. If they want the Citibank funds, they should show Citibank that it is free to transfer the amount at issue. And then, if *those* parties do not

Hon. Lewis J. Liman
*Re: Freeman et al. v. Giuliani*
November 6, 2024
Page 4 of 4

comply, Plaintiffs have remedies. Simply put, it's not Defendant's compliance that's lagging here—it's Plaintiffs' follow-through.

G.      Leaks to the Media

Lastly, we were surprised to receive a copy of Plaintiffs' status report [ECF 81] from a reporter Monday night, notably *without* the ECF filing stamp. This tells us that Plaintiffs are leaking their case to the media. We believe that Plaintiffs should not "scoop" the Court. Whatever else may be said of defense counsel, we have not done so. We respectfully request that the Court instruct Plaintiffs to refrain from leaking case materials to the media, and to allow this case to proceed through normal channels—first, through the Court, and then through voluntary responses to media inquiries.

Respectfully submitted,

/s/ Kenneth A. Caruso
Kenneth A. Caruso

cc:     Counsel of Record (via ECF)