787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

# WILLKIE FARR & GALLAGHER LLP

November 13, 2024

*Defendants, his attorneys, agents, and persons in active concert or participation with him or them shall not transfer, encumber, or interfere with any of Defendant's property located at Corporate Transfer and Storage, Inc. ("CTS") or America First Warehouse ("AFX"). This order shall expire on November 27, 2024, at 4:15 p.m., absent further order of the Court. Violation of this order may lead to contempt sanctions. Defendant shall respond to Plaintiffs' letter at Dkt. No. 106 by letter filed on the docket no later than November 15, 2024, at 12 noon. In the absence of a timely-filed response, the Court shall consider the application to be unopposed. Absent modification, Defendant shall comply with the Court's order of November 8, 2024, at Dkt. No. 94.*

*November 13, 2024*

*LEWIS J. LIMAN
United States District Judge*

**VIA ECF**

Hon. Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:     *Freeman et al. v. Giuliani*, No. 24-mc-353 (LJL)

Dear Judge Liman:

Plaintiffs Ruby Freeman and Wandrea' Moss ("Plaintiffs" or "Receivers") respectfully submit this letter seeking leave to modify the instructions provided to Mr. Giuliani in accordance with the Court's Order at ECF No. 94 (the "Turnover Instructions Order").

Consistent with that Order, on November 11, 2024, Plaintiffs-Receivers provided Mr. Giuliani's attorneys with instructions including "the location to which all outstanding property listed on pp. 17-18 of the Turnover Order shall be delivered by Defendant and/or his agents to the Receiver and the means by which it shall be delivered." ECF No. 94. Specifically, Plaintiffs-Receivers directed Mr. Giuliani to deliver any property located in New York, including the contents of the Ronkonkoma storage facility operated by Corporate Transfer and Storage, Inc. (the "CTS Facility"),[1] to a storage facility in Richmond Hill, NY on November 15, 2024, at 9:00 AM.

After significant efforts to contact representatives of the CTS Facility, counsel for the CTS Facility yesterday provided Plaintiffs-Receivers with initial documentation—consisting of invoices and a photographic inventory—of at least some of the property stored at the CTS Facility. Those documents are attached hereto as **Exhibit A.**

The documents produced by CTS either confirm or reveal certain concerning facts surrounding Mr. Giuliani's actions with respect to his property, including receivership property, since the restraining notice to Mr. Giuliani took effect on August 7, 2024.

---

[1] Plaintiffs understand that the CTS Facility may be related to the "America First Warehouse," which appears to share common ownership and a common address with CTS. References to the CTS Facility are meant to encompass any part of the America First Warehouse in which Defendant's property may be held.

For example, the documents indicate:

- Mr. Giuliani first moved property into the CTS Facility in early July 2023, moving and storing "2 containers" worth of "household goods" at that time.

- Mr. Giuliani then made a bigger move in October 2024, moving "24 pallets" of "unknown boxes and loose furniture" from a different warehouse in Oceanside, NY, to the CTS Facility in Ronkonkoma.

- At the same time, over five days in early October 2024—from October 4 through October 8—Mr. Giuliani moved "6 containers," each "5'x5'x7'" of "household goods" from the New York Apartment to the CTS Facility, consistent with the reports provided by the co-op's management company representative that Mr. Giuliani moved the majority of his belongings out of the New York Apartment around that time. *See* ECF No. 81.

- From the photographic inventory included in the CTS production,[2] it appears that some of the voluminous property stored at the CTS Facility may be receivership property—including furniture, artwork, and sports memorabilia—but that it is commingled with other property of questionable value.

- The billing contact listed on the invoices is not Mr. Giuliani, but "Dr. Mari [sic] Ryan," with an address of "New Hampshire Health System."

- In total, as of mid-October 2024, Mr. Giuliani (or Dr. Ryan) owed a balance of nearly $100,000 to CTS for the moving and storage services.

