**WILLKIE FARR & GALLAGHER** LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

November 22, 2024

**VIA ECF**

Hon. Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *Freeman v. Giuliani*, No. 24-mc-353 (LJL)

Dear Judge Liman:

      Plaintiffs Ruby Freeman and Wandrea' Moss ("Plaintiffs" or "Receivers") write to notify the Court of recent developments involving their efforts to secure Mr. Giuliani's compliance with the Turnover and Receivership Order (ECF No. 62) (the "Turnover Order") and the Court's Order at ECF No. 94 (the "Turnover Instructions Order"). The October 22, 2024 Turnover Order provided a multi-page list of specific property ("Receivership Property")—including a signed Joe DiMaggio shirt, signed Reggie Jackson and Yankee Stadium pictures, furniture, sports memorabilia, various watches, a Diamond Ring, costume jewelry, a Mercedes, and any "additional property" that may be ordered by the Court upon motion—which it ordered Mr. Giuliani to "***deliver*** to Plaintiffs-Receivers" within seven days. ECF No. 62 at 16–18 (emphasis added). The Turnover Order appointed Plaintiffs as receivers over the Receivership Property "in order to ensure that the liquidation of the transferred assets is accomplished quickly and consistently by the Plaintiffs' chosen counsel, maximizing the sale value of the unique and intangible items and therefore increasing the likelihood of satisfaction of the Plaintiffs' judgment." *Id*. at 7. Accordingly, the Turnover Order authorized Plaintiffs-Receivers to *inter alia*: "Take possession, ownership, and control of the Receivership Property"; "Effectuate a transfer, assignment or sale of the Receivership Property"; "Take all necessary steps to conserve and protect the Receivership Property pending sale thereof"; and "Employ professionals to market and sell the Receivership Property." *Id*. at 18–19.

      Pursuant to the Turnover Instructions Order, the Receivers provided instructions to counsel for Mr. Giuliani on November 11, 2024 about the locations to which, on November 15, 2024, he was required to deliver the Receivership Property, including "the contents of the storage unit in Ronkonkoma" ("CTS Facility"). At that time, the Receivers were unaware of which, if any, of the Receivership Property was located at the CTS Facility, including because Mr. Giuliani had refused the Receivers' repeated instructions to provide such information. Shortly before the scheduled date of delivery, the Receivers learned from counsel for CTS about the vast amount of Mr. Giuliani's property

stored there—pursuant to an agreement between CTS and third party, Dr. Maria Ryan—including eight storage boxes, more than 20 pallets of moving boxes, and furniture, some of which is reflected below:

  

In light of that information, on November 13, 2024, Receivers modified their instruction to Mr. Giuliani regarding property stored at the CTS Facility in order to, as they previously explained to the Court, "take a full inventory, determine what property qualifies as Receivership Property, and take possession in accordance with the Turnover Order. This procedure will also permit Plaintiffs-Receivers an adequate opportunity to evaluate whether—with respect to certain property of questionable value— it would be in the best interests of the receivership estate to seek turnover and possession of the property, given that the cost of storing and disposing of the items may exceed any value that they may get in return." ECF No. 108. The Receivers also explained that the CTS Facility appeared to share an owner and location with The America First Warehouse. *Id*. The Court subsequently entered an order that "Defendants, his attorneys, agents, and persons in active concert or participation with him or them shall not transfer, encumber, or interfere with any of Defendant's property located at Corporate Transfer and Storage, Inc. ("CTS") or America First Warehouse ("AFX")." *Id*. (the "CTS Order"). The CTS Order is set to expire on Wednesday, November 27, 2024, absent Court order. *Id*.

