# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

RUBY FREEMAN and WANDREA' MOSS,

Plaintiffs,

v.

RUDOLPH W. GIULIANI,

Defendant.

No. 24-mc-00353-LJL

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR AN ORDER TO SHOW CAUSE WHY DEFENDANT RUDOLPH W. GIULIANI SHOULD NOT BE HELD IN CONTEMPT FOR FAILING TO COMPLY WITH THE TURNOVER ORDERS

Rachel Goodman
United to Protect Democracy
82 Nassau Street, #601
New York, NY 10038
(202) 579-4582
rachel.goodman@protectdemocracy.org

Von DuBose (*pro hac vice forthcoming*)
DuBose Miller LLC
75 14th Street NE. Suite 2110
Atlanta, GA 30309
(404) 720-8111
dubose@dubosemiller.com

Michael J. Gottlieb
Meryl C. Governski (admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com
mgovernski@willkie.com

Aaron E. Nathan
M. Annie Houghton-Larsen
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8000
anathan@willkie.com
mhoughton-larsen@willkie.com

*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ...........................................................................................................................1

FACTUAL BACKGROUND ..........................................................................................................2

    A.    Mr. Giuliani Identifies Personal Property In Which He Has A Legal Interest in His Bankruptcy Filings. ..........................................................................3

    B.    Plaintiffs Seek And The Court Enters The Turnover Order Requiring Mr. Giuliani To Deliver All Receivership Property Or Documents Necessary For Their Transfer By October 29, 2024. ................................................................5

    C.    Mr. Giuliani Did Not Deliver Any Of The Receivership Property Or Documents Necessary To Effectuate Its Delivery By October 29, 2024. ..............6

    D.    In The Days After The Turnover Order Deadline Passed, Plaintiffs Continue To Attempt To Understand The Location Of The Receivership Property....................................................................................................................7

    E.    The Court Enters The Instructions Order Requiring Mr. Giuliani To Deliver All Receivership Property By November 15, 2024. ................................11

    F.    Mr. Giuliani Delivers Only The Mercedes, 18 Watches, And One Ring By The November 15 Instructions Order Deadline....................................................15

    G.    In Response to The Modified Instructions Order, Mr. Giuliani Did Not Deliver All Receivership Property.........................................................................17

LEGAL STANDARD....................................................................................................................20

ARGUMENT .................................................................................................................................21

I.    MR. GIULIANI IS IN CONTEMPT OF THE COURT'S TURNVER ORDERS. ..........21

    A.    The Turnover Orders Are Clear And Unambiguous.............................................21

    B.    Evidence Of Mr. Giuliani's Non-Compliance Is Clear And Convincing.............22

    C.    Mr. Giuliani Has Not Diligently Attempted To Comply With the Court's Orders...................................................................................................................22

CONCLUSION..............................................................................................................................23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*BOC Aviation Ltd. v. AirBridgeCargo Airlines, LLC*,
  No. 22-cv-2070 (LJL), 2022 WL 17581775 (S.D.N.Y. Dec. 12, 2022) ................................. 20

*Callanan Indus., Inc. v. White*,
  123 A.D.2d 56, 510 N.Y.S.2d 230 (3d Dept. 1968) ................................................. 22

*City of New York v. Venkataram*,
  568 F. App'x 63 (2d Cir. 2014) ............................................................. 23

*City of New York v. Venkataram*,
  No. 06 Civ. 6578 (NRB), 2012 WL 2921876 (S.D.N.Y. July 18, 2012) ......................... 20, 22

*Drywall Tapers & Pointers of Greater N.Y. v. Loc. 530 of Operative Plasterers &
  Cement Masons Int'l Ass'n*,
  889 F.2d 389 (2d Cir. 1989) ................................................................ 23

*Huber v. Marine Midland Bank*,
  51 F.3d 5 (2d Cir. 1994) ................................................................... 20

*King v. Allied Vision, Ltd.*,
  65 F.3d 1051 (2d Cir. 1995) .............................................................. 20, 21

*Levin v. Tiber Holding Corp.*,
  277 F.3d 243 (2d Cir. 2002) ................................................................ 22

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*,
  369 F.3d 645 (2d Cir. 2004) ................................................................ 20

*Schwarz v. ThinkStrategy Cap. Mgmt. LLC*,
  No. 09 Civ. 9346 (PAE), 2015 WL 4040558 (S.D.N.Y. July 1, 2015) ....................... 21

Plaintiffs Ruby Freeman and Wandrea' Moss ("Plaintiffs" or "Plaintiffs-Receivers") respectively submit this memorandum of law in support of their motion for an order to show cause why Defendant Rudolph W. Giuliani should not be held in civil contempt for violating the Court's October 22, 2024 Order on Plaintiffs' Motion to Enforce Judgment, ECF No. 62 (the "Turnover Order"), the Court's November 8, 2024 Order, ECF No. 94 (the "Instructions Order"), and the Court's November 22, 2024 Order, ECF No. 148 (the "Modified Instructions Order," and together with the Turnover Order and the Instructions Order, the "Turnover Orders").

## INTRODUCTION

Mr. Giuliani has had more than seven weeks to comply with the Court's Turnover Order requiring him to "deliver to Plaintiffs-Receivers, and execute and deliver any document necessary to effectuate delivery to Plaintiffs-Receivers of, all of the Receivership Property"—a category defined based on how Mr. Giuliani himself described his own assets in a bankruptcy proceeding in another court in this District—by October 29, 2024. In the intervening time, Mr. Giuliani has not turned over a single dollar to Plaintiffs-Receivers, or any of a number of specific items of personal property that he has been unambiguously ordered to deliver, including a signed Joe DiMaggio shirt, signed Reggie Jackson picture, signed Yankee Stadium picture, or many of the various household goods or furnishings that *he* valued at $20,000 and which public photographs show he possessed in his New York Apartment. It is unclear at this point even *where* those possessions are located. Even the limited items that Mr. Giuliani has delivered involve notable omissions. Mr. Giuliani has delivered his Mercedes but no paper title or ownership documents. He has delivered 18 watches, out of the 26 he identified as assets. He has delivered a single diamond ring, but none of the costume jewelry identified in the Turnover Order and his bankruptcy filings. He has provided access to his apartment in New York, but no keys or ownership

documents, and has left Plaintiffs-Receivers to sort through significant logistical obstacles to a sale, including the presence of his ex-wife's name on the title.

