### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RUBY FREEMAN and WANDREA' MOSS, | |
| Plaintiffs, | |
| v. | No. 24-mc-00353-LJL |
| RUDOLPH W. GIULIANI, | |
| Defendant. | |

## PLAINTIFFS' REPLY IN SUPPORT OF AN ORDER HOLDING DEFENDANT IN CONTEMPT FOR FAILING TO COMPLY WITH THE TURNOVER ORDERS

Rachel Goodman
United to Protect Democracy
82 Nassau Street, #601
New York, NY 10038
(202) 579-4582
rachel.goodman@protectdemocracy.org

Von DuBose (*pro hac vice forthcoming*)
DuBose Miller LLC
75 14th Street NE. Suite 2110
Atlanta, GA 30309
(404) 720-8111
dubose@dubosemiller.com

Michael J. Gottlieb
Meryl C. Governski (admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com
mgovernski@willkie.com

Aaron E. Nathan
M. Annie Houghton-Larsen
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8000
anathan@willkie.com
mhoughton-larsen@willkie.com

*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS..................................................................................................................... i

INTRODUCTION ............................................................................................................................1

ARGUMENT....................................................................................................................................2

I.      PLAINTIFFS-RECEIVERS SATISFIED CPLR § 6402. ...................................................2

II.     THE COURT SHOULD HOLD MR. GIULIANI IN CIVIL CONTEMPT. ......................3

III.    THE COURT SHOULD IMPOSE APPROPRIATE SANCTIONS ON MR. GIULIANI TO BRING HIM INTO COMPLIANCE WITH THE TURNOVER ORDERS..................................................................................................................................9

CONCLUSION ...............................................................................................................................10

Plaintiffs Ruby Freeman and Wandrea' Moss ("Plaintiffs" or "Plaintiffs-Receivers") respectfully submit this Reply in support of their Motion for Order to Show Cause Why Defendant Rudolph W. Giuliani Should Not Be Held In Contempt for Failing to Comply With the Turnover Orders, ECF No. 170, ("Motion"), and in response to Defendant Rudolph W. Giuliani's Opposition to the Motion, ECF No. 203, ("Opp.").[1]

## **INTRODUCTION**

Mr. Giuliani's response to the Court's Order to Show Cause makes two arguments in an attempt to avoid consequences for his actions, both wrong: *First*, Mr. Giuliani asserts that Plaintiffs-Receivers have lacked authority to act as Receivers because they did not execute or file the oaths required by New York Civil Law and Practice Rules ("CPLR") § 6402. But Plaintiffs-Receivers *did* execute those oaths within days of the Court's Turnover and Receivership Order, which is all that CPLR § 6402 requires. Contrary to Mr. Giuliani's argument, there is no requirement that the oaths be *filed*—but even if there were, now that the oaths *have* been filed, any merit in Mr. Giuliani's argument would be moot.

*Second*, Mr. Giuliani seeks to argue that he has substantially complied with the Court's Turnover Orders. But his assertions are unsupported and flatly contradicted by a factual record that Mr. Giuliani cannot (and does not) contest. What that record *does* reveal is a consistent pattern of willful defiance of the Court's Turnover Orders and Plaintiffs-Receivers' instructions pursuant to those Orders—followed by professions of good faith, mixed with vitriolic attacks on Plaintiffs-Receivers, their counsel, and this Court. Enough is enough. A finding of civil contempt, and corresponding civil contempt sanctions, are necessary to bring Mr. Giuliani into full compliance with this Court's orders.

---

[1] Where not defined, capitalized terms carry the same meaning as in Plaintiffs' Motion.

## ARGUMENT

### I.     PLAINTIFFS-RECEIVERS SATISFIED CPLR § 6402.

Mr. Giuliani spends more than half of his Opposition arguing that Plaintiffs-Receivers "have never been permitted under law to act as receivers" because they "never filed an 'Oath' with the Court as required by CPLR § 6402," and "[h]ence, the receivership has not technically or legally begun." Opp. at 6.[2] Mr. Giuliani is wrong as a matter of fact and law.

