**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RUBY FREEMAN and WANDREA' MOSS, | |
| Plaintiffs, | |
| v. | No. 24-mc-00353-LJL |
| RUDOLPH W. GIULIANI, | |
| Defendant, | |
| v. | |
| ANDREW H. GIULIANI, | |
| Intervenor-Defendant. | |

**PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Rachel Goodman
United to Protect Democracy
82 Nassau Street, #601
New York, NY 10038
(202) 579-4582
rachel.goodman@protectdemocracy.org

Von DuBose (*pro hac vice forthcoming*)
DuBose Miller LLC
75 14th Street NE. Suite 2110
Atlanta, GA 30309
(404) 720-8111
dubose@dubosemiller.com

Michael J. Gottlieb
Meryl C. Governski (admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com
mgovernski@willkie.com

Aaron E. Nathan
M. Annie Houghton-Larsen
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8000
anathan@willkie.com
mhoughton-larsen@willkie.com

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

PROPOSED FINDINGS OF FACT ................................................................................1

I.    The Parties Dispute The Ownership Of Three World Series Rings. ...........................1

II.   Defendant Did Not Make A Bona Fide Gift Of The World Series Rings
      To Intervenor Prior To October 22, 2024. ................................................................2

   A.   Defendant maintained his ownership of the World Series Rings
        through at least October 22, 2024. ......................................................................2

   B.   It is unknown when (if ever) Intervenor took physical possession of
        the World Series Rings. ......................................................................................5

   C.   Defendant physically possessed and exercised total control over the
        World Series Rings at least until some unknown time in 2023. .................5

   D.   Intervenor never took steps consistent with ownership of the World
        Series Rings. .......................................................................................................8

   E.   As early as 2021, and throughout 2023, Defendant was unable to
        meet his debts as they came due, and was facing the prospect of
        substantial damages liability from numerous litigations................................8

PROPOSED CONCLUSIONS OF LAW ......................................................................9

I.    Intervenor Has Failed To Establish That Defendant Made A Valid Inter
      Vivos Gift Of The World Series Rings To IntervenoR. .................................9

   A.   Intervenor has not established that Defendant intended to make an
        irrevocable transfer of the World Series Rings to Intervenor prior to
        October 22, 2024....................................................................................10

   B.   Intervenor has not established that Defendant physically or
        constructively delivered the World Series Rings to Intervenor prior to
        October 22, 2024....................................................................................14

   C.   Intervenor has not established that he accepted the World Series
        Rings as a gift prior to October 22, 2024...................................................19

II.   In The Alternative, To The Extent Defendant Actually Transferred
      Ownership Of The Three Rings To Intervenor, That Gift Must Be Set
      Aside As A Fraudulent Transfer..................................................................20

CONCLUSION...........................................................................................................24

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*In re Abramowitz' Estate,*
  38 A.D.2d 387, 329 N.Y.S.2d 932 (2nd Dep't 1972)......................................14, 17

*In re Baum,*
  66 A.D.3d 412 (1st Dep't 2009) ................................................................. *passim*

*Bently v. Dox,*
  295 A.D.2d 952, 744 N.Y.S.2d 598 (4th Dep't 2002)......................................17, 18

*Campos v. V&B Inv. Guttenberg LLC,*
  No. 23-CV-1184 (DLC), 2024 WL 1178256 (S.D.N.Y. Mar. 19, 2024) ..............................23

*Matter of Carroll,*
  100 A.D.2d 337, 474 N.Y.S.2d 340 (2d Dep't Apr. 9, 1984).............................19

*Cia Naviera Financiera Aries, S.A. v. 50 Sutton Place South Owners, Inc.,*
  510 F. App'x 60 (2d Cir. 2013) ................................................................10, 14, 19

*In re Forthingham's Will,*
  161 Misc. 317, 291 N.Y.S. 656 (Surg. Ct. N.Y. 1936)....................................17, 18

*Gordon v. Gordon,*
  70.A.D.2d 86 (2d Dep't 1979) ................................................................11, 12, 14

*Greene v. Greene,*
  92 A.D.3d 838, 938 N.Y.S.2d 629 (2nd Dep't 2012).............................................15

*Gruen v. Gruen,*
  104 A.D.2d 171, 488 N.Y.S.2d 401 (2nd Dep't 1984)......................................14

*Gruen v. Gruen,*
  496 N.E.2d 869 (1986)................................................................11, 14, 17, 18

*Hardy v. Rose,*
  60 A.D.3d 904, 876 N.Y.S.2d 118 (2nd Dep't 2009).............................................15

*Juliano v. Juliano,*
  42 Misc.3d 1226, 984 N.Y.S.2d 632 (Sup. Ct. Kings County 2014)......................................14

*L.K.F. v. M.T.F.,*
  82 Misc.3d 1223(A), (Sup. Ct. Nassau CountyApr. 4, 2024)................................18

*Manacher v. Sterlin Nat. Bank & Trust Co. of N.Y.,*
  4 Misc.2d 1069, 160 N.Y.S.2d 220 (N.Y. City Ct. 1957) ................................17, 18

*In re Miller's Estate,*
    8 Misc.2d 1059 (Surg. Ct. N.Y. 1957) ............................................................16, 17

*Mortellaro v. Mortellaro,*
    91 A.D.2d 862, 458 N.Y.S.2d 390 (4th Dep't 1982) ......................................19

*Randall v. McGrath,*
    53 A.D.3d 736, 861 N.Y.S.2d 468 (3d. Dep't 2008) ....................................15, 17

*Ross v. Ross Metals Corp.,*
    87 A.D.3d 573, 928 N.Y.S.2d 327 (2nd Dep't 2011) ................................10, 15, 19

*In re Szabo's Estate,*
    176 N.E.2d 395, 217 N.Y.S.2d 593 (1961) ..........................................................18

*Widom v. Mittman,*
    39 A.D.3d 374, 833 N.Y.S.2d 502 (1st Dep't 2007) ....................................11, 14