These revelations raise serious concerns about the circumstances of Mr. Giuliani's transfer of property out of the New York Apartment, to say nothing of the possibility that he has relied on Dr. Ryan to incur—and perhaps to pay—debts on his behalf, from sources still unknown. At a minimum, these documents confirm that Mr. Giuliani and his associates *did* move a substantial amount of his property out of the New York Apartment while the motion for turnover was pending, without informing Plaintiffs and possibly without informing his own counsel. *See* ECF No. 88, at 1 (Mr. Giuliani's counsel representing on November 6, 2024, that "[l]ast week,"—*i.e.*, several weeks after October 4, 2024—"we were informed that Defendant has property in a storage unit, located at Corporate Transfer and Storage"). Further, these revelations call into question Mr. Giuliani's position that he could not provide an inventory or any other information to Plaintiffs about *what* was stored at the CTS Facility. *See id.* at 2 ("We understand that Defendant, at this time, cannot provide, from memory or records, an inventory of what is stored at CTS."). Evidently, those records were readily available—if not in Mr. Giuliani's possession,

---

[2] In the interest of avoiding unnecessary intrusion into Mr. Giuliani's privacy, Plaintiffs have not attached this photographic inventory to this letter, but are prepared to file a copy on the docket should the Court prefer. Mr. Giuliani's counsel has been provided with a copy of the same records that CTS's counsel sent to Plaintiffs. Notably, it appears from the photographs that certain especially valuable property, including watches, rings, jewelry, furniture, and particular sports memorabilia, may not be among the property stored at the CTS Facility—although it will not be possible to know for sure until representatives of the Plaintiffs-Receivers are able to review the items in person.

November 13, 2024
Page 3

then on request to CTS itself, and surely more easily requested by Mr. Giuliani or Dr. Ryan than Plaintiffs' counsel.

Plaintiffs-Receivers will continue to investigate these matters and seek relief from the Court as appropriate. At present, Plaintiffs-Receivers seek leave to modify the instructions the instructions provided to Mr. Giuliani's counsel—solely as to the property located at the CTS Facility. Instead of delivering the contents of the CTS Facility to the Richmond Hill, NY facility as previously instructed, Plaintiffs request to modify their instruction to require Mr. Giuliani or his representatives and agents full, ongoing access to the property located at the CTS Facility so that they may take a full inventory, determine what property qualifies as Receivership Property, and take possession in accordance with the Turnover Order. This procedure will also permit Plaintiffs-Receivers an adequate opportunity to evaluate whether—with respect to certain property of questionable value—it would be in the best interests of the receivership estate to seek turnover and possession of the property, given that the cost of storing and disposing of the items may exceed any value that they may get in return.

Plaintiffs-Receivers also attach to this letter a copy of the restraining notice served on CTS and Dr. Ryan, which make clear that no party with arguable possession or control over any property stored at the CTS Facility in which Mr. Giuliani has an interest may be transferred, encumbered, interfered with, or otherwise disposed of except to Plaintiffs or subject to an order of this Court. *See* **Exhibit B; Exhibit C.**

Plaintiffs respectfully request that the Court enter the following order:

The instructions provided by Plaintiffs to Defendant on Monday, November 11 pursuant to ECF No. 94 are modified solely with respect to the property held at the storage facility in Ronkonkoma, NY (Corporate Transfer and Storage, Inc., or "CTS," or the America First Warehouse, or "AFW"). Defendant shall provide Plaintiffs and their representatives with ongoing access to all property held at CTS or AFW upon request to CTS or AFW or their representatives, effective as of entry of this order. Neither Defendant nor CTS nor AFW nor any of their representatives shall transfer, encumber, or interfere with any of Defendant's property located at CTS or AFW pending further order of the Court.

Plaintiffs' counsel have attempted to confer with Defendant's counsel about the proposed relief, including via emails transmitted last night, this morning, and this afternoon, but have not received any response.

                                        Respectfully submitted,

                                        s/ Aaron E. Nathan

cc:      Bonnie Lawston, Esq.
           Counsel for Corporate Transfer & Storage, Inc.