Since November 13, 2024 and consistent with the authority the Court designated to Receivers in the Turnover Order, representatives of the Receivers have been working diligently to inventory the voluminous amount of property at the CTS Facility, at the Receivers' own expense. Until Wednesday morning, the Receivers were conducting this work with the cooperation of CTS, and in collaboration with counsel for CTS. Prior to first entering the CTS Facility, Counsel for the Receivers raised concerns about attempts to intimidate or interfere with their efforts to archive the property stored at the CTS Facility, especially in light of CTS' apparent affiliation with AFX, which lists Mr. Giuliani as a "partner" on its website.[1] During the same conversation, counsel for the Receivers and CTS discussed that both CTS and AFX were subject to properly served restraining notices, which required leaving all of Mr.

---

[1] https://www.theamericafirstwarehouse.com/partnershttps://www.theamericafirstwarehouse.com/partners.

Giuliani's property undisturbed, including in connection with raffles taking place this month at the AFX facilities.[2] CTS's counsel was cooperative, confirmed a mutual understanding the CTS would cooperate fully with all orders of the Court, and explained that the security cameras at the CTS facility would be running at the request of its owner to ensure that no property was removed from the premises. Receivers agreed to private video surveillance, *inter alia* because it would provide protections to all parties against any false claims of impropriety.

With assurances from CTS' counsel, representatives of the Receivers began to inventory the property at the CTS Facility on November 18, 2024, and hired at their own expenses three employees of the CTS Facility to assist with moving and unpacking boxes and containers of property. The first day of the process was slow, and, after hours of work, the Receivers did not identify any items of significant value, or any of the Receivership Property. In consultation with CTS, representatives of the Receivers estimated it would take another *three to four days* to finish the archiving process, and intended to return on Wednesday morning.

At 11:00 a.m. on Wednesday morning, Mr. Giuliani's new attorney in this matter held a press conference outside of the New York City offices of Willkie Farr & Gallagher (Receivers' counsel). Mr. Cammarata is a member of the New York Bar, presumably familiar with Rules 3.4, 3.6, 4.1, and 8.4 of the New York Rules of Professional Conduct, and has his own office at which he is capable of hosting press conferences—it is unclear why Mr. Cammarata thought it appropriate to target Receivers' counsel by staging a press event at that location. In any event, during that press conference,[3] Mr. Cammarata launched a variety of attacks against this proceeding, Receivers' counsel, and the underlying judgment, including:

- "My client has turned over millions of dollars in assets to date. The New York cooperative apartment could be north of $6 million was turned over. Valuables, jewelry, watches, countless watches, turned over in compliance. He is ordered, and turned over a vehicle, without even having it appraised. We weren't even allowed to have it appraised. 'Turn it over,' the Judge said. That is not how it works. The CPLR, the civil practice laws and rules, in New York state have certain exemptions. That vehicle is worth under a certain amount, $5500, it does not have to be turned over."

- "We are standing in front of Willkie Farr and Gallagher LLP, this law firm has approximately 1000 attorney worldwide with office I believe in Paris, in London, in the United States, multiple states, such as Chicago, California if I am not mistaken. They have north of 10 attorneys working on this file. The story of David and Goliath is going to continue. It's one versus all, one being the United States of America versus all. This should not take place the way it's taking place. **We will not allow it**."

---

[2] https://www.theamericafirstwarehouse.com/events.
[3] Forbes Breaking News, *JUST IN: The Attorney for Rudy Giuliani Assails 'Unconstitutional' Judgment Against Former NYC Mayor*, YouTube (Nov. 20, 2024), https://www.youtube.com/watch?v=yF4mvBuOAGc.

- "We will not relent. They are doing everything they can to stop Mr. Giuliani from having a formidable defense. **We are not going to allow it. . . .** This is not what we do in this state. It must end. The judgment does not fit the alleged acts. This firm is doing everything in its power to break an 80-year-old patriot to its county, an American who did so many great things for us."
- "He's given over 90% to 95% what is in his possession at this point and this law firm is not stopping. I think it's a seek and destroy mission of America's mayor."