Instead, Mr. Giuliani has spent the last six weeks attempting to shift responsibility and require Plaintiffs-Receivers to expend their own time, energy, and resources engaging in a wild goose chase. Despite representing to the Court that *all* of his assets are located in only "[t]hree places"—in his New York and Palm Beach apartments and in "a storage facility in Ronkonkoma" ("CTS")—Mr. Giuliani's New York Apartment is substantially empty, and apparently has been since before the Turnover Order. And while Mr. Giuliani has now delivered some of the items that were stored at the CTS storage facility, none of that property includes the specific items described above. Meanwhile, the only items Mr. Giuliani has delivered from his Palm Beach apartment are the Mercedes, the watches, and the ring. As far as his cash assets or ownership documents relating to his car and New York Apartment, Mr. Giuliani has delivered none—instead insisting that it is Plaintiffs-Receivers' duty to provide *him* with whatever paperwork is necessary to transfer ownership.

On November 7, 2024, the Court explained in no uncertain terms and in Mr. Giuliani's presence that Mr. Giuliani is "under an unqualified obligation to deliver all of the receivership property to the receiver" and that if he has not "delivered, and there was a way in which he could have delivered, then there will be contempt sanctions." Mr. Giuliani has neither complied with that obligation nor provided any explanation for why he could not do so. Plaintiffs respectfully submit that the Court should require Mr. Giuliani to show why he should not be held in contempt for his failure to comply with the various Turnover Orders.

## **FACTUAL BACKGROUND**

The relevant procedural history and factual background relating to the underlying litigation—including the resulting $148 million jury verdict, Mr. Giuliani's "willful shirking of his

discovery obligations" that led to a default judgment—as well as his subsequent attempt to declare

bankruptcy is laid out in Plaintiffs' motion to enforce their judgment. ECF No. 9; *see generally*

*Freeman v. Giuliani*, No. 21-cv-3354 (D.D.C. Dec. 23, 2021); *In re Rudolph W. Giuliani*, No. 23-

12055-SHL (Bankr. S.D.N.Y. Dec. 21, 2023). Here, Plaintiffs recite only the facts directly relevant

to this motion.

### A. Mr. Giuliani Identifies Personal Property In Which He Has A Legal Interest in His Bankruptcy Filings.

On January 26, 2024, shortly after filing for bankruptcy pursuant to Chapter 11 of the

bankruptcy code, Mr. Giuliani filed an Official Form 106A/B with another court in this District

identifying his assets for which he was attempting to obtain bankruptcy protection. ECF No. 10-2

("Bankruptcy Schedule"). Mr. Giuliani's Bankruptcy Schedule identified two pieces of real estate:

a condominium located at 45 East 66th Street in New York City ("New York Apartment") and a

home at 315 South Lake Drive in Palm Beach, Florida ("Palm Beach Condo"). It also specified,

*inter alia*, the following items as among his personal property:

- Mercedes-Benz, Model SL500, model year 1980, valued at $25,000;

- Various household goods and furnishings, valued at $20,000;

- Sports Memorabilia–signed Reggie Jackson picture, signed Yankee Stadium picture, signed Joe Dimaggio [*sic*] shirt, of unknown value; and

- Costume jewelry, diamond ring, 3 yankee world series [*sic*] rings, 2 Bulova watches, 5 Shinola watches, 1 Tiffany & Co watch, 1 Seiko Watch, 1 Frank Muller watch, 1 Graham watch, 1 Corum watch, 1 Rolex, 2 IWC watches, 1 lnvicta watch, 2 Breitling watches, 1 Raymond Weil Watch, 1 Baume & Mercier Watch and 6 additional watches, all valued at $30,000.

*Id*. at 4–6. Photographs of the interior of Mr. Giuliani's New York Apartment—which were

published publicly in July 26, 2023 when he listed the condominium for $6.5 million—reflected

the physical presence of some of those contents, including the signed Joe DiMaggio shirt and art

and furnishings:





*See* StreetEasy, https://streeteasy.com/building/45-east-66-th-street-building/10w (last visited Dec. 11, 2024). In his Bankruptcy Schedule, Mr. Giuliani also identified various bank accounts, including a number held at Citibank. ECF No. 10-2 at 6.[1]

---

[1] Mr. Giuliani has consistently refused to provide information relating to his financial accounts or those of the entities that he owns. Plaintiffs-Receivers have been delayed in filing papers relating to Mr. Giuliani's cash assets given the challenges in receiving related discovery, but are hoping to submit a motion relating to cash assets in the near future.

**B.    Plaintiffs Seek And The Court Enters The Turnover Order Requiring Mr. Giuliani To Deliver All Receivership Property Or Documents Necessary For Their Transfer By October 29, 2024.**

On August 30, 2024, Plaintiffs filed a motion to enforce their judgment against Mr. Giuliani seeking an order directing Mr. Giuliani to turn over to Plaintiffs the property he identified in the Bankruptcy Schedule and to appoint Plaintiffs as receivers pursuant to New York Civil Law and Practice Rule ("N.Y. C.P.L.R.") Sections 5225 and 5228. Specifically, Plaintiffs sought five categories property: (1) the New York Apartment; (2) the Palm Beach Condo; (3) unpaid fees from the Trump campaign; (4) nonexempt cash in two Citibank accounts (with account endings -1428 and -5812); and (5) personal property disclosed in the Bankruptcy proceeding, including the Mercedes, "various items of furniture," "Sports Memorabilia," the "Signed Reggie Jackson Picture," the "Signed Yankee Stadium picture," the "Signed Joe DiMaggio shirt," "Costume jewelry," the Yankee World Series Rings, and all of the identified watches. ECF No. 9 at 7–10.