Had Mr. Giuliani or his counsel bothered to inquire, they would have learned that Plaintiffs-Receivers complied with CPLR § 6402 by executing oaths in the presence of a notary on October 25, 2024, three days after the Court's Turnover and Receivership Order was entered, and before issuing any instructions to Mr. Giuliani pursuant to that Order. *See* Declaration of Aaron E. Nathan in Support of Plaintiffs' Reply to the Order to Show Cause ("Nathan Decl.") ¶ 2, Ex. 1 (Freeman Oath); *Id.* ¶ 3, Ex. 2 (Moss Oath). In their oaths, each of the Plaintiff-Receivers swore that "she will faithfully and fairly discharged the trust committed to her, according to the best of her ability." *Id.* Ex. 1, Ex. 2. That satisfied  CPLR § 6402, which requires only the following:

> "Oath. A temporary receiver, before entering upon his duties, shall be sworn faithfully and fairly to discharge the trust committed to him. The oath may be administered by any person authorized to take acknowledgments of deeds by the real property law. The oath may be waived upon consent of all parties."

CPLR § 6402.

Mr. Giuliani also is wrong that CPLR § 6402 required Plaintiffs-Receivers to *file* their Oaths with the Court. Nothing in the text of CPLR § 6402 requires that the oath be filed (or even, for that matter, that the oath be *written*—hardly an unusual omission, *cf.* U.S. CONST. art. II, § 1, cl. 8 (presidential oath); 5 U.S.C. § 3331 (constitutional oath); 28 U.S.C. § 453 (judicial oath)).

---

[2] Unless otherwise indicated, pincites to documents filed on ECF refer to the ECF docket stamp's pagination rather than the pagination of the PDF document.

None of the cases Mr. Giuliani cites in his Opposition holds to the contrary. The majority of the cases he cites involve courts independently ordering receivers to file oaths, but without locating such a requirement in § 6402 itself.[3] The remaining cases predate the CPLR by nearly 30 years, and Mr. Giuliani does not explain how they could be relevant to a present-day interpretation of § 6402.[4]

Here, the Court ordered only that Receivers "shall comply with the requirements of CPLR" § 6402 "and other applicable court rules," without imposing an independent obligation to file the Oaths. ECF No. 62, at 20. Plaintiffs-Receivers did so promptly. And in any event, even if Mr. Giuliani's objection had any merit, now that the oaths *are* filed, it would be moot. *See Travelers Ins. Co. v. Broadway West Street Associates*, 164 F.R.D. 154, 163 (S.D.N.Y. 1995) (holding that "even if the receiver had failed to file the oath in 1992, he successfully cured any deficiency by filing a second oath on August 2, 1995, since . . . an oath may be filed *nunc pro tunc*").

## II. THE COURT SHOULD HOLD MR. GIULIANI IN CIVIL CONTEMPT.

Mr. Giuliani does not dispute the majority of the facts or legal arguments in Plaintiffs' Motion, and provides no credible reason for why the Court should not hold him in civil contempt. Mr. Giuliani's Opposition does not contest, and therefore concedes, that the Turnover Orders were clear and unambiguous. *See, e.g.*, *Curry Mgmt. Corp. v. JPMorgan Chase Bank*, 643 F.Supp.3d

---

[3] *See Ernest Lawrence Grp., Inc. v. Gov't Careers Ctr. of Oakland*, 2000 WL 1655234, at *3 (S.D.N.Y. Nov. 3, 2000) ; *Spotnana, Inc. v. Am. Talent Agency, Inc.*, 2013 WL 227546, at *8 (S.D.N.Y. Jan. 22, 2013) ; *Daum Glob. Holdings Corp. v. Ybrant Digital Ltd.*, 2018 WL 2122816, at *5 (S.D.N.Y. May 8, 2018) ; *Pala Assets Holdings Ltd. v. Rolta, LLC*, 2021 N.Y. Misc. LEXIS 48183, at *9 (Supreme Ct. N.Y. Co., Aug. 24, 2021) ; *14 Maiden, LLC v. Stempel*, 2021 N.Y. Misc. Lexis 45372, at *3 (Supreme Ct. N.Y. Co., Mar. 9, 2021); *Coscia v. Eljamal*, 48 Misc. 3d 361, 368 (Sup. Ct. Weschester Co. 2015).