**Statutes**

N.Y. Debtor & Creditor Law

§ 270(h)(1)(i) ........................................................................................................22

§ 273 ................................................................................................................20, 24

§ 273(a) ..................................................................................................................20

§ 273(a)(1) ..................................................................................................21, 22, 23

§ 273(a)(2) ..............................................................................................................21

§ 273(b) ............................................................................................................22, 23

Pursuant to Paragraph 5(B)(iv) of the Court's Individual Rules and Practices, Plaintiffs Ruby Freeman and Wandrea' ArShaye Moss ("Plaintiffs") respectively submit the Proposed Findings of Fact ("PFOF") and Conclusions of Law ("PCOL") with respect to Intervenor-Defendant Andrew H. Giuliani's ("Intervenor") claim regarding the purported gift of the World Series rings (the "Rings," and individually, the 1996 Ring, the 1999 Ring, and the 2000 Ring) by his father Defendant Rudolph W. Giuliani ("Defendant").

## **PROPOSED FINDINGS OF FACT**

### I.   **THE PARTIES DISPUTE THE OWNERSHIP OF THREE WORLD SERIES RINGS.**

1.    Intervenor is the son of Defendant. Prior to May 26, 2018, Intervenor does not claim any ownership interest in any of the Rings. Intervenor's claim is, in sum, that Defendant had always told Intervenor that Defendant would gift him the Rings in the future, and that at Defendant's birthday party in May 2018, Defendant informed Intervenor that he was making such a gift. But Intervenor claims that Defendant physically transferred possession of only one Ring at that time—the 1998 Ring, R-PTX 47 at 34:3–35:13—and other than a temporary swap around the time of the Boston Red Sox' visit to the White House in 2019, R-PTX 47 at 50:17-51:8, did not physically transfer possession of the other three Rings until some time around 2023 when he was allegedly visiting Defendant's New York Apartment, although Intervenor could not identify the exact date or circumstances. R-PTX 47 at 55:8–15.

2.    Defendant's testimony conflicts with the above narrative. According to Defendant, he gave one of the four Rings to Intervenor "right away, right—right when I got them," *i.e.*, some time around 2002. R-PTX 48 ("R. Giuliani Tr.") at 300:10–17. Defendant testified that in his mind, the gift of the other three Rings was made at the time he physically transferred them to Intervenor. R. Giuliani Tr. at 296:8–12. Defendant could not recall when that was. R. Giuliani

Tr. at 296:13–19. Defendant asserted that it was at the time when Intervenor's photograph of him and Defendant holding the Rings was taken. R. Giuliani Tr. at 297:17–22. But as Intervenor concedes, the physical transfer of the other three Rings did not occur, if at all, until much later. R-PTX 47 at 55:8–15. And in sworn filings in the Bankruptcy Court, Defendant asserted ownership of three World Series Rings as late as February 2024. R-PTX 29 at 3. Meanwhile, ███████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████ *Infra*, PFOF ¶ 12.

3.     Plaintiffs' claim is that Defendant's sworn bankruptcy disclosures are the best evidence of his state of mind with respect to his intent to gift the three World Series Rings to Intervenor, confirmed by the absence of any reported gifts relating to the Rings. Against that straightforward factual narrative, Intervenor has not established a consistent contrary narrative, much less one supported by clear and convincing evidence.

## II.     DEFENDANT DID NOT MAKE A BONA FIDE GIFT OF THE WORLD SERIES RINGS TO INTERVENOR PRIOR TO OCTOBER 22, 2024.

### A.     Defendant maintained his ownership of the World Series Rings through at least October 22, 2024.

4.     On January 26, 2024, Defendant filed in his bankruptcy case schedules disclosing his property appended to a sworn affidavit attesting to their accuracy. R-PTX 25. Defendant personally signed that affidavit. *Id.* In response to the prompt "Do you own or have any legal or equitable interest in any of the following items" "Jewelry" Defendant listed, *inter alia*, "3 yankees world series rings" as his property. R-PTX 25 at 4; R. Giuliani Tr. at 299:19–25.

5.     Following the filing of Defendant's bankruptcy disclosures, Intervenor communicated to Defendant and Defendant's bankruptcy attorney that Defendant had gifted Intervenor the World Series Rings in 2018. R-PTX 47 at 84:06–85:17, 86:15–87:06; 93:08–95:11,

96:14–97:14, 102:13–104:25 R-PTX 26; R-PTX 27; R-PTX 41 at 6, 8–9; R. Giuliani Tr. at 301:21–302:3 ("I remember talking about the rings and him telling me—and reminding me that I gave them to him.").

6.      At that time of those communications, Defendant did not recall that he had previously gifted the World Series Rings to Intervenor or the specific circumstances surrounding the purported gift. R. Giuliani Tr. at 301:21–303:18. In a contemporaneous text message between Intervenor and Defendant's bankruptcy attorney, Intervenor explains that his father "forgot" that he had gifted the rings "5 years ago." R-PTX 26.

7.      Notwithstanding this conversation with his son, Defendant continued to claim ownership of the World Series Rings in his bankruptcy. On February 27, 2024, approximately one month after learning that Intervenor believed that Defendant had gifted the World Series Rings to Intervenor, Defendant filed amended schedules of his property in his bankruptcy. R-PTX 29. In those amended schedules, Defendant made certain changes to his disclosed property. *Id*. Defendant did not make any change to his disclosure of the "3 yankees world series rings" as "Jewelry" in which he had a "legal or equitable interest." *Id*. at 2–3. Put differently, Defendant went to the trouble of amending his schedules to ensure their accuracy, but did not remove the World Series Rings from the list of his possessions.

8.      Defendant could have amended his property disclosures about the World Series Rings on February 29, 2024 or at another time during the pendency of the bankruptcy, but did not ever do so. R. Giuliani Tr. at 299:19–300:09. As Defendant testified, if he had a chance to fix a discrepancy in his bankruptcy filings, he would have done so. *Id.* Here, the presence of the three Rings was concededly called to Defendant's attention, but Defendant took no action to correct his sworn disclosures in this regard. R-PTX 29 at 3.