Mr. Cammarata's statements echoed an online social media campaign, which counsel for the Receivers also discovered Wednesday, using the hashtag "IStandWithRudy" to evince support for Mr. Giuliani. Mr. Giuliani's spokesperson and business partner, Ted Goodman, used the hashtag when posting about the Mercedes subject to the Turnover Order:



      Also on Wednesday, counsel for the Receivers discovered that AFX posted a video to its public X handle with the "istandwithrudy" hashtag from inside the CTS Facility where Mr. Giuliani's property is located and which appears in the background:



In the video, the individual, who Receivers understand to be the owner of CTS and ATX states:

> "It's me, Joe The Box, from American First Warehouse, the American First Patriot. This is where we are going to do it. They are going to dissect the life of Rudy Giuliani. Right here. In front of my eyes and in front of your eyes because I'm going to film it. **This is not going to happen**. America has to come back real fast. Pray for Rudy Giuliani, today is his day."[4]

---

[4] The America First Warehouse @americafirstwh, X (Nov. 20, 2024, 6:42 AM), https://x.com/americafirstwh/status/1859200727161143569.

AFX's X profile subsequently posted a video of the press conference of Mr. Giuliani's lawyer, with the caption "We Stand with Rudy today, tomorrow, every day ."[5]

The public relations campaign described above has no legal purpose—this is a turnover proceeding governed by facts and law, not a political campaign—and, instead, is an obvious attempt to obstruct and intimidate Receivers from effectuating the duties that this Court has authorized them to perform. Mr. Cammarata's publicity stunt, reinforced by Mr. Giuliani's social media campaign, continues Mr. Giuliani's habit of litigating in the press issues that he has conceded or stipulated to in court. For example, contrary to Mr. Cammarata's claims that this Court did not "allow[]" Mr. Giuliani to have the Mercedes appraised and that "they are doing everything they can to stop Mr. Giuliani from having a formidable defense," at no point prior to the Turnover Order did Mr. Giuliani's able counsel *ever object to turning over* the Mercedes, nor did they object to turnover of many of Mr. Giuliani's watches, sports memorabilia, and the majority of his other "unique personal property." ECF No. 44 at 5–6. Mr. Giuliani could have advanced numerous arguments in opposing the Receivers' motion to enforce the judgment, but made the strategic decision not to do so. This strategy follows Mr. Giuliani's "strategy" of bemoaning (in public) the unfairness of the underlying litigation and judgment in this matter, even though (in that action) he: was invited but declined to participate in a mediation; litigated and lost a motion to dismiss; was afforded a full and fair opportunity to participate in discovery, but refused, including by never serving discovery requests on, or attempting to depose, Plaintiffs or *any* third parties; stipulated twice to liability in a failed effort to avoid sanctions for his misconduct; stipulated to nearly all of the relevant jury instructions prior to trial; and declined to put on a defense case or testify under oath during trial, despite being presented with the opportunity to do either.[6]

It appears that Mr. Giuliani is planning to continue his approach of doing the bare minimum or less *in court*, while spending his time (and dispatching his counsel, friends, and advisers to do the same) attacking the judicial process, the Court, and opposing counsel in the press and on social media. Mr. Giuliani's response to Receiver's Motion to Compel the production of documents responsive to the first set of Requests for Production was due "no later than 5pm on November 20, 2024, which shall comply with the Court's Individual Practices in Civil Cases. ***In the absence of a timely filed response in conformance with those Individual Practices, the motion will be considered unopposed***." *Freeman v. Giuliani*, No. 24-cv-6563, ECF No. 94 (emphasis added). Yet, instead of filing a response and raising his objections in court on the record, Mr. Cammarata spent his time on Wednesday holding a press conference urging the public to fight back against Receivers' efforts to fulfil their legal obligations. Mr.

---

[5] The America First Warehouse @americafirstwh, X (Nov. 20, 2024, 3:08 PM), https://x.com/americafirstwh/status/1859327915734786549.