Mr. Giuliani consented to essentially all of the relief requested in Plaintiffs' motion. *See* ECF No. 44 at 2 (consenting to the appointment of a receiver to effect the sale of the New York Apartment); *id*. (consenting to the appointment of a receiver to hold defendant's personal property, specifically "a great many" wristwatches); *id.* at 3 (consenting to the appointment of a receiver to hold defendant's "collectibles," including sports memorabilia and a 1980 Mercedes automobile); *id.* at 3–4 (consenting to the appointment of a receiver to hold family heirlooms and items of sentimental value, such as Defendant's grandfather's wristwatch). Plaintiffs requested a modification to their proposed order as to the World Series rings, given the claim by Intervenor-Defendant Andrew Giuliani that his father had gifted him the four rings in 2018. ECF Nos. 45, 46, 59.

On October 22, 2024, the Court entered the Turnover Order, which deferred decision on the Palm Beach Condo and the World Series Rings,[2] but granted Plaintiffs' motion for turnover as to all other categories of Defendants' property, including: the New York City Apartment; the nonexempt cash in the Citibank checking accounts with account numbers ending in -1428 and -5812; the Mercedes-Benz; and personal property to include various items of furniture; television; sports memorabilia; the signed Reggie Jackson picture; the signed Yankee Stadium picture; the signed Joe DiMaggio shirt; costume jewelry; diamond ring; various watches; and "any additional property as may be ordered by the Court upon motion of Receivers or other judgment creditors of Defendant." Turnover Order at 16–18 (the "Receivership Property"); *see also* ECF Nos. 67, 74. The Turnover Order appointed Plaintiffs the receivers of the Receivership Property and directed Mr. Giuliani to "deliver to Plaintiffs-Receivers, and execute and deliver any document necessary to effectuate delivery to Plaintiffs-Receivers of, all of the Receivership Property" by October 29, 2024. Turnover Order at 16.

### C. Mr. Giuliani Did Not Deliver Any Of The Receivership Property Or Documents Necessary To Effectuate Its Delivery By October 29, 2024.

Counsel for Mr. Giuliani communicated to Plaintiffs' counsel regarding turnover arrangements for the first time on October 29, 2024, the date Defendant was ordered to deliver the Receivership Property to the Plaintiffs. ECF No. 73. That same day, counsel for Mr. Giuliani submitted a filing with the Court stating that Mr. Giuliani "is, and will remain, ready to comply" and said that he was "ready to make the turnovers" but was awaiting further instructions, including "regarding details and documents, e.g. documents transferring title of shares and car." ECF No.

---

[2] Although the Turnover Order mentions "three World Series rings" (Turnover Order at 3), Plaintiffs' understanding is that there are in fact four World series rings over which Mr. Giuliani at one point had possession. *See* Declaration of Aaron E. Nathan Ex. 1, at 5 (Andrew Giuliani acknowledging that his father, Mr. Giuliani, had four World Series rings).

68. Counsel for Plaintiffs immediately, and unsuccessfully, attempted to reach Mr. Giuliani's counsel by phone, including to discuss the immediate transfer of the titles of the New York Apartment and the Mercedes. *See* Declaration of Aaron E. Nathan ("Nathan Decl."), ¶ 3. Mr. Giuliani did not deliver any of the Receivership Property or deliver any documents necessary to effectuate delivery by October 29, 2024. *See id*.

> **D.    In The Days After The Turnover Order Deadline Passed, Plaintiffs Continue To Attempt To Understand The Location Of The Receivership Property.**

On October 30, 2024, counsel for Plaintiffs-Receivers and Defendant spoke by telephone. Based on this call, it was clear that Mr. Giuliani's counsel was not prepared to have Plaintiffs' counsel pick up the New York Apartment shares or keys, and he was unable to say where the shares and related documents were located. *Id*. Ex. 2, at 2–3. He nevertheless assured Plaintiffs' counsel that they would figure that out, and also find a copy of the keys to the apartment. *Id.* With respect to the physical property, Mr. Giuliani's counsel said he was unable to say with any specificity where any items were located. *Id.* He said he "suspect[ed]" some of it was in the New York Apartment and that he was "told" that some of it was in Florida. *Id.* at 3. Mr. Giuliani's counsel also informed Plaintiffs' counsel that he was not aware of the current balances in the accounts but that he would get back to Plaintiffs' counsel about it. *Id.* Counsel for Plaintiffs-Receivers also reiterated the need for an "inventory detailing the locations of each specific item subject to" the Turnover Order. *Id*. Later that day, counsel for Mr. Giuliani informed Plaintiffs for the first time that Mr. Giuliani had property in storage at CTS in Ronkonkoma, NY. Nathan Decl. Ex. 4, at 4.

Counsel for Plaintiffs-Receivers filed a status update with the Court later that day, including to explain the above-referenced communications and to inform the Court that a representative of the Plaintiffs-Receivers' moving and storage company would be visiting the New

York Apartment the following morning "for the purpose of assessing the moving and storage needs with respect to the receivership property contained in the apartment." ECF No. 73 at 2. That evening, counsel for Plaintiffs-Receivers emailed counsel for Mr. Giuliani to confirm that the visit to the New York Apartment would occur the following morning at 9:30 a.m. Nathan Decl. Ex. 3. On October 31, 2024, counsel for Plaintiffs-Receivers and a representative of a moving and storage company arrived at the New York Apartment at the time identified, only to discover that no one had notified anyone at the building about their need to access Mr. Giuliani's unit. Nathan Decl. ¶ 6, Ex. 4, at 3–4. After waiting for nearly two hours, counsel for Plaintiffs-Receivers gained entry to discovery that the New York Apartment was almost entirely empty, including void of the vast majority of furniture, art, and sports memorabilia (including the signed Joe DiMaggio shirt). *Id.* ¶ 6, Ex. 4, at 3–4. Below is a comparison of one photograph from the former listing of the New York Apartment, alongside a photograph taken by Plaintiffs-Receivers' counsel of the same room on October 31, 2024:

 

In a follow-up email to Mr. Giuliani's counsel on October 31, 2024, counsel for Plaintiffs-Receivers explained that the property manager confirmed that Mr. Giuliani had moved the contents out of the New York Apartment a month earlier. Nathan Decl. Ex. 4, at 3. Accordingly, Plaintiffs-

Receivers instructed Mr. Giuliani to provide various confirmations by the end of that day, including to:

- "Explain where the contents of the New York apartment were taken, the date of the move (or moves), and where the receivership property is as of today;
- Provide a copy of any inventory in Mr. Giuliani's possession or control detailing the contents of the storage unit in Ronkonkoma;
- Provide authorization to access to the storage unit in Ronkonkoma and inspect its contents, including by cc'ing the attorneys on this email and [our mover, who will] require access to the storage unit **tomorrow**, and your client must ensure that such access is granted without delay. Further, we expect Mr. Giuliani to take all steps to ensure the receivership has ongoing access in order to take all of the property in the storage unit into possession at a date in the near future;
- Confirm the location of the co-op shares, proprietary lease and keys to the New York apartment and explain how you plan to deliver them to the receivers . . . ."

*Id*. Ex. 4, at 4. The same instruction demanded that, by the end of November 1, 2024, they: "Provide a list of <u>all</u> property subject to the turnover and receivership order, identifying the property with specificity and identifying where it is currently located." *Id*. Also on October 31, 2024, the Court ordered Plaintiffs-Receivers to file a status report on November 4, 2024, and scheduled a telephonic status conference for November 7, 2024 absent "written notice that all ordered propriety has been turned over." ECF No. 75.

The next day, counsel for Mr. Giuliani sent an email to the owner of CTS—Joseph Verderber—at the email address joethebox@theamericafirstwarehouse.com, copying Mr. Giuliani at his proton email address (TruthandJustice4U@protonmail.com) and others, requesting that counsel for Plaintiffs-Receivers receive access to Mr. Giuliani's property there. Nathan Decl. ¶ 8, Ex. 5. In response to the instructions in the October 31, 2024 email, counsel for Mr. Giuliani were unable to explain the location of the property from the New York Apartment, or the location of the New York Apartment's share certificates or lease. *Id*. ¶ 9, Ex. 4 at 1–2. They confirmed that they

would have Mr. Giuliani "sign documents transferring title" to the Mercedes and would turn over watches that were located in Palm Beach. *Id*. They also explained that the Citibank account was "frozen" and that there would need to be further orders from the Court to permit transfer. *Id*.

On November 4, 2024, Plaintiffs-Receivers filed a status report as required, explaining that as of that day Mr. Giuliani had "yet to transfer any property into the Receivers' custody" and that both he and his counsel "have refused or been unable to answer basic questions about the location of most of the property subject to the receivership." ECF No. 81 at 1. The same filing explained that Mr. Giuliani's counsel was unable to confirm the location of the property previously located in the New York Apartment or "a large majority of the other receivership property." *Id*. at 2. While his lawyers confirmed that "some unspecified property" was located at the CTS facility, they could not confirm "*what* property is stored there" and have consistently refused to provide an inventory of the same. *Id*. At that time, Plaintiffs-Receivers had been separately attempting to gain access to CTS, but were unsuccessful due to an inability to secure access from anyone at CTS. *Id*. In response to Plaintiffs' letter, the Court converted the November 7, 2024 hearing to one in-person and required Mr. Giuliani to appear personally.[3] Plaintiffs-Receivers filed an updated status report on November 5, 2024, to advise the Court that press photographers from that day captured Mr. Giuliani riding in the Mercedes that the Turnover Order ordered he deliver to Plaintiff-Receivers. ECF No. 85.

Counsel for Mr. Giuliani responded by way of a letter on November 6, 2024, in which they stated that they were "told that no property belonging to Defendant was removed in violation of a Restraining Notice" and taking the position that any next steps as to CTS are "outside Defendant's

---

[3] Mr. Giuliani asked the Court to move the conference or permit him to attend remotely due to a live radio broadcast that evening, which the Court subsequently denied. ECF Nos. 83, 84.

control" and that he "does not and cannot control CTS." ECF No. 88 at 1–2. They also stated that

they "have told Plaintiffs where property is located, including CTS and the Palm Beach Condo,

[and] where the wristwatches" are located. *Id*. at 2. Counsel stated:

> "Plaintiffs continue to insist and fixate on an inventory of items. But again, that complaint is pointless. We understand that Defendant, at this time, cannot provide, from memory or records, an inventory. Nothing in the Receivership Order requires him to know that information or to provide an inventory. In any event, the relevant question is, 'what property exists,' not 'what does Defendant think/believe/recall as to what property exists.' Plaintiffs should gain possession of the property and then take whatever further steps they regard as necessary."

*Id*. at 3. As far as the funds, their position remained that it was Plaintiffs' responsibility to contact

Citibank. *Id*. Same too as to the Mercedes, the necessary title documents for which Mr. Giuliani's

counsel stated it was up to Plaintiffs-Receivers to provide. *Id.*

### E.    The Court Enters The Instructions Order Requiring Mr. Giuliani To Deliver All Receivership Property By November 15, 2024.

The Court held a status conference on November 7, 2024, including to discuss the lack of

compliance with the Turnover Order ("November 7 Hearing"). *See* Nathan Decl. ¶ 10, Ex. 6.