[4] *See 570 Kosciusko Realty Corp. v. Kingdale Estates, Inc.*, 256 A.D. 997, 10 N.Y.S.2d 700 (2d Dept 1939) (no discussion of an oath requirement); *Manufacturers' Trust Co. v. Sadenet Realty, Inc.*, 234 A.D. 893, 254 N.Y.S. 428 (2d Dept 1931) (no discussion of oath requirement and finding receiver was qualified). The New York Civil Practice Law and Rules become law in 1962. *See generally Happy 60th B-day to NY CPLR*, (Oct. 9, 2023), https://www.nyli.org/happy-60th-b-day-to-ny-cplr-some-nyli-resources/#:~:text=The%201962%20NY%20Chap%20308,60%20years%20old)%20NY%20CPLR%E2%80%A6.

3

421, 426 (S.D.N.Y. 2022) (arguments not addressed in an opposition brief are conceded); *Schwarz v. ThinkStrategy Cap. Mgmt. LLC*, No. 09 Civ. 9346 (PAE), 2015 WL 4040558, at *10 (S.D.N.Y. July 1, 2015) (conclusory statements "inadequate" to rebut contempt). The Turnover Orders required Mr. Giuliani to *inter alia* "deliver to Plaintiffs-Receivers, and execute and deliver any document necessary to effectuate delivery to Plaintiffs-Receivers of, all of the Receivership Property" by November 15, 2024, and all of the Receivership Property stored at the CTS Facility by December 13, 2024.[5]  Motion at 9, 19, 22, 24.

Consequently, to avoid contempt, Mr. Giuliani would have demonstrate that he has fully complied with the Turnover Orders or, if not, that compliance is "clearly, plainly and unmistakably" impossible. *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1994).[6] While Mr. Giuliani repeatedly claims that he has made "full or substantial compliance with the Court orders" and that he has "complied with everything" he "was capable of complying with" (Opp. at 9, 12), Mr. Giuliani provides no facts demonstrating any such compliance, and—instead—concedes through his silence all of the facts articulated in the Motion:

**Mercedes-Benz.** While true that Mr. Giuliani delivered the Mercedes, he has yet to turn over the title document for the car, and does not claim otherwise. Mr. Giuliani entirely ignores any obligation he has to deliver the title documents, insisting (once again) that it is the responsibility

---

[5] The Court modified the original due date of October 29, 2024 in the Instructions Order, and, at Plaintiffs' request, entered the Modified Instructions Order to establish a separate process as to the items located at the CTS by requiring Mr. Giuliani to "segregate all Receivership Property located at the CTS Facility from property that is not subject to the Turnover Order" and to "provide a detailed list containing pictures of the segregated Receivership Property located at the CTS Facility" by December 6, 2024, and to "deliver all of the Receivership Property stored at the CTS Facility" to Plaintiffs-Receivers by December 13, 2024. ECF No. 94, ECF No. 148, at 2–3.

[6] In his Opposition, Mr. Giuliani oddly claims that Plaintiffs-Receivers' Motion states that he had "not produced a single document in response to Plaintiffs' discovery orders," which he asserts is "not true and is false." Opp. at 12. Mr. Giuliani appears to have inadvertently quoted Plaintiffs' memorandum of law in support of their motion for contempt and sanctions in the Homestead Action. *See* 24-cv-06563, ECF No. 106, at 5.  That motion was filed on December 5, 2024, three days *before* Mr. Giuliani made his first production of 19 documents to Plaintiffs on December 8, 2024, and so Mr. Giuliani's claim that this is "not true and is false" is simply inaccurate. 24-cv-06563, ECF No. 117.

of *Plaintiffs-Receivers* to provide him with transfer documents. Opp. at 10; Giuliani Decl. ¶ 5.d,
ECF No. 171 at ¶ 18. The Court expressly rejected that position at the November 26, 2024
conference—with Mr. Giuliani present—in the following exchange with Mr. Giuliani's counsel:

> "THE COURT: Mr. Cammarata, as to the car title, my glance, and
> it was just a glance, at the Florida counterparts to the department of
> motor vehicles indicates that if your client lost the title paper, you
> can apply for a new one pretty readily. You certainly can do that in
> New York. The way I hear this going, with Mr. Nathan's
> presentation, is that there very well may come a time where you are
> required to show that you actually have made substantial efforts to
> comply with the Court's orders. I think you understand where I'm
> going with respect to that. If I need to be more explicit, I will. But
> just a word of advice or caution, which is, if you haven't made those
> efforts, you may be putting the Court in a place that the Court, and
> I think everybody here -- the Court would rather not be in, and I'm
> sure that everybody here would rather not be in.
>
> MR. CAMMARATA: My client has made efforts as far as the car is
> concerned, and the car has been turned over already.
>
> **THE COURT: But the car and keys without the title is really
> meaningless.**
>
> **MR. CAMMARATA: Once we are in receipt of the title from
> Florida state, we will turn it over immediately**."

Nathan Decl. ¶ 5, Ex. 3, at 35:06–36:01 (emphasis added). Mr. Giuliani does not dispute that he
has not turned over the title to the Mercedes, and has not described *any* efforts he has made or any
justification for the failure to do so. Opp. at 10; Giuliani Decl. ¶ 5.d.

**Signed Sports Paraphernalia, including signed Joe DiMaggio shirt and signed Reggie
Jackson picture**.  Mr. Giuliani in his Opposition concedes that he has not delivered a number of
the items of personal property specified in the Turnover Order—which happen to be among the
most valuable items identified—including: the signed Joe DiMaggio shirt; the signed Reggie
Jackson picture; the remaining watches (1 Shinola watch, 1 Corium watch, 1 IWC watch, 1 Invicta

watch, 2 Breitling watches, 3 additional watches); costume jewelry; and the furnishings and art that had been located in the New York Apartment. ECF Nos. 171 ¶ 18; 172 ¶¶ 5–6, 8; Opp. at 10–11; Giuliani Decl. ¶¶ 5.e–5.g, 6–7. With respect to the signed Joe DiMaggio shirt, Mr. Giuliani now claims there "is no Signed Joe DiMaggio shirt that I possess" and that "the Signed Joe DiMaggio shirt was hanging in the New York Cooperative apartment at the time the apartment was turned over." Giuliani Decl. ¶ 5.g. Mr. Giuliani's claim to have suddenly lost track of the signed Joe DiMaggio jersey is not credible for multiple independent reasons. *First*, Mr. Giuliani's former counsel represented to the Court at the November 7 Hearing that the signed Joe DiMaggio shirt was located at the CTS facility in Ronkonkoma.  ECF No. 171-6 at 32:11–19. *Second*, the signed Joe DiMaggio shirt was not present at the New York Apartment when counsel for Plaintiffs-Receivers visited on October 31, 2024, as evidenced by comparing the photo of the real estate listing of the room where the framed, signed Joe DiMaggio jersey was hanging with the one Plaintiffs'            counsel            submitted            from            the            October            visit.



Nathan Decl. ¶ 4; Mot. at 11. *Third*, one of Mr. Giuliani's trial witnesses and oldest friends, Monsignor Alan Placa—who Mr. Giuliani recently testified would be a credible and trustworthy witness (Nathan Decl. ¶ 9, Ex. 5, at 53:25–54:10)—testified under oath during his recent deposition that he had not traveled to New York in seven years but that he had personally seen the

framed, signed Joe DiMaggio shirt within the last two years, and specifically "at the apartment –

actually, it was here in Florida" at the Palm Beach Condo. Nathan Decl. ¶ 7, Ex. 4, at 30:12–13,

48:06–50:02. Similarly, Mr. Giuliani's claim that there "was no Reggie Jackson picture" is belied

by his own Bankruptcy Schedule, and his former counsel's representation to this Court that the

signed Reggie Jackson was present at the CTS facility in Ronkonkoma. ECF No. 10-2, at 5; ECF

No. 171-6 at 32:11–19. And even if Mr. Giuliani's claims about either signed sports memorabilia

had any indicia of credibility, he fails to describe any efforts he has made to locate them, as he

must to avoid contempt. Giuliani Decl. ¶ 5.g; *see Kelly toys Holdings, LLC v. 19885566 Store*,

2023 WL 4865938, at *2 (S.D.N.Y. July 31, 2023) (holding party subject to contempt must make

"diligent and energetic efforts to comply" and "cannot outsource to Plaintiffs its own responsibility

to comply with the Court's Orders.") (quotations omitted).