9.     Following the dismissal of Defendant's bankruptcy, Defendant was again presented with the opportunity to disclaim his ownership of the World Series Rings and declined to do so. On August 30, 2024, Plaintiffs filed a motion for enforcement  ("Motion for Turnover") of their approximately $146 million judgment (the "Judgment") against Defendant. *See Freeman v. Giuliani*, No. 24-mc-353, ECF No. 9 (S.D.N.Y. Aug. 30, 2024). In the Motion for Turnover, Plaintiffs specifically sought Defendant to turnover to Plaintiffs the World Series Rings. *Id.* at 13.

10.     On October 7, Intervenor's counsel sought Defendant's consent to intervene regarding "a claim of ownership with respect to some of the sports memorabilia" and Defendant consented. *See Freeman v. Giuliani*, No. 24-mc-353, ECF No. 44 at n.2. (S.D.N.Y. Oct. 8 2024). This was at least the second time in 2024 that Intervenor reminded Defendant that he believed the World Series Rings were gifted to Intervenor in 2018.

11.     And yet, a day later, on October 8, 2024, Defendant filed his opposition to the Motion for Enforcement (the "Opposition"). *See Freeman v. Giuliani*, No. 24-mc-353, ECF No. 44 (S.D.N.Y. Oct. 8 2024). In the Opposition, Defendant could have contested his ownership and/or possession of any of the items in the Motion for Enforcement. But he did not. Defendant did not contest the ownership and/or possession of the World Series Rings (or any property) at issue in the Motion for Turnover. *Id.* Defendant did not even reference Intervenor's alleged interest in the World Series Rings. *Id.*

12.     Defendant's representations in the bankruptcy court and this litigation are consistent with Defendant's representations to the Internal Revenue Service ("IRS"). Notwithstanding Defendant's recent interrogatory responses, which claim that Defendant did not file any gift tax returns during the relevant period, R-PTX 49 at 2, the documentary record reflects

███████████████████████████████████████████████

*see also* R. Giuliani Tr. at 167:19–168:21. In the last several years, ████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████ R-PTX 41 at 7; *see also* R-PTX 49 at 2 (Giuliani claiming

he never filed any gift tax returns). Importantly, ████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████

     13.     Based upon Defendant's sworn filings in the Bankruptcy Court and ████████

███████████████████████████████████████████████

███████████████████████████████████████████████ —the most

probable inference is that Defendant did not intend to make a gift of the Rings to Intervenor, or to

anyone else.

     **B.**     **It is unknown when (if ever) Intervenor took physical possession of the World Series Rings.**

     14.     Neither Intervenor nor Defendant can specify the time of year, month, or

day in 2023 when Intervenor allegedly took physical possession of the World Series Rings nor the

specific circumstances surrounding the alleged physical exchange. R-PTX 47 at 55:08–20, 56:04–

09, 59:13–60:04; R. Giuliani Tr. at 293:24–295:06, 296:08–19, 298:01–05. And there are no

documents in discovery that suggest any transfer was ever made, let alone the date on which it

happened. R-PTX 47 at 23:20–24:18; R. Giuliani Tr. at 66:17–67:20.

     **C.**     **Defendant physically possessed and exercised total control over the World Series Rings at least until some unknown time in 2023.**

15.     Intervenor concedes that from May 26, 2018 through at least some time in 2023, Defendant retained physical possession of the World Series Rings. R-PTX 47 at 55:8–15; R-PTX 41 at 5–6, 7–8. Intervenor concedes that Defendant regularly wore the 2000 World Series Ring during this time. R-PTX 47 at 47:8–18; R-PTX 41 at 5–6.

16.     Even if it were disputed, Defendant's possession is well-documented. Defendant has been photographed throughout this time period wearing the World Series Rings. On June 8, 2018, CNN published an article about Defendant that included a photo of him wearing an unidentified World Series Ring. R-PTX 7 at 1; R-PTX 8. About six months later, on December 16, 2018, NBCNews published an article about Defendant that included a photo of him wearing an unidentified World Series Ring. R-PTX 9 at 1. And on July 1, 2020, a photograph was taken of Defendant wearing the 2000 World Series Ring on his hand. R-PTX 15. On June 7, 2022, a photograph was taken of Defendant wearing one of the World Series Ring on his hand, which was published by Politico on June 24, 2022. R-PTX 18; R-PTX 19. Defendant also posted photos of himself wearing the World Series Rings to Twitter/X. On October 4, 2019, Defendant posted a photograph of himself with another man, both wearing one of the World Series Rings. R-PTX 13. Again on October 15, 2022, Defendant posted on his Twitter a photograph of himself with one of the World Series Rings on his hand. R-PTX 20.

17.     For a short period on or around May 8, 2019, Defendant allegedly loaned the 1996 World Series Ring to Intervenor to bring to an event at the White House. R-PTX 41 at 7–8; R-PTX 47 at 49:16–50:10, 51:4–8, 53:22–54:13. In order to loan the 1996 Ring to Intervenor, Defendant had to take the ring "off" because Defendant had been wearing it. R-PTX 47 at 50:14 –55:08. Shortly after the event, Intervenor returned the loaned 1996 World Series Ring to

Defendant and Defendant maintained physical possession of the 1996 World Series Ring at least until sometime in 2023. R-PTX 41at 7–8; R-PTX 47 at 53:22-54:13.

18.    During this time, Defendant not only had physical custody of the World Series Rings, but also had exclusive control over them. Defendant and Intervenor never had a conversation to set any "ground rules" for how Defendant could use the World Series Rings. R-PTX 47 69:07–15. Nor did Intervenor exercise any control over the Rings, or even have knowledge of basic facts relating to the Rings. For example, during this time: Intervenor is not aware of the specific location at which Defendant stored the World Series Rings,  R-PTX 47 at 64:11–20, nor is Intervenor aware of whether Defendant had insurance on the World Series Rings. R-PTX 47 at 73:04–74:03; R-PTX 41 at 6–7, or whether the World Series Rings had been professionally cleaned, R-PTX 47 at 78:06–09. During this time period, Defendant never asked Intervenor for permission to wear or use the World Series Rings. R-PTX 47 at 64:21–23, including asking permission to let someone else wear them. R-PTX 47 at 69:16-23. And Intervenor testified that he had no expectation that Defendant needed to ask his permission to let someone else wear the World Series Rings. R-PTX 47 at 68:15–69:23.