[6] *Freeman v. Giuliani*, 21-cv-03354-BAH (D.D.C.) ECF No. 12 ("On March 16, 2022, Defendant Giuliani informed Plaintiffs that he declined to participate in mediation."); ECF No. 31 ("Plaintiffs have stated a claim as to each of the three counts, and Giuliani's arguments to the contrary are unpersuasive."); ECF No. 84-2 ("NOLO CONTENDRE STIPULATION"); ECF No. 90 ("Defendant Giuliani concedes, for purposes of this litigation only, that liability in this case on Plaintiffs' causes of action should be treated as though there is default liability."); ECF No. 105 ("Defendant does not designate any deposition testimony" and "parties have reached significant agreement on the bulk of the instruction" and "Defendant Giuliani has indicated an intent to assert limited objections . . "); ECF No. 116 (withdraws objections to jury instructions); *see also* Trial Tr., December 14, 2023 Morning Session Tr. at 49:24–50:9 ("THE COURT: So as you know, the plaintiffs rested their case yesterday; it's now the defense opportunity. Mr. Sibley? MR. SIBLEY: Your Honor, defendant rests."), at 92:1–7 ("We ultimately made the decision not to have my client even testify . . .").

Cammarata's decision to prioritize press above the needs of the case also weighs against granting him any additional time (let alone 30 days) to get "up to speed" on the matter.

Regardless of its intent, Mr. Giuliani's public relations strategy has had an immediate impact. The owner of CTS and ATX appears to have interpreted the "IStandwithRudy" mantra as license to obstruct the Receivers from completing their court-ordered responsibilities, work which (according to "Joe The Box") is "not going to happen." As for Mr. Cammarata's publicity stunt, it successfully and promptly incited outrage and anger online. Just a few of the comments responding to the press conference include:

- "Every enemy of Rudy is an enemy of Trump !!!!!!!!! Watch out fools !!!!!!!!"

- "Get Rudy his life back please. He doesn't deserve anything that's been done to him. Destroy that judge and those election stealing monsters."

- "It is truly disgusting what the democrats have done to America's Mayor. There must be a price to pay back this injustice. Mr. Cammarata you know what you need to do, do it!"

- "As Steve Bannon recently said The hunters are about to be hunted"

- "Total lawfare. Disgraced, paid for judges. They all should face 18th Century Justice. This is the deep state."

In sum, Mr. Giuliani's public relations campaign is designed to interfere with Receivers' efforts to perform their duties by attacking the underlying judgment, impugning the integrity of Receivers and their counsel, and inciting members of the public to fight (whatever that means). In light of this conduct, Receivers have not returned to the CTS Facility as planned, and do not believe it would be safe, efficient, or practical to do so. Accordingly, the Receivers have modified their instructions to Mr. Giuliani to instruct him with the following:

**(1) By no later than 5 p.m. Friday, December 6, Mr. Giuliani shall segregate all Receivership Property located at the CTS Facility from property that is not subject to the Turnover Order;**

**(2) By the same date and time, Mr. Giuliani shall provide a detailed list containing pictures of the segregated Receivership Property located at the CTS Facility sufficient to show the size and quantity of that property;**

**(3) By Monday, December 9, the Receivers will provide Mr. Giuliani with the location of a New York-based storage facility, and the date and time when Mr. Giuliani shall deliver all of the Receivership Property located at the CTS Facility;** [7]

---

[7] The Receivers require this time in order to secure a unit of sufficient size to hold the Receivership Property. It would be a financial burden and imposition to secure such a facility until Mr. Giuliani has segregated the Receivership Property and notified Receivers of its amount.

**(4) Mr. Giuliani shall deliver all of the Receivership Property stored at the CTS Facility to the New York-based storage facility provided by Receivers no later than Friday, December 13.**

The Receivers respectfully request that the Court enter the above instruction as an order and, given the timing, extend the CTS Order entered at ECF No. 108 until Mr. Giuliani has complied with the above-modified instructions in full.