During the November 7 Hearing, counsel for the Plaintiffs-Receivers explained that "we've asked

over and over again where this stuff is and he's refused to answer." *Id*. Ex. 6, at 19:16–17. Counsel

for Mr. Giuliani responded by stating:

> "What he's asking me for, for a week or more, is 'I want an inventory. I need an inventory. I need to know where this stuff is. I need to know what it is.' ***We told him where it is. It's in Palm Beach, it's in a storage facility in Ronkonkoma, and it's in the New York apartment. Three places.***"

*Id*. at 20:18–24 (inner quotations and emphasis added). The following exchange between the Court

and counsel for Mr. Giuliani occurred in response to their position that their client lacks control

over the CTS facility:

> "THE COURT: Isn't the right approach to that, I've ordered your client to turn over all of this property, and your client consented to, said he had possession of all of this property at the time that I entered the order. Procedurally, he doesn't have a choice but to comply. If it becomes impossible for him to comply, then the plaintiff moves for contempt, your client gets on the stand, and he goes through all of the efforts that he made to get it and why he was frustrated. It strikes me as kind of hard to believe that your client would not be able to get somebody at the storage facility to open up the storage facility to get his property. It's not clear to me what efforts he's made.
>
> MR. CARUSO: I'll tell what you efforts we've made.
>
> THE COURT: No. What efforts he made.
>
> MR. CARUSO: He didn't make any efforts other than what I made.
>
> THE COURT: Okay. That's kind of -- you might consider your words, because it does play into what will happen if there were a contempt proceeding against him."

*Id*. at 21:17–22:11. Mr. Giuliani's counsel then confirmed that neither he nor his client has "any objection to the plaintiffs going and looking at whatever is" at CTS, to which the Court explained that "it's not their obligation" and that it is "his obligation or his agent's obligation to deliver it to them. That's the order." *Id*. at 22:25–23:5. The Court emphasized, in the presence of Mr. Giuliani, the following:

> ". . . let me tell you right now what I'm going to make clear with respect to that order, which is that he is under an unqualified obligation to deliver all of the receivership property to the receiver. All of that is property that, at the time that I entered this, I found that he possessed. And if he doesn't comply, then I'm sure that I'm going to get a motion for contempt. And you and I both know the standards of contempt. He's not going to be in contempt if he's made efforts and it's impossible to comply with the order. But that's the standard that he's going to be held to [Mr. Caruso: All right.] And you know, ***if he hasn't delivered, and there was a way in which he could have delivered, then there will be contempt sanctions*.**"

*Id*. at 24:2–16 (emphasis added).

During the November 7 Hearing, counsel for Mr. Giuliani, with Mr. Giuliani able to confirm accuracy, made various representations about specific pieces of Receivership Property. Counsel represented that the title to the Mercedes was located "in Palm Beach" and assured the Court that his client would "promptly" turn over both the car keys and title document as soon as he received a place for delivery. *Id.* at 31:4–32:2. Mr. Giuliani's counsel also confirmed that sports memorabilia, including the signed Joe DiMaggio shirt and Reggie Jackson picture, are located in the CTS facility, which the Court explained that his client is "obligated to deliver." *Id.* at 32:11–23. As far as the funds in the Citibank account, and in response to claims that Plaintiffs-Receivers should get the money directly from Citibank, the Court explained that it was Mr. Giuliani's "obligation to get it from Citibank" and to avail himself of the Court if unsuccessful. *Id.* at 30:18–23.

Following the November 7 Hearing, this Court issued the Instructions Order. ECF No. 94. The Instructions Order directed Plaintiffs-Receivers to provide, by November 11, 2024, the date by and location to which Mr. Giuliani was to deliver the Receivership Property. *Id.* at 1–2. The Instructions Order then stated:

> "**Defendant has until Friday, November 15, 2024** to comply with the Plaintiff-Receivers' instructions and **to deliver to the Plaintiff-Receivers *all* items of property identified in the Turnover Order**, according to the Plaintiff-Receivers' instructions."

*Id.* at 2 (emphasis added). The Instructions Order warned that "***continued violation of the Turnover Order may result in contempt sanctions***." *Id.* (emphasis added).

On November 11, in accordance with the Instructions Order, Plaintiffs instructed Mr. Giuliani of the time, date, and location to which all outstanding Receivership Property was to be delivered. Nathan Decl. ¶ 11, Ex. 7 at 1. Specifically, Plaintiffs instructed Mr. Giuliani to deliver by November 15, 2024: all funds to a bank account via wire; all watches, luxury jewelry, and the

Mercedes title to a bank safe deposit box; the Mercedes to a luxury storage garage; and "any physical property, including the contents of the storage unit in Ronkonkoma, **_as well as any other physical possession regardless of its current location_**" to a specified storage facility for Plaintiffs-Receivers. *Id.* at 1 (emphasis added).

On November 13, 2024, Plaintiffs discovered additional information about the property at CTS, including the voluminous amount of property stored there (possibly 8 storage containers and 24 pallets of boxes and furniture, and additional furniture), some of which is reflected below:

  

*See* ECF Nos. 106; 106-1. Additionally, Plaintiffs-Receivers received an invoice reflecting that Dr. Maria Ryan (not Mr. Giuliani) was listed as the billing contact, as well as a photographic list prepared by CTS that does not identify each specific piece of property, but rather provides pictures of wrapped-up items and describes categories of items like "Bundle of 3 Small Pictures." *See* ECF No. 106-1. Given this new information, Plaintiffs requested the Court modify Plaintiffs' instructions with respect to the property stored at CTS's facility so that Plaintiffs could "take a full inventory, determine what property qualifies as Receivership Property, and take possession in accordance with the Turnover Order." ECF No. 106 at 3; ECF No. 108.