**Watches and costume jewelry**. Mr. Giuliani admits he has delivered only 18 watches, and

now claims that those are "all of the watches that I possess", without explaining why he identified

26 watches in his Bankruptcy Schedule or why the remaining eight watches are no longer in his

possession. Giuliani Decl. ¶ 5.h; ECF No. 10-2, at 5. Further, Mr. Giuliani concedes that he

"retained one watch," on the grounds "that is exempt from judgment under New York and Florida

law"—presumably, his grandfather's watch. Giuliani Decl. ¶ 5.h. The Court already has considered

and repeatedly rejected that claim, ordering that the watch "must be turned over."  *See* ECF No.

62, at 10–12. He also now claims he has no costume jewelry, without explaining why he listed

such assets in his Bankruptcy Schedule. Giuliani Decl. ¶ 5.h; ECF No. 10-2, at 5.

**New York Coop.** Mr. Giuliani admits that the has not delivered the shares "evidencing

Defendant's interest in" his New York Apartment or the related "proprietary lease" but states that

he "did not possess" them.  Opp. at 9; Giuliani Decl. ¶ 5.a. Such a representation is directly contrary

to Mr. Giuliani's sworn testimony in his recent deposition, where he confirmed that he has a "box" in Florida with "sensitive" and "important papers" that includes the proprietary lease and "probably" the co-op shares although he hasn't "looked" in the box in probably "six months"— confirming both that, in his mind, he has withheld documents he was required to deliver and did not even attempt to collect them to be turned over. Nathan Decl. ¶ 9 , Ex. 5, at 250:02–251:05.

Separate from the documents that Mr. Giuliani has failed to turn over, it is not true that Mr. Giuliani has provided "[a]ll of the documents required by 45 East 66th Street Owners Corp." and the Plaintiffs'-Receivers "in order to allow 45 East 66th Street Owners Corp. to turn over the ownership of the cooperative apartment to the Plaintiffs as receivers." Opp. at 9. Mr. Giuliani admits that his ex-wife's name remains listed on the New York Apartment's shares and that he has not taken any steps in the last year to have her name removed such that he, alone, could transfer title.  Nathan Decl. ¶ 9, Ex. 5, at 88:09–89:18. Further, he has abandoned efforts to pay off the federal tax lien that also encumbers the New York Apartment.  *Id.* at 89:24–91:06. Counsel for Plaintiffs-Receivers have been working diligently to draft documents that would be necessary to address these issues,[7] but those efforts do not obviate the requirement that *Mr. Giuliani* make efforts to effectuate the free and clear transfer of the New York Apartment.[8]

**Citibank Funds**. Mr. Giuliani claims that there "is nothing else for Defendant to do" with respect to his Citibank accounts because he "directed Citibank, N.A. to turn over the nonexempt cash." Opp. at 10; Giuliani Decl. ¶ 5.c. Mr. Giuliani has not turned over any cash from his Citibank account. Nathan Decl. ¶ 8. Nor has he, as the Court directed at the November 7 Hearing, carried

---

[7] At the appropriate time, Plaintiffs-Receivers may seek the Court's assistance in effectuating the transfer of ownership of the New York Apartment, including ordering certain third parties to cooperate with Plaintiffs-Receivers and Mr. Giuliani.

[8] While Mr. Giuliani signed one document Plaintiffs-Receivers provided in connection with the New York Apartment, he refused to sign the power of attorney that Plaintiffs-Receivers instructed him to file without mandating edits that would undermine its effectiveness. *See* Nathan Decl. ¶ 6.

his "obligation to get it from Citibank" or ask for the Court to help in doing so. ECF No. 171-6 at 30:18–23. Indeed, at the November 26 Hearing, counsel for Mr. Giuliani said he would "follow up with Citibank," but now a month has passed and the funds have still not been delivered. Nathan Decl. ¶ 5, Ex. 3, at 37:20–23.