19.    The Declaration of Sean Kalin, R-PTX 46, also fails to provide any clarity on Intervenor's purported contention of physical transfer. Kalin claims that, sometime within a three-year time frame, he once played golf with Intervenor and Defendant. R-PTX 46 ¶ 4. Kalin claims that Intervenor said to him that Defendant had gifted him the four rings. R-PTX 46 ¶ 6 (Declaration of Sean Kalin). Yet, Intervenor does not remember this conversation whatsoever, much less when it may have occurred. R-PTX 47 at 80:24–81:08, 81:24–82:4. Intervenor only remembers discussing the topic with Mr. Kalin once the controversy with respect to the Rings was reported in the media this year. R-PTX 47 at 81:10–23. Moreover, neither Intervenor nor Mr. Kalin

have produced any documents or other supporting evidence to corroborate Mr. Kalin's testimony about this purported conversation. Finally, Mr. Kalin's testimony at most would provide minimal support for the conclusion that *Intervenor* had some personal understanding of a gift of the Rings, but would not tend to show anything about *Defendant*'s intentions to make a gift of the Rings.

**D.    Intervenor never took steps consistent with ownership of the World Series Rings.**

20.    At no time did Intervenor ever take actions that would suggest he was the owner of the World Series Rings. Intervenor admits that his father purchased the World Series Rings for at least "four figures" and they have probably increased in value since. R-PTX 47 at 70:22–71:08. It is undisputed that there was no consideration or transfer of money in exchanged for the alleged gifting of the World Series Rings.

21.    But at no time did Intervenor take any steps to protect or insure the World Series Rings, as one would expect for a multi-thousand dollar valuable. Intervenor never had the World Series Rings appraised. R-PTX 47 at 70:06–07. Intervenor never listed the World Series Rings on his renters' insurance policy, or make any change to the coverage for personal property provided by that policy. R-PTX 47 at 75:08–25. In fact, Intervenor never took out any insurance policy on the World Series Rings. R-PTX 47 at 74:04–06; R-PTX 41 at 6–7.

22.    Intervenor also took no steps to protect his alleged ownership of the World Series Rings, such as doing tax, estate, or other financial planning related to them. R-PTX 41 at 7.

23.    Intervenor also never had the World Series Rings professionally cleaned, despite allegedly taking physical possession of them after they had been in storage and worn by his father (and others) for some 20 or so years. R-PTX 47 at 76:24–77:02.

**E.    As early as 2021, and throughout 2023, Defendant was unable to meet his debts as they came due, and was facing the prospect of substantial damages liability from numerous litigations.**

24.     As early as 2021 and continuing throughout 2023, Defendant was unable to satisfy his debts as they came due. Defendant unpaid tax liabilities to the IRS going back to 2021. R-PTX 28 at 45:04–46:16. He did not pay those taxes because he "didn't have enough cash." *Id.* at 46:12.

25.     As early as 2021 and continuing through the present, Defendant has been subjected to substantial civil litigation as a defendant, with the potential for substantial monetary liability in the various lawsuits brought against him. R-PTX 28 at 113:12–123:17. In December of 2021, Plaintiffs filed suit against Defendant in the underlying defamation case in the District Court for the District of Columbia ("D.D.C."). By 2023, Defendant was facing the prospect of a substantial damages judgement entered against him in that case, which further heightened when default judgment on liability was entered against him on August 30, 2023. R-PTX 52. By August of 2023, Defendant owed Plaintiffs tens of thousands of dollars in attorneys' fees as a result of his discovery violations in the underlying defamation case in D.D.C., fees which Plaintiffs first obtained on June 22, 2023. *Id.* at 13. By mid-December of 2023, Defendant owed over $145 million dollars to Plaintiffs as a consequence of the final judgment entered against him in the underlying defamation case in D.D.C. R-PTX 57.

26.     Defendant filed for bankruptcy on December 21, 2023 in the Bankruptcy Court for the Southern District of New York. R-PTX 53.

27.     As evident in this action, Defendant has removed and concealed assets from Plaintiffs in an attempt to prevent their delivery to Plaintiffs. R-PTX 54; R-PTX 55; R-PTX 58; R-PTX 56; *see also* ECF Nos. 170, 208.

## PROPOSED CONCLUSIONS OF LAW

**I.     INTERVENOR HAS FAILED TO ESTABLISH THAT DEFENDANT MADE A VALID INTER VIVOS GIFT OF THE WORLD SERIES RINGS TO INTERVENOR.**

28.     Under New York law, "a valid inter vivos gift" requires the proponent of a gift to establish that: (1) "the donor intend[ed] to make an irrevocable present transfer of ownership," (2) there was "physical, constructive or symbolic delivery to the donee," and (3) "acceptance by the donee." *In re Baum*, 66 A.D.3d 412, 413 (1st Dep't 2009); *see also Cia Naviera Financiera Aries, S.A. v. 50 Sutton Place South Owners, Inc.*, 510 F. App'x 60, 62 (2d Cir. 2013) ("Under New York law . . . a valid *inter vivos* gift requires 'intent on the part of a donor to give,' 'a delivery of the property given pursuant to such intent,' and 'acceptance on the part of the donee.'") (quoting *In re Szabo's Estate*, 10 N.Y.2d 94, 98 (1961)); *Ross v. Ross Metals Corp.*, 87 A.D.3d 573, 575, 928 N.Y.S.2d 327 (2nd Dep't 2011).