The Receivers are in the process of assessing Mr. Giuliani's compliance with the Turnover Order and will seek further relief of the Court where necessary. For the Court's awareness, the Receiver's current understanding of the state of turnover is as follows:

- **Mercedes**: Mr. Giuliani has delivered the Mercedes to the address provided by the Receivers. Receivers are in the process of scheduling an appraisal, and determining appropriate steps for sale. Mr. Giuliani has not yet delivered any deed, title, or right of ownership to the vehicle, or executed any documents transferring ownership of the Mercedes. Receivers have instructed him to bring all such ownership documents and be prepared to provide any necessary signatures at the Court's hearing scheduled for Tuesday, November 26, 2024, or explain why he is incapable of doing so by email to Receivers no later than 3 p.m. on Monday, November 25, 2024.

- **Watches and Jewelry**: Mr. Giuliani has delivered 18 watches and one diamond ring to the address provided by the Receivers. Receivers are in the process of scheduling an appraisal, and determining appropriate steps for sale. He has still not turned over 1 Shinola watch, 1 Corium watch, 1 IWC watch, 1 Invicta watch, 2 Breitling watches, 3 additional watches, or any costume jewelry (which is how Mr. Giuliani previously described jewelry in his possession). Receivers have instructed him to deliver all of the aforementioned property to a specific location by Tuesday, November 26, 2024, or explain why he is incapable of doing so by email to Receivers no later than 3 p.m. on Monday, November 25, 2024.

- **New York Co-op**: The Receivers have been working diligently with multiple third parties, including the co-op board and the property's title company, to effectuate transfer. There have been a number of unexpected challenges. Mr. Giuliani still has not delivered the keys, stock, or proprietary lease for the New York co-op Apartment, and apparently has been unable to locate any of the underlying ownership documents. Receivers also learned that Mr. Giuliani did not transfer the co-op to his name alone after his divorce proceedings and, as a result, the co-op remains in the names of both Mr. Giuliani and Judith Giuliani. In order to effectuate any transfer to the Receivers, the co-op and title company will require Mr. Giuliani and Judith Giuliani to transfer the title into Mr. Giuliani's name individually and pay any associated transfer taxes. The Receivers have been communicating regularly with the co-op's counsel and the title company to draft documentation sufficient to effectuate both necessary transfers, and intend to promptly instruct Mr. Giuliani to sign all of the necessary paperwork. Receivers

have instructed Mr. Giuliani to be prepared to execute necessary paperwork at the Court's hearing schedule for Tuesday, November 26, 2024, or explain why he is incapable of doing so by email to Receivers no later than 3 p.m. on Monday, November 25, 2024. Receivers also are in the process of attempting to coordinate the cooperation of Judith Giuliani. Finally, Receivers have been negotiating with the realty company Mr. Giuliani had previously hired, and are working to retain new realtors to execute a sale as soon as title has transferred.

- **All other Receivership Property**: Mr. Giuliani has not delivered any other Receivership Property. Receivers have not yet been able to determine whether any of the additional Receivership Property identified in the Turnover Order (including, for example, the Joe DiMaggio jersey or the signed art or sports memorabilia) is located in the CTS Facility. Receivers have instructed Mr. Giuliani to confirm, in writing, the location of the Joe DiMaggio Jersey, all signed art, and all sports memorabilia in advance of the Court hearing scheduled for Tuesday, November 26, or explain why he is incapable of doing so by email to Receivers no later than 3 p.m. on Monday, November 25, 2024. After the deadlines detailed in the above instructions pass, Receivers will inform the Court if Mr. Giuliani sufficiently identifies and delivers any of the outstanding Receivership Property, or if questions remain about the location of the same.

- **Citibank Funds**: Mr. Giuliani has not delivered the non-exempt funds from his Citibank account via the provided wire instructions. Nor has Mr. Giuliani provided any evidence that Citibank is preventing him from effectuating such transfer. Receivers have instructed him to do so by the Court's hearing scheduled for Tuesday, November 26, 2024, or explain why he is incapable of doing so by email to Receivers no later than 3 p.m. on Monday, November 25, 2024.

Respectfully submitted,

s/ Michael J. Gottlieb