**F.    Mr. Giuliani Delivers Only The Mercedes, 18 Watches, And One Ring By The November 15 Instructions Order Deadline.**

On November 15, 2024, Mr. Giuliani delivered the Mercedes, a diamond ring, and 18 watches. He did not deliver any additional Receivership Property, including the remaining eight watches, any furniture, any art, any costume jewelry, or any sports memorabilia, including the signed Reggie Jackson picture, signed Yankee Stadium picture, or signed Joe DiMaggio shirt. Nor did he deliver any deed, title, or right of ownership to the Mercedes, or any funds, including those funds from his Citibank account. ECF No. 147 at 1, 8–9. Mr. Giuliani also had not delivered the keys, stock, proprietary lease, or any of the underlying ownership documents for the New York City Apartment. *Id.* at 8–9. He did not delivery any physical possessions from any non-CTS location to the Plaintiffs-Receivers' specified storage facility. *Id.*

As far as the property at CTS, and as counsel to the Plaintiffs-Receivers explained in a Court filing on November 22, 2024, representatives of the Plaintiffs-Receivers worked diligently to inventory the voluminous amount of property located there at the Plaintiffs-Receivers' own expense. *Id.* at 2–3. Plaintiffs-Receivers intended to continue doing so until completion—which CTS representatives indicated would take an additional three to four days—until they discovered a video posted on X by Mr. Verlander (the owner of CTS) on November 20, 2024 from inside the storage unit containing Mr. Giuliani's possessions in which he stated:

> "It's me, Joe The Box, from American First Warehouse, the American First Patriot. This is where we are going to do it. They are going to dissect the life of Rudy Giuliani. Right here. In front of my eyes and in front of your eyes because I'm going to film it. **This is not going to happen**. America has to come back real fast. Pray for Rudy Giuliani, today is his day."

*Id.* at 5. The same morning, Mr. Giuliani's attorney held a press conference outside of the New York City offices of Plaintiffs' counsel during which he attacked this proceeding, Plaintiffs' counsel, and the underlying judgment. *Id.* at 3–4.

As a result, Plaintiffs-Receivers modified the instructions relating to CTS, which the Court entered in the Modified Instructions Order on November 22. ECF No. 148; *see also* Nathan Decl. Ex. 8. In the Modified Instructions Order, the Court explained that, pursuant to the Instructions Order, "Defendant was required by November 15, 2024, to deliver to Plaintiffs-Receivers '*all items of property identified in the Turnover Order, according to the Plaintiffs-Receivers' instruction*'" and remarked that "Defendant has not complied with that order nor with the Turnover Order." ECF No. 148, at 2 (emphasis in original). The Modified Instructions Order directed the following:

> "In light of Defendant's noncompliance, Plaintiffs-Receivers have issued new directives to Defendant pursuant to the Turnover Order. *Id.* at 7–8. The Court has reviewed the directives and finds that they are consistent with, and authorized by, the Turnover Order. Accordingly, and for the avoidance of doubt, the Court orders that Defendant Giuliani shall comply with the following instructions provided by the Plaintiffs-Receivers on pain of contempt:
>
> 1. By no later than 5 p.m. Friday, December 6, 2024, Mr. Giuliani shall segregate all Receivership Property located at the CTS Facility from property that is not subject to the Turnover Order;
>
> 2. By the same date and time, Mr. Giuliani shall provide a detailed list containing pictures of the segregated Receivership Property located at the CTS Facility sufficient to show the size and quantity of that property;
>
> 3. By Monday, December 9, 2024, the Receivers will provide Mr. Giuliani with the location of a New York-based storage facility, and the date and time when Mr. Giuliani shall deliver all of the Receivership Property located at the CTS Facility;
>
> 4. Mr. Giuliani shall deliver all of the Receivership Property stored at the CTS Facility to the New York-based storage facility provided by Receivers no later than Friday, December 13, 2024; [and]
>
> 5. Defendant Giuliani, his attorneys, agents, and persons in active concert or participation with him or them shall not transfer, encumber, or interfere with any of Defendant's property located at Corporate Transfer and Storage, Inc. ("CTS") or America First

> Warehouse ("AFX") until the Receiver files notice on the docket
> that the above conditions have been satisfied."

ECF No. 148 at 2–3.

Counsel for Plaintiffs-Receivers also notified counsel for Mr. Giuliani of several deficiencies in the Receivership Property Mr. Giuliani had turned over to date and instructed him to deliver the missing items at or in advance of the November 26 Hearing or provide answers as to why he could not do so by 3:00 p.m. on November 25, 2024. ECF No. 147 at 8–9. The missing items listed in the November 22 instructions included the following: any deed, title, or right of ownership to the Mercedes; various watches and jewelry, including 1 Shinola watch, 1 Corium watch, 1 IWC watch, 1 Invicta watch, 2 Breitling watches, 3 additional watches, or any costume jewelry; the keys, stock, or proprietary lease for the New York Apartment, as well as any necessary paperwork to transfer title exclusively into Mr. Giuliani's name; the signed Joe DiMaggio Jersey or its location; any other signed art or sports memorabilia; and the non-exempt funds from Mr. Giuliani's Citibank account. *Id.* Mr. Giuliani did not deliver any of the missing items by the November 26 Hearing or provide answers as to why he could not deliver them. Nathan Decl. ¶ 13.

### G.    In Response to The Modified Instructions Order, Mr. Giuliani Did Not Deliver All Receivership Property.

On December 5, 2024—the day before Mr. Giuliani was obligated to "segregate all Receivership Property located at the CTS Facility from property that is not subject to the Turnover Order"—counsel for Mr. Giuliani called counsel for Plaintiffs-Receivers asking for an inventory of the property stored at CTS. *Id.* ¶ 14. Plaintiffs provided a copy of the CTS Packing List, which they had received from counsel for CTS. *Id.* On December 6, 2024, counsel for Mr. Giuliani provided Plaintiffs-Receivers with the same CTS Packing List, having added new annotations characterizing the type of property the photographs purportedly depict (e.g., "Household Furniture" or "wearing apparel") and/or statements about whether the property qualifies as an

"exemption" or are "Not items for turnover." *Id.*, Ex. 9. The CTS Packing List identifies 225 categories of items, 220 of which the annotations indicated either are "Not items for turnover" or are subject to exemptions.[4] *Id.* Mr. Giuliani identified only five items "to be turned over":

 **Micky Mantle Picture/3 Mirror Ctns to Cover**
Sortly ID: SDUUOT1424
Quantity: 1.0 unit
Sports memorabilia to be turned over to Plaintiffs as Receivers

 **Picture of John Daly/Wrapped in Paper...**
Sortly ID: SDUUOT1385
Quantity: 1.0 unit
Sports memorabilia to be turned over to Plaintiffs as Receivers

 **Derek Jeter Hallway Picture/2 Mirror Ctns to...**
Sortly ID: SDUUOT1474
Quantity: 1.0 unit
Sports memorabilia to be turned over to Plaintiffs as Receivers

 **Hallway Yankee Picture/ 2 Mirror Ctns**
Sortly ID: SDUUOT1473
Quantity: 1.0 unit
Sports memorabilia to be turned over to Plaintiffs as Receivers

 **Yankee Banner/4 Mirror Ctns to Cover**
Sortly ID: SDUUOT1447
Quantity: 1.0 unit
Sports memorabilia to be turned over to Plaintiffs as Receivers

*Id.* at 21, 26, 27, 37.