**Other Possessions**. Mr. Giuliani claims that he has fully complied because he "turned over forty two (42) items, which is more than what the Court order specifically requires." Giuliani Decl. ¶ 5.e. Mr. Giuliani cherry-picking 42 miscellaneous items is not the same as fully complying by turning over the specific items enumerated in the Turnover Order, as well as the other art and furniture that photos show were in but then moved out of his New York Apartment.

## III.   THE COURT SHOULD IMPOSE APPROPRIATE SANCTIONS ON MR. GIULIANI TO BRING HIM INTO COMPLIANCE WITH THE TURNOVER ORDERS

Because Mr. Giuliani has not complied, much less substantially complied, with the Court's Turnover Orders, civil contempt sanctions are appropriate. Mr. Giuliani's only arguments to the contrary are that first, that he *has* complied with the Court's Orders, such that "sanctions are not required to be imposed to coerce Defendant into compliance" and second, that "Plaintiffs have not suffered any losses by any non-compliance or delayed compliance with the Court orders at all, so there is no reason for this Court to compensate Plaintiffs for any monetary losses." Opp. at 12–13. And if the Court disagrees, Mr. Giuliani says that "the only imposition should be reasonable attorneys' fees and costs for any monies that Plaintiffs expended as a result of any delay in Defendant's responses to discovery, and nothing else, however, it is respectfully submitted that Plaintiffs' have not incurred attorney's fees and costs as a result of any failure to comply with

discovery or court orders." *Id.* at 19.[9] In other words, Mr. Giuliani's position is that the Court should excuse his blatant defiance of Court orders and find there is no consequence to his behavior.

It is hard to square Mr. Giuliani's position with reality. As discussed above, and as Mr. Giuliani has not successfully disputed, he has *not* complied with the Court's Turnover Orders. The Court has repeatedly warned Mr. Giuliani in clear and unambiguous terms that "continued violation of the Turnover Order may result in contempt sanctions."  ECF No. 94, at 2; ECF No. 171-6 at 24:2–16 ("if he hasn't delivered, and there was a way in which he could have delivered, then there will be contempt sanctions.").  Since that time, Mr. Giuliani has made virtually no change in his conduct.  He owes Plaintiffs-Receivers nearly $150 million and, to date, has not provided them with a single dollar from his nonexempt cash accounts.  He has not delivered what appears to be the most valuable of his personal property—such as the signed Joe DiMaggio shirt—and the Mercedes and New York Apartment were delivered without providing the paperwork necessary for Plaintiffs to monetize those assets. Mr. Giuliani has violated *three* orders by this Court directing him to turnover Receivership Property to Plaintiffs, and absent appropriate coercive sanctions, Mr. Giuliani's noncompliance with those orders will continue into the future unabated. If there is a case that warrants civil contempt sanctions, it is this one.

## **CONCLUSION**

For these reasons, Plaintiffs-Receivers respectfully request that the Court enter an order holding Mr. Giuliani in contempt, and imposing appropriate sanctions to achieve compliance with the Turnover Orders.

---

[9] Mr. Giuliani's arguments about Plaintiffs purported lack of monetary losses due to his noncompliance are meritless, but also beside the point: Plaintiffs have not asked for compensatory sanctions at this time.

Respectfully submitted,

Dated:  December 30, 2024
        New York, New York

s/ Aaron E. Nathan

Rachel Goodman
United to Protect Democracy
82 Nassau Street, #601
New York, NY 10038
(202) 579-4582
rachel.goodman@protectdemocracy.org

Von DuBose (*pro hac vice forthcoming*)
DuBose Miller LLC
75 14th Street NE. Suite 2110
Atlanta, GA 30309
(404) 720-8111
dubose@dubosemiller.com

Michael J. Gottlieb
Meryl C. Governski (admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com
mgovernski@willkie.com

Aaron E. Nathan
M. Annie Houghton-Larsen
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8000
anathan@willkie.com
mhoughton-larsen@willkie.com

*Attorneys for Plaintiffs*