29.     The proponent of the gift has "the burden of proving each of these elements by clear and convincing evidence." *Gruen v. Gruen*, 496 N.E.2d 869 (1986); *In re Baum*, 66 A.D.3d at 413.

**A.      Intervenor has not established that Defendant intended to make an irrevocable transfer of the World Series Rings to Intervenor prior to October 22, 2024.**

30.     Intervenor has failed to establish by clear and convincing evidence that Defendant "intended to make an irrevocable present transfer of ownership" of the World Series Rings to Intervenor on May 26, 2018, at any time prior to October 22, 2024, or since. *In re Baum*, 66 A.D.3d at 413; *Gruen*, 68 N.Y.2d at 53; PFOF ¶¶ 1–13.

31.     Defendant's intent to transfer ownership must have been present at the time of the gift of the World Series Rings. *See Widom v. Mittman*, 39 A.D.3d 374, 833 N.Y.S.2d 502 (1st Dep't 2007) (requiring evidence of "present donative intent" at the time of purported gift); *Gordon v. Gordon*, 70.A.D.2d 86, 91 (2d Dep't 1979) ("The essential element of donative intent refers to the grantor's initial intent at the time of the conveyance.").

32.     Intervenor has not established that Defendant had "present donative intent" with respect to the three disputed Rings at the time of the purported gift on May 26, 2018. *Widom*, 39 A.D.3d at 374. Intervenor concedes that Defendant did not physically transfer the World Series Rings to Intervenor at that time, signifying that Defendant did not intend  to maintain both possession and ownership of the World Series Rings at the time. PFOF ¶¶ 1–2, 14–15.

33.     ████████████████████████████████████████

████████████████████████████████████████████████

This contrasts with Defendant's own testimony that ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████

34.     ████████████████████████████████████████

████████, even after Intervenor allegedly took physical possession of the World Series Rings in 2023. PFOF ¶¶ 12–13.

35.     In Defendant's mind, the purported gift of the three Rings was made when he physically transferred the Rings to Intervenor. PFOF ¶ 2. But Defendant did not recall when that occurred, and what he testimony he did offer conflicts with Intervenor's testimony about when the asserted physical transfer occurred. PFOF ¶¶ 1–2, 6, 14–15. Furthermore, there is no evidence, aside from Defendant and Intervenor's testimony, that any such physical transfer actually did occur.

36.     While Defendant's lack of "initial intent at the time of [alleged] conveyance" in May of 2018 is sufficient to undermine the validity of the purported gift of the World Series Rings to Intervenor at that time, *Gordon*, 70 A.D.2d at 91, Defendant continued to demonstrate his ownership over and lack of intent to gift the World Series Rings up until entry of the Turnover Order.

37.     In late December 2023, Defendant filed for bankruptcy in the Southern District of New York and on January 26, 2024 he filed schedules of his property. PFOF ¶¶ 2–4, 26. In those schedules Defendant listed "3 yankee world series rings" as his property in response to the prompt of "do you own or have any legal equitable interest in . . . Jewelry."  PFOF  ¶ 4. Given the nature of his bankruptcy proceeding, namely that all listed assets were potentially subject to liquidation, the January 26, 2024 filing demonstrates Defendant's contemporaneous view that he maintained ownership of the World Series Rings.

38.     Immediately following the filing, Intervenor reached out to Defendant and Defendant's bankruptcy counsel to make them aware that Intervenor believes that he owned the World Series Rings. PFOF ¶ 5–6. At the time of those communications, Defendant had no independent recollection that he had allegedly gifted the World Series Rings to Intervenor at an earlier date. PFOF ¶ 6.

39.     Just a few weeks later on February 29, 2024—after Defendant and his attorneys were informed of Intervenor's claim of ownership over the World Series Rings— Defendant filed amended schedules listing his property in his bankruptcy, which made no changes to his disclosure of the "3 yankees world series rings" as property in which he had a "legal or equitable interest" in. PFOF ¶¶ 2–3, 6–8.

40.    Defendant was free at any time to amend his property disclosures concerning the World Series Rings and yet, despite Intervenor's having reminded him of a gift that Intervenor claims Defendant "forgot," Defendant did not amend that aspect of his sworn disclosures, demonstrating his contemporaneous view that he owned the World Series Rings and had never intended to gift them to Intervenor. PFOF ¶¶ 2–3, 6–8.

41.    Defendant continued to demonstrate his ownership of the World Series Rings through the fall of 2024. On August 30, 2024, Plaintiffs filed their Motion for Turnover in the above-captioned action, which explicitly sought turnover of Defendant's World Series Rings. PFOF ¶ 9.

42.    On October 8, 2024, Defendant consented to Intervenor's entry into the above-captioned action, thereby once again acknowledging Intervenor's claim of ownership. PFOF ¶ 10. Despite this consent and knowledge of Intervenor's claims, Defendant's Opposition filed the following day did not contest the ownership and/or possession of the World Series Rings at issue in the Motion for Turnover, again demonstrating Defendant's view that he maintained ownership of the World Series Rings. PFOF ¶ 10–11.

43.    While Defendant lacked the "initial intent" and "present donative intent" to irrevocably transfer ownership rights to the World Series Rings on May 26, 2018, *Widom*, 39 A.3d at 833; *Gordon*, 70 A.D.2d at 91, and all dates prior to October 22, 2024, any purported intent by Defendant to transfer ownership of the World Series Rings to Intervenor at some future date is also unavailing. *Gruen v. Gruen*, 104 A.D.2d 171, 174, 488 N.Y.S.2d 401 (2nd Dep't 1984) ("donative intent . . . requires that the donor, at the operative time, intend[s] to make a present transfer of ownership . . . . The mere intention to make a gift *in futuro* is not sufficient.") (cleaned up); *In re Abramowitz' Estate*, 38 A.D.2d 387, 392, 329 N.Y.S.2d 932 (2nd Dep't 1972) ("It is an

elementary rule that such a gift cannot be made to take effect in possession *In futuro*. Such a transaction amounts only to a promise to make a gift, which is Nudum pactum.") (citation omitted).