It does not appear that Mr. Giuliani or his counsel made any personal effort to unpack, inspect, categorize, inventory, or segregate any of the Receivership Property at CTS, and instead relied on the CTS Packing List and its own non-descript pictures and descriptions to decide what he is willing to turnover. Notably missing from the CTS inventory are items that counsel for Mr. Giuliani previously said were stored at the CTS facility, including the signed Joe DiMaggio shirt and the signed Reggie Jackson picture, and other items that Mr. Giuliani is obligated to deliver such as additional watches and costume jewelry. Turnover Order at 17–18; Nathan Decl. Ex. 6, at 31:4–32:2. If those materials are *not* in the CTS facility, then Mr. Giuliani was required to deliver

---

[4] Any exemptions Mr. Giuliani raises at this stage are waived. As the Court explained on November 7, 2024, Mr. Giuliani was required to raise any claimed exemptions in a motion to modify the Turnover Order. Nathan Decl. Ex. 6, at 4:13–25; 32:03–06. Mr. Giuliani did file such a motion, but it was denied for failure to comply with the local rules. *See* ECF Nos. 123, 125. While Mr. Giuliani could have refiled his motion, he chose instead to notice an appeal. See ECF No. 142; *Freeman v. Giuliani*, No. 24-3070-cv (2d Cir.).

them on November 15, 2024. If those materials *are* in the CTS facility, then, as discussed below, Mr. Giuliani has failed to deliver them in accordance with the Court's Modified Instructions Order.

On December 9, 2024, pursuant to the Modified Instructions Order, Plaintiffs-Receivers instructed Mr. Giuliani to deliver the Receivership Property stored at the CTS Facility to a storage facility in Richmond Hill, NY ("Plaintiffs-Receivers' Facility") at 11:00 AM ET on Friday December 13, 2024. Nathan Decl. ¶ 15, Ex. 10; ECF No. 148 at 2–3. Plaintiffs-Receivers also asked for clarification on the specific Receivership Property that he intended to deliver. Nathan Decl. ¶ 15, Ex. 10. Mr. Giuliani's counsel did not reply. *Id.*

On December 13, 2024, Mr. Giuliani delivered around 40 individual items to the Plaintiffs-Receivers' Facility, including the five items of miscellaneous sports memorabilia, a limited amount of furniture, and some clothing. Nathan Decl. ¶ 16; Declaration of Amelia Diaz ("Diaz Decl.)" ¶ 4.[5]  Based on Plaintiffs-Receivers' review, Mr. Giuliani did not deliver any of the following items: the signed Joe DiMaggio shirt; the signed Reggie Jackson picture; the Signed Yankee Stadium Picture; the remaining watches (1 Shinola watch, 1 Corium watch, 1 IWC watch, 1 Invicta watch, 2 Breitling watches, 3 additional watches); costume jewelry; all of the furnishings and art that had been located in the New York Apartment. Diaz Decl. ¶¶ 5–6, 8. The delivery also did not include any deed, title, or right of ownership to the Mercedes, or the keys, stock, proprietary lease, or any of the underlying ownership documents for the New York City Apartment. *See* Turnover Order at 16–18; Diaz Decl. ¶ 7.

---

[5] Contrary to assertions parroted by Mr. Giuliani on Twitter, counsel for Plaintiffs-Receivers were not present at the time the Receivership Property was delivered on December 13, 2024. Nathan Decl. ¶ 17, Ex. 11. In addition, upon visiting the Plaintiffs-Receivers' Facility on December 16, 2024, a law clerk working under the supervision of counsel for Plaintiffs-Receivers found that all the delivered Receivership Property was securely stored and did not appear to have sustained any damage. Diaz Decl. ¶ 3.

As of the date of this filing, Mr. Giuliani still has not turned over a substantial share of the Receivership Property items, including the deed, title, or right of ownership to the Mercedes, various watches and jewelry, costume jewelry, various items of furniture, the keys, stock, or proprietary lease for the New York Apartment, the signed Joe DiMaggio shirt, the signed Reggie Jackson picture, the Signed Yankee Stadium Picture, or any of the non-exempt funds from his Citibank accounts. *See* Nathan Decl. ¶ 18; Diaz Decl. ¶¶ 4–8.

## LEGAL STANDARD

A district court has the authority to hold a party in civil contempt if "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (citing *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)); *see also BOC Aviation Ltd. v. AirBridgeCargo Airlines, LLC*, No. 22-cv-2070 (LJL), 2022 WL 17581775, at *7 (S.D.N.Y. Dec. 12, 2022). The moving party does not need to establish that the "violation was willful." *Paramedics Electromedicina Comercial, Ltda.*, 369 F.3d at 655. The "existence of a pending appeal does not divest this Court of jurisdiction to enforce its judgments to the fullest extent." *City of New York v. Venkataram*, No. 06 Civ. 6578 (NRB), 2012 WL 2921876, at *3 (S.D.N.Y. July 18, 2012) (finding party in contempt for failure to turnover assets as ordered).

Once a moving party has made a showing of contempt, the other party bears the burden of proving "clearly, plainly and unmistakably" that "compliance is impossible." *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1994). Conclusory "statements are inadequate to carry this burden" and the court "is not required to credit the alleged contemnor's denials if it finds them to

be incredible in context." *Schwarz v. ThinkStrategy Cap. Mgmt. LLC*, No. 09 Civ 9346 (PAE), 2015 WL 4040558, at *10 (S.D.N.Y. July 1, 2015).