44.     The record demonstrates that there was never any "intent on the part of [Defendant] to give" the World Series Rings to Intervenor, in 2018, 2023, 2024 or at any other date or time. *Cia Naviera*, 510 Fed.Appx. at 62. Intervenor's failure to establish Defendant's intent by clear and convincing evidence means Intervenor's claim concerning the World Series Rings fails. *Gruen,* 68 N.Y.2d at 53 (requiring clear and convincing evidence of each element of a gift); *Juliano v. Juliano*, 42 Misc.3d 1226, 984 N.Y.S.2d 632 (Sup. Ct. Kings County 2014) (same).

**B.     Intervenor has not established that Defendant physically or constructively delivered the World Series Rings to Intervenor prior to October 22, 2024.**

45.     Intervenor has failed to establish by clear and convincing evidence "physical, constructive or symbolic delivery" of the World Series Rings on May 26, 2018 or at any time after that. *In re Baum*, 66 A.D.3d at 413; *see also Ross*, 87 A.D.3d at 575; PFOF ¶ 1–2, 14–23.

46.     "[W]ords alone are insufficient to establish a valid gift without the actual surrender of control over the [property]." *Randall v. McGrath*, 53 A.D.3d 736, 738, 861 N.Y.S.2d 468 (3d. Dep't 2008). "Even if the [D]efendant intended to make a gift" of the World Series Rings to Intervenor, which he did not, the "gift [wa]s not complete until it [wa]s delivered to the donee." *Hardy v. Rose*, 60 A.D.3d 904, 905, 876 N.Y.S.2d 118 (2nd Dep't 2009).

47.     Defendant's alleged delivery to Intervenor "must [have been] such as to vest the [Intervenor] with control and dominion over the property [and Defendant's] intention or mere words cannot supply the place of an actual surrender of control and authority over" the World Series Rings. *Ross*, 87 A.D.3d at 575 (cleaned up); *Greene v. Greene*, 92 A.D.3d 838, 839, 938 N.Y.S.2d 629 (2nd Dep't 2012) (same).

48.     From May 26, 2018 to some alleged time in 2023, Intervenor maintained no "control [or] dominion" over the World Series Rings that would demonstrate that Defendant had "surrende[d] control and authority" over them through delivery. *Ross*, 87 A.D.3d at 575. PFOF ¶¶ 15–18.

49.     It is undisputed that Defendant did not physically deliver the World Series Rings on May 26, 2018 and that he maintained physical possession and exclusive control of the World Series Rings—with the exception of a temporary loan of the 1996 World Series Ring to Intervenor in May of 2019—until allegedly some time in 2023. PFOF ¶¶ 1–2, 15–18.

50.     There is also no dispute that Defendant physically possessed and wore the 2000 World Series Ring during this time period. PFOF ¶ 15.

51.     Publicly available evidence, including Defendant's own Twitter account, further establishes that Defendant maintained physical possession of the World Series Rings and treated them as his own property by wearing them in public during this time period, including on June 8, 2018, December 16, 2018, October 4, 2019, July 1, 2020, June 7, 2022 and October 15, 2022. PFOF ¶ 16.

52.     Defendant's continued possession and control over the World Series Rings prior to 2023 is "not consistent with the claim of a valid gift." *In re Miller's Estate*, 8 Misc.2d 1059, 1061 (Surg. Ct. N.Y. 1957), particularly given Intervenor's general unawareness of key facts that would demonstrate ownership during this time period. PFOF ¶ 18, 20–23.

53.     From May 26, 2018 to some alleged time in 2023, Intervenor was unaware of the physical storage location of the World Series Rings, whether Defendant maintained insurance on the World Series Rings, or had the World Series Rings professionally cleaned. PFOF ¶ 18.

54.    During this same time period, Intervenor also had no understanding that Defendant needed to ask Intervenor's permission to use the World Series Rings himself or let someone else wear the World Series Rings. PFOF ¶ 18. Defendant never asked Intervenor for permission to wear or use the World Series Rings and he never asked Intervenor for permission to let someone else wear the World Series Rings. PFOF ¶ 18.The records indicates that up until some alleged time in 2023, Intervenor not only did not receive delivery of the World Series Rings, but he in effect had no control or dominion over the World Series Rings. PFOF ¶¶ 1, 14–18.

55.    Defendant's continued possession or control of a purported gift, absent explicit reservation of a life estate or similar circumstances, negates the making and delivery of a present gift of the World Series Rings to Intervenor. *See e.g.*, *In re Miller's Estate*, 8 Misc.2d 1059, 1061, 168 N.Y.S.2d 777 (Sur. Ct. N.Y. 1957) (finding continued use of funds purportedly gifted to niece was "not consistent with the claim of a valid gift."); *In re Abramowitz' Estate*, 38 A.D.2d 387, 389–90, N.Y.S.2d 932 (2d. Dep't N.Y. 1972) (noting "usual rule that joint custody negatives any idea of a gift" and holding "no credible proof of delivery" where donor "retain[ed] control over the property").

56.    New York courts also recognize constructive or symbolic delivery where physical delivery of the purported gifted property would be impossible, impracticable, or immaterial. *See e.g.*, *In re Forthingham's Will*, 161 Misc. 317, 320, 291 N.Y.S. 656 (Surg. Ct. N.Y. 1936) ("[I]f it is not within the power of the donor to deliver the gift, symbolic delivery of the subject of the gift is accepted in lieu of the delivery of the article itself."); *Manacher v. Sterlin Nat. Bank & Trust Co. of N.Y.* 4 Misc.2d 1069, 1075, 160 N.Y.S.2d 220 (N.Y. City Ct. 1957) (finding that financial note's possession by a third party meant that "physical delivery [was] not possible, [and so] constructive or symbolic delivery . . . [was] sufficient."); *Randall*, 53 A.D.3d at

737 ("The delivery necessary to consummate a gift must be as perfect as the nature of the property and the circumstances and surroundings of the parties will reasonably permit.") (cleaned up).