## ARGUMENT

### I.    MR. GIULIANI IS IN CONTEMPT OF THE COURT'S TURNVER ORDERS.

#### A.    The Turnover Orders Are Clear And Unambiguous.

The Turnover Orders are clear and unambiguous. The Turnover Order ordered Mr. Giuliani to, by October 29, 2024, "deliver to Plaintiffs-Receivers, and execute and deliver any document necessary to effectuate delivery to Plaintiffs-Receivers of, all of the Receivership Property" based on assets he identified and described in bankruptcy proceedings. Turnover Order at 16. Following the lack of any such delivery, the Instructions Order ordered Mr. Giuliani to, *inter alia*, "deliver to the Plaintiff-Receivers all items of property identified in the Turnover Order, according to the Plaintiff-Receivers' instructions" by November 15, 2024 (with an exception only for the property located at CTS pursuant to a subsequent instruction from Plaintiffs-Receivers). ECF No. 94 at 2. The Modified Instructions Order ordered Mr. Giuliani to "segregate all Receivership Property located at the CTS Facility from property that is not subject to the Turnover Order", to "provide a detailed list containing pictures of the segregated Receivership Property located at the CTS Facility sufficient to show the size and quantity of that property" by "no later than 5 p.m. Friday, December 6, 2024," and to "deliver all of the Receivership Property stored at the CTS Facility" to Plaintiffs-Receivers by Friday December 13, 2024. ECF No. 148 at 2–3. The three Turnover Orders leave "no uncertainty in the minds of those to whom it is addressed" and allow Mr. Giuliani "to ascertain from the four corners of the order precisely what acts are forbidden." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995) (cleaned up). In addition, the Court clearly and unambiguously explained to Mr. Giuliani that he was "under an unqualified obligation to deliver all of the receivership property to the receiver" and further elaborated about its expectations of Mr. Giuliani

to Mr. Giuliani at multiple hearings, during which Mr. Giuliani or his counsel could have asked for any clarifications required. Nathan Decl. Ex. 6 at 24:04–07.

### B.    Evidence Of Mr. Giuliani's Non-Compliance Is Clear And Convincing.

The evidence of Mr. Giuliani's non-compliance is clear and convincing: Mr. Giuliani was ordered to provide the Receivership Property to Plaintiffs by certain dates and times and Mr. Giuliani did not do so. The failure to deliver the majority of the Receivership Property is "adequate to demonstrate a reasonable certainty that a violation occurred." *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002) (internal quotes omitted) (citing *Callanan Indus., Inc. v. White*, 123 A.D.2d 56, 510 N.Y.S.2d 230, 231 (3d Dept. 1968)); *see Venkataram*, 2012 WL 2921876, at *3 ("patent" failure to deliver documents as required by a turnover order constitutes clear and convincing evidence of noncompliance). Indeed, when all is said and done, Mr. Giuliani's failure to deliver the missing Receivership Property is very likely to be undisputed, not least because it is indisputable.

### C.    Mr. Giuliani Has Not Diligently Attempted To Comply With the Court's Orders.

Mr. Giuliani has not diligently attempted to comply with the Turnover Order in a reasonable manner. Here, Mr. Giuliani's counsel conceded that Mr. Giuliani did not make "any efforts" to actually deliver any items as required by the Turnover Order in advance of its deadline. Nathan Decl. Ex. 6, at 22:1–8. Since that time, Mr. Giuliani turned over handfuls of his possessions, but has never explained why in all that time he has been unable to accomplish any of the following tasks: securing and delivering title to the Mercedes; delivering the keys to his New York Apartment; ensuring transfer of the nonexempt cash from his Citibank accounts; delivering all of the specific property identified in the Turnover Order regardless of storage location, including (for example) the outstanding watches, cash, the signed Joe DiMaggio shirt, furniture

from the New York Apartment; or physically sorting through the items at CTS to ensure a thorough and complete collection and delivery of all Receivership Property. While Mr. Giuliani and his counsel have proffered various excuses and made a number of attempts to shift the burden to Plaintiffs-Receivers to effectuate the necessary legal transfer of property, that does not constitute an attempt to comply with *his* obligations, much less show that he has been "reasonably diligent and energetic in attempting to accomplish what was ordered." *City of New York v. Venkataram*, 568 F. App'x 63, 64 (2d Cir. 2014) (quoting *Drywall Tapers & Pointers of Greater N.Y. v. Loc. 530 of Operative Plasterers & Cement Masons Int'l Ass'n*, 889 F.2d 389, 394 (2d Cir. 1989)).

## **CONCLUSION**

For these reasons, Plaintiffs-Receivers respectfully request that the Court enter an order directing Mr. Giuliani to show cause why he is not in contempt of the Turnover Order (ECF No. 62), the Instructions Order (ECF No. 94), and the Modified Instructions Order (ECF No. 148), and why the Court should not order civil contempt sanctions calculated to achieve compliance with those orders.

Respectfully submitted,

Dated: December 18, 2024          s/ Aaron E. Nathan
      New York, New York


Rachel Goodman                              Michael J. Gottlieb
United to Protect Democracy                 Meryl C. Governski (admitted *pro hac vice*)
82 Nassau Street, #601                      Willkie Farr & Gallagher LLP
New York, NY 10038                          1875 K Street NW
(202) 579-4582                              Washington, DC 20006
rachel.goodman@protectdemocracy.org         (202) 303-1000
                                            mgottlieb@willkie.com
Von DuBose (*pro hac vice forthcoming*)     mgovernski@willkie.com
DuBose Miller LLC
75 14th Street NE. Suite 2110               Aaron E. Nathan
Atlanta, GA 30309                           M. Annie Houghton-Larsen
(404) 720-8111                              Willkie Farr & Gallagher LLP
dubose@dubosemiller.com                     787 Seventh Avenue
                                            New York, NY 10019
                                            (212) 728-8000
                                            anathan@willkie.com
                                            mhoughton-larsen@willkie.com


*Attorneys for Plaintiffs*