57.     To be valid, a constructive or symbolic delivery must also be supported by "an instrument of gift, sufficient to divest the donor of dominion and control over the property." *Gruen*, 68 N.Y.2d at 56–57 (holding three letters evidencing donor's gift of title to a painting sufficient for constructive delivery even where no physical delivery took place); *see also Bently v. Dox*, 295 A.D.2d 952, 599, 744 N.Y.S.2d 598 (4th Dep't 2002) (citing *Gruen* for requirement that constructive or symbolic delivery must be supported by an "instrument of gift"); *L.K.F. v. M.T.F.*, 82 Misc.3d 1223(A), at *15 (Sup. Ct. Nassau Cty, Apr. 4, 2024) (same).

58.     Constructive or symbolic delivery" is unavailable to Intervenor because physical delivery of the World Series Rings by Defendant was fully practicable given their size and status as jewelry. *In re Forthingham's Will*, 161 Misc. at 320 (finding "symbolic delivery" valid where it was "not within the power of the donor to deliver the gift"); *Manacher*, 4 Misc. 2d at 1075 (constructive of symbolic delivery valid where "physical delivery [was] not possible."); PFOF ¶¶ 2–3, 16–17. Even so, Defendant and Intervenor have provided no evidence of "an instrument of gift" that New York Courts typically require to satisfy  constructive or symbolic deliver. *See e.g.*, *Gruen*, 68 N.Y.2d at 56–67; *Bently*, 295 A.D.2d 598.

59.     Intervenor must also provide clear proof of delivery to establish a gift. *In re Baum*, 66 A.D.3d 412, 414 (1st Dep't 2009) (finding "insufficient evidence of delivery of the gift" where alleged donee failed to provide direct evidence that relevant document was given to her by donor); *In re Szabo's Estate*, 176 N.E.2d 395, 217 N.Y.S.2d 593 (1961) (finding no delivery of stock certificates where donor failed to provide "transfer of record on the stock books of the company").

60.     While Intervenor maintains that he took physical possession of the World Series Rings in 2023, he has failed to provide clear and convincing "evidence of delivery of the gift" on that alleged date. *In re Baum*, 66 A.D.3d at 414 (no delivery where donee failed to provide evidence other than oral testimony of relevant delivery); *see In re Szabo's Estate*, 176 N.E.2d at 98–99 (no delivery where records would normally be present showing deliver); PFOF ¶¶ 1–2, 13–14, 17.

61.     Intervenor has failed to provide any affirmative direct evidence other than his own oral testimony demonstrating that he physically took possession of the World Series Rings at some point in 2023. PFOF ¶¶ 1, 14. But Intervenor could not testify to the time of the year—let alone the month or exact day—when this alleged physical transfer occurred in 2023. PFOF ¶¶ 2, 14. Intervenor was also unable to recollect the exact circumstances of the alleged physical transfer in 2023. PFOF ¶¶ 2, 14. Similarly, Defendant was unable to testify as to the year that the alleged physical transfer of the World Series Rings took place. PFOF ¶¶ 2, 14. Neither Intervenor or Defendant have produced any documentation supporting the alleged physical transfer occurred in 2023. PFOF ¶ 14.

62.     Intervenor also has not—to date—provided any evidence aside from his own self-serving testimony that he currently physically possesses the World Series Rings. Intervenor has not produced any photographs showing the World Series Rings in his current possession nor has he provided any other relevant evidence showing current possession and ownership, such as appraisal records, insurance records, or similar documentation. PFOF ¶¶ 14, 21 –23.

63.     The record thus demonstrates that Intervenor has not provided clear and convincing evidence that Defendant physically delivered the World Series Rings to Intervenor.

**C.**    **Intervenor has not established that he accepted the World Series Rings as a gift prior to October 22, 2024.**

64.    Intervenor has failed to establish by clear and convincing evidence that he accepted the purported gift of the World Series Rings from Defendant on May 26, 2018 or at any point prior to October 22, 2024. *In re Baum*, 66 A.D.3d at 413; *Cia Naviera*, 510 Fed. Appx. at 60; *Ross*, 87 A.D.3d at 575; PFOF ¶¶ 14, 20–23.

65.    While Intervenor's acceptance would generally be presumed where the other elements of the World Series Gift are "otherwise [] complete" Intervenor has failed to establish a presumption of acceptance because "intent and delivery are lacking." *Matter of Carroll*, 100 A.D.2d 337, 339, 474 N.Y.S.2d 340 (2d Dep't Apr. 9, 1984); *Mortellaro v. Mortellaro*, 91 A.D.2d 862,863, 458 N.Y.S.2d 390 (4th Dep't 1982). PFOF ¶¶ 1–23; PCOL ¶¶ 30–63

66.    Further, any presumption of acceptance by Intervenor must also "yield to opposing evidence" that is "inconsistent with the transfer of the title" to and ownership of the World Series Rings. *Juliano v. Juliano*, 145 A.D.3d 983, 985, 44 N.Y.S.3d 482 (2d Dep't 2016).

67.    Intervenor has failed to provide any affirmative direct evidence other than his own self-serving testimony demonstrating his acceptance of the World Series Rings from Defendant on May 26, 2018 or at any time prior to October 22, 2024. PFOF ¶¶ 14, 20–23.

68.    In contrast, Intervenor's actions prior to October 22, 2024 are inconsistent with acceptance of the World Series Rings: Intervenor has never listed the World Series Rings on his renter's insurance policy, he has never taken out any separate insurance policy on the World Series Rings, he has never had the World Series Rings appraised, he has never had the World Series Rings professionally clean and he has never undertaken any tax, estate, or financial planning related to the World Series Rings. PFOF ¶¶ 20–23.

## II.    IN THE ALTERNATIVE, TO THE EXTENT DEFENDANT ACTUALLY TRANSFERRED OWNERSHIP OF THE THREE RINGS TO INTERVENOR, THAT GIFT MUST BE SET ASIDE AS A FRAUDULENT TRANSFER.

69.    To the extent Intervenor has established that Defendant made a valid gift of the three Rings to Intervenor, the only conclusion supportable by the evidence is that the gift occurred at a time when it was a fraudulent transfer under NY Debtor and Creditor Law ("DCL") § 273(a) and (b). A creditor may establish a fraudulent transfer under those provisions by a preponderance of the evidence. *Id.* § 273(c). Here, Defendant testified that any such gift occurred when he physically transferred possession of the Rings to Intervenor, and Intervenor testified that this occurred no earlier than when Defendant was showing his New York Apartment for sale in 2023. PFOF ¶¶ 1, 14–15.

70.    DCL § 273(a) provides that "(a) A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor . . . believed or reasonably should have believed that the debtor would incur[] debts beyond the debtor's ability to pay as they became due." DCL § 273(a)(2).

71.    It is uncontested that the transfer of the three Rings was for no consideration.

72.    As of 2023, the earliest date that any gift could even arguably have been made, Defendant believed or reasonably should have believed that he would incur debts beyond his ability to pay as they became due. As of that date, Defendant already owed unpaid tax liabilities to the IRS that he could not satisfy because he did not have the cash to pay. PFOF ¶ 24. Further, Defendant had been sued by Plaintiffs in the underlying case and was facing the prospect of a damages judgment entered against him, and mounting liability for attorney's fees. PFOF ¶ 25. As

20

Defendant later contended in his bankruptcy case, by 2021 and continuing into 2023 he was struggling to meet ongoing financial obligations. PFOF ¶¶ 2, 4–8, 26.

73.    Accordingly, if Defendant did make a valid gift of the Rings to Intervenor at the only time even arguably supported by the evidence, that gift would be voidable under DCL § 273(a)(2).

74.    Such a gift would also be voidable under DCL § 273(a)(1). That provision provides that "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay or defraud any creditor of the debtor." DCL § 273(a)(1).

75.    DCL § 273(b) provides that "in determining actual intent under paragraph one of subdivision (a) of this section, consideration may be given, among other factors, to whether: (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor." NY DCL § 273(b).

76.    Here, factors (1), (3), (4), (7), (8), (9), and (10) all support a finding of actual intent under § 273(a)(1).

77.    Intervenor is Defendant's son, and is thus an insider for purposes of § 273(a)(1). PFOF ¶ 1; NY DCL § 270(h)(1)(i).

78.    The transfer was concealed, including through Defendant's sworn statement attesting to his ownership of the Rings in his bankruptcy case. PFOF ¶¶ 2–8.

79.    Before the transfer was made, Defendant had been sued by Plaintiffs, and several other parties. PFOF ¶ 25.

80.    By August of 2023, Defendant owed Plaintiffs tens of thousands of dollars in attorneys' fees as a result of his discovery violations in the underlying defamation case in D.D.C., and was shortly to incur a significant damages judgment on top of that. PFOF ¶ 25.

81.    As illustrated by Defendant's conduct in this very enforcement proceeding, Defendant has removed and concealed assets from Plaintiffs, demonstrating an intent to "hinder" their collection of their judgment. PFOF ¶ 27.

82.    The value of the consideration received by Defendant was zero, and not equivalent (or reasonably equivalent) to the value of the Rings. PFOF ¶¶ 20–21.

83.    Defendant became insolvent shortly after the transfer was made, as demonstrated by his December 21, 2023 bankruptcy filing. *See In re Giuliani*, 23-12055, ECF No. 1 (Bankr. S.D.N.Y Dec. 21, 2023).

84.    The transfer occurred shortly before a substantial debt was incurred, namely Plaintiffs' judgment against Defendant in the underlying D.D.C. litigation. PFOF ¶ 25.

85.    Taken together, these factors amply support a finding of actual intent under DCL 273(a)(1). *See, e.g.*, *Campos v. V&B Inv. Guttenberg LLC*, No. 23-CV-1184 (DLC), 2024

WL 1178256, at *4 (S.D.N.Y. Mar. 19, 2024) (finding actual intent under § 273(a)(1) where "the transfers were between insiders and/or their affiliates[,] . . . the contested transfers were made for no consideration," and "at a time when the [debtors] were facing a high probability that a significant judgment would soon be entered against them," establishing that the debtor acted "with actual intent to hinder, delay or defraud the plaintiffs in their efforts to collect on the then-likely judgment to be entered against the [debtor].").

86.     Furthermore, the reality of this enforcement proceeding also supports such a finding. Since Plaintiffs judgment was entered, Defendant has demonstrated a consistent determination to avoid satisfying the judgment, hindering Plaintiffs through repeated disobedience of court orders. Even apart from the § 273(b) factors, Defendant's conduct in this enforcement proceeding independently supports an inference that Defendant acted with actual intent to hinder, delay, or defraud Plaintiffs from obtaining any recovery.

## CONCLUSION

The motion for an order requiring Defendant to turn over the World Series Rings to Plaintiffs-Receivers should be granted, and in the alternative the Court should find that any transfer of the World Series Rings to Intervenor was fraudulent under NY DCL § 273, void such transfer, and require that the World Series Rings be delivered to Plaintiffs.

Dated: January 7, 2024           /s/ Aaron E. Nathan
New York, New York

<table>
<tr><td>

Rachel Goodman
United to Protect Democracy
82 Nassau Street, #601
New York, NY 10038
(202) 579-4582
rachel.goodman@protectdemocracy.org

Von DuBose (*pro hac vice forthcoming*)
DuBose Miller LLC
75 14th Street NE. Suite 2110
Atlanta, GA 30309
(404) 720-8111
dubose@dubosemiller.com

</td><td>

Michael J. Gottlieb
Meryl C. Governski (admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com
mgovernski@willkie.com

Aaron E. Nathan
M. Annie Houghton-Larsen
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8000
anathan@willkie.com
mhoughton-larsen@willkie.com

*Attorneys for Plaintiffs*

</td></tr>